UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES V. DEPPOLETO JR., ) <br> ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TAKEOVER INDUSTRIES ) <br> INCORPORATED, ) <br> ) <br>     Defendant. ) <br> ) | Case No.: 2:22-cv-02013-GMN-VCF <br><br> **ORDER** |

Pending before the Court is the Emergency Motion for Partial Summary Judgment, (ECF No. 10), filed by Plaintiff James V. Deppoleto Jr. ("Mr. Deppoleto" or "Plaintiff"). Defendant Takeover Industries Inc. ("Defendant" or "Takeover") filed a Response, (ECF No. 15), to which Plaintiff filed a Reply, (ECF No. 18).

For the reasons discussed below, the Court **DENIES** the Motion for Summary Judgment.

### I.    BACKGROUND

Takeover is a business specializing in energy drinks and other fitness-related beverages under the brand name NXT LVL. (Compl. ¶ 5, ECF No. 1). Takeover was founded by Michael Holley and Toby McBride in 2021. (*Id.*). Mr. Deppoleto alleges that, following Takeover's acquisition by Labor Smart, Inc. ("Labor Smart"), Mr. Holley served as Chief Operating Officer and Treasurer of Takeover. (*Id.* ¶ 8). Joseph Pavlik and Jason Tucker also joined Takeover following Takeover's acquisition by Labor Smart. (*Id.* ¶¶ 9–10).

On or around June 10, 2021, a special meeting was convened to appoint the following individuals as Directors of Takeover: Mr. Tucker was appointed President; Mr. Holley as Treasurer; Mr. McBride as Secretary; and Mr. Pavlik as a Director. (*Id.* ¶ 11). However, Mr.

Deppoleto alleges that the Board of Directors voted to remove Mr. Holley, resulting in Takeover's Board of Directors consisting of only the other three individuals. (*Id.* ¶¶ 13–14).

Beginning in May 2022, Mr. Deppoleto invested over $2 million in Takeover and holds "a valid and binding debt interest in Takeover," secured by a Convertible Note Purchase Agreement by and between Mr. Deppoleto, Takeover, and Labor Smart, dated May 25, 2022 (the "NPA"). (*Id.* ¶¶ 16–35). Pursuant to the NPA, Mr. Deppoleto provided $500,000 to Takeover. (*Id.* ¶ 19). The NPA was amended twice, first on July 6, 2022, and again on August 19, 2022. Under both amendments, Mr. Deppoleto provided Takeover with an additional $500,000. (*Id.* ¶¶ 22, 25). Mr. Deppoleto further alleges that "[o]n or about October 27, 2022," he loaned Takeover an additional $386,773.86; and "[o]n or about November 3, 2022," he loaned Takeover an additional $128,924.62." (*Id.* ¶¶ 28, 29). The parties "agreed that the [additional funding on October 27, 2022, and November 3, 2022,] would be funded as part of the NPA and result in a fourth note." (*Id.* ¶ 31). However, "the documents were not finalized." (*Id.* ¶ 32). On or around November 8, 2022, Mr. Deppoleto alleges that Takeover defaulted under the NPA. (*Id.* ¶ 37). The default related to a lawsuit Takeover filed against Mr. Holley and Mr. McBride in the United States District Court for the District of Arizona (the "Arizona lawsuit").[1] (*Id.* ¶¶ 38–40). Relying on filings in the Arizona lawsuit, Mr. Deppoleto alleges that Mr. Holley "purported to call into question the validity" of the loan agreements between the parties. (*Id.* ¶ 39). Mr. Deppoleto contends that Takeover has "breached the Notes" and

---

[1] The Arizona lawsuit also served as a basis for Takeover's Motion to Transfer Venue to the District of Arizona, (ECF No. 14). However, both Mr. Deppoleto, in his Motion for Leave to File Supplemental Briefing, (ECF No. 19), and Takeover, in a supplement to its Motion to Transfer Venue, (ECF No. 20), note that Takeover is no longer a party to the Arizona action. Accordingly, the Court finds that Defendant's Motion to Transfer Venue is MOOT. Moreover, even if the Court were to have decided the motion on its merits, the Court would likely have denied the motion because venue is proper in Nevada; Takeover is a Nevada corporation and maintains its principal place of business in California. Moreover, because the Court finds that the Motion to Transfer Venue is moot, the Court additionally finds that Defendant's Motion to Transfer Venue and Plaintiff's Motion for Leave to File Supplemental Briefing is DENIED as moot.

additional payments "by not reimbursing Plaintiff when required[.]" (*Id.* ¶¶ 54–56). Accordingly, the Complaint asserts five causes of action: (1) declaratory judgment; (2) breach of contract; (3) fraud/fraud in the inducement; (4) estoppel; and (5) unjust enrichment.

Mr. Deppoleto thereafter filed his Emergency Motion for Partial Summary Judgment on his declaratory judgment and breach of contract claims. (Mot. Summary Judgment ("MSJ") 15:26–16:1, ECF No. 10). Because the remaining claims are "alternative claims for relief," Mr. Deppoleto notes that granting his motion on the declaratory judgment and breach of contract claims "will, in all likelihood, moot his alternative claims for relief[.]" (*Id.* 16:1 n. 5).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

///

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citation omitted). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing

competent evidence that shows a genuine issue of fact exists. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.  DISCUSSION

Mr. Deppoleto argues that "the undisputed evidence shows that all three requirements for an enforceable contract—offer and acceptance, a meeting of the minds, and consideration—have been satisfied." (Reply 3:22–26, ECF No. 18).  The Complaint purports to include valid copies of the NPA, the subsequent amendments, and other related documents as exhibits to its Complaint. (*See generally* Exs. A, B, C, D, E, and F to Compl., ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6).  Mr. Deppoleto also includes various "Joint Written Consent of the Board of Directors and Shareholders of Takeover Industries, Inc." signed by Mr. McBride, Mr. Tucker, and Mr. Pavlik. (*See generally* Ex. G to Compl., ECF No. 1-7).  Among other things, the signed Joint Written Consent documents approve of the NPA and subsequent amendments. (*Id.*).

In opposition, Takeover argues it did not "accept, issue consideration for, or otherwise enter[] into" any agreement with Mr. Deppoleto, and thus Takeover "disputes any and all amounts Mr. Deppoleto claims are owed under" the NPA and related documents. (Resp. 3:11–4:4, ECF No. 15).  "Takeover [additionally] disputes that, while acting in their capacity as board members of Takeover, [Messrs.] Tucker, McBride and Pavlik each signed joint written consents dated May 20, 2022, July 1, 2022, and August 18, 2022, approving the NPA" and its subsequent amendments. (*Id.* 4:4–9).  Moreover, Takeover argues that, even if the agreements

///

were valid, it has not "committed any acts or omissions" that would constitute an "Event of Default" under the agreements. (*Id.* 13–17).

The timing of the pending Emergency Motion for Partial Summary Judgment—within one month of filing his initial complaint—deprives the Court of a fulsome record replete with "depositions, documents, electronically stored information, affidavits, . . . or other materials." Fed. R. Civ. Pro. Rule 56(c)(1)(A). But the early filing of a motion for summary judgment does not make it deficient; indeed, the FRCP mandates that "a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. Pro. Rule 56(b) (emphasis added). The Court thus reviews the merits of Mr. Deppoleto's Emergency Motion for Partial Summary Judgment.

After reviewing the evidence presented thus far, the Court finds that Mr. Deppoleto satisfied his "initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (internal quotation marks and citation omitted). A breach of contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damages as a result of the breach." *Tarr v. Narconon Fresh Start*, 72 F.Supp.3d 1138, 1141 (D. Nev. 2014) (quoting *Med. Providers Fin. Corp. II v. New Life Centers, LLC*, 818 F.Supp.2d 1271, 1274 (D. Nev. 2011)). "Generally, a contract is valid and enforceable if there has been 'an offer and acceptance, meeting of the minds, and consideration.'" *Id.* (quoting *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005)). Mr. Deppoleto proffered evidence showing signed, valid, and enforceable contracts between the parties. (*See* Exs. A, B, C, D, E, F, and G to Compl.). Mr. Deppoleto, via the "Notice of Default, Demand for Payment & Cease and Desist" letter sent by his counsel to Takeover, supports his contention that Takeover breached the NPA. (Not. Default Letter, Ex. H to Compl.). The letter also details the alleged damages Mr. Deppoleto has suffered and will suffer due to Takeover's breach. (*Id.*). Accordingly, viewing the evidence submitted by Mr.

Deppoleto, the Court finds that Mr. Deppoleto has satisfied his initial burden of establishing the absence of a genuine issue of material fact.

Because Mr. Deppoleto has satisfied his initial burden, the burden shifts to Takeover to establish that a genuine issue of material fact exists. The Court finds that Takeover has produced evidence calling into question the validity and enforceability of the agreements between the parties. Although Takeover's evidence stands on shakier grounds than that of Mr. Deppoleto, the nonmoving party need not establish a material issue of fact conclusively; rather, the nonmoving party need only show the existence of a dispute of material fact. *See T.W. Elec. Serv.*, 809 F.2d at 631 (9th Cir. 1987).

Takeover's response "proffers the pending action in Arizona, including its entire record, as a basis for denying summary judgment." (Resp. 4:18–21). Takeover points to several documents in the record of the Arizona lawsuit that illustrate a dispute of material fact. First, Takeover cites the declaration of Veronica Manolio, who served as Takeover's corporate counsel in the Arizona action until she withdrew "in light of a likely conflict of interest calling into question her position as corporate counsel for Takeover." (*Id.* 5:1–3). "The record suggests that Ms. Manolio was taking the position solely of Mr. Tucker and adverse to the remainder of Takeover's board." (*Id.*). Second, Takeover cites Mr. Deppoleto's declaration filed in the Arizona case and argues that the declaration "sheds light on the possible alignment and collusion between [Mr.] Tucker and [Mr.] Deppoleto." (*Id.* 5:3–5). Third, Takeover "points the Court's attention to the declaration of Joseph Pavlik," which "states that recent information has indicated that [Mr.] Tucker instigated a wrongful and manipulative freeze-out of [Mr.] Holley, [Mr.] McBride, and [Mr.] Pavlik to further a hostile acquisition of Takeover via multiple acts and omissions suggesting breach of fiduciary duty[.]" (*Id.* 5:7–14). Fourth, Takeover cites the declaration of Toby McBride, "which suggests that the 'events of default' alleged by [Mr.] Deppoleto were contrived." (*Id.* 5:18–20). Takeover additionally cites the

"resolution of the board of directors of Labor Smart" which "concludes that all actions taken at the December 2021 Meeting are void and asserts Tucker breached fiduciary duties and engaged in wrongful conduct in an attempt to acquire Takeover by improper means." (*Id.* 5:21–28). Takeover thus contends that "summarily adjudicating the validity, enforceability, and effect of the purported loan agreements would inevitably disturb undetermined issues of fact still hanging in the balance" in the Arizona lawsuit. (*Id.* 10:11–15). Taken together, the Court finds that the evidence produced by Takeover shows a genuine issue of material fact related to the validity of the contract agreements that Plaintiff seeks to enforce. Because Takeover has presented competent evidence showing a genuine issue of material fact, the Court DENIES Plaintiff's Emergency Motion for Partial Summary Judgment.

IV.  **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion for Partial Summary Judgment, (ECF No. 10), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Transfer Venue, (ECF No. 14), and Plaintiff's Motion for Leave to File Supplemental Briefing, (ECF No. 19) are **DENIED as moot**.

**DATED** this __19__ day of July, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT