# EXHIBIT 1

JAMES PATRICK SHEA
Nevada Bar No. 405
BART K. LARSEN
Nevada Bar No. 8538
KYLE M. WYANT
Nevada Bar No. 14652
SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email: jshea@shea.law
blarsen@shea.law
kwyant@shea.law


JENNIFER E. HOEKEL
Nevada Bar No. 12775
jennifer.hoekel@huschblackwell.com
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
Telephone: 314.480.1500
Facsimile: 314.480.1505
*Attorney for Plaintiff*
*James v. Deppoleto Jr.*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES V. DEPPOLETO JR., Individually and Derivatively on Behalf of Nominal Defendant Takeover Industries Incorporated | CASE NO. 2:22-cv-2013 |
| | **PLAINTIFF'S FIRST AMENDED *VERIF*IED COMPLAINT** |
| Plaintiff, | |
| v. | **[JURY DEMAND PER LR 38-1]** |
| TAKEOVER INDUSTRIES INCORPORATED, Defendant and Nominal Defendant | |
| MICHAEL HOLLEY, | |
| TOBY MCBRIDE, | |
| JOSEPH PAVLIK, | |
| TOM ZARRO, | |
| and | |
| NEXTGEN BEVERAGES, LLC | |
| Defendants. | |

NOW COMES Plaintiff, James V. Deppoleto Jr. ("<u>Deppoleto</u>" or "<u>Plaintiff</u>"), individually and derivatively on behalf of nominal Defendant, Takeover Industries Incorporated ("<u>Takeover</u>"), by and through his attorneys, Husch Blackwell LLP, as and for his causes of action against Defendants, alleges and shows the Court as follows:

<u>**PARTIES**</u>

1.      Deppoleto is a citizen of the State of Wisconsin and a resident of the State of Wisconsin.  Plaintiff is the holder of 200,000,000 shares in Takeover, and the loan documents that are the subject of this action.

2.      Takeover is a Nevada corporation with offices in Nevada and California.

Takeover's principal place of business is in California.

3.     Upon information and belief, Michael Holley ("<u>Holley</u>") is a resident of the State of Arizona, who resides at 517 East Armor Street, Cave Creek, Arizona 85331.

4.     Upon information and belief, Toby McBride ("<u>McBride</u>") is a resident of the State of California, who resides at 2948 Monticello Drive, Stockton, California 95209.

5.     Upon information and belief, Tom Zarro ("<u>Zarro</u>") is a resident of the State of Nevada, who resides at 1100 Boletus Drive, Henderson, Nevada 89011.

6.     Upon information and belief, Joseph Pavlik ("<u>Pavlik</u>") is a resident of the State of Florida, who resides at 408 NE 6th St., No. 637, Ft. Lauderdale, Florida, 33304.

7.     Upon information and belief, NextGen Beverages LLC d/b/a Lock'd In ("<u>NextGen Beverages</u>" or "<u>Lock'd In</u>") is a limited liability company formed under the laws of Wyoming. Upon information and belief, NextGen Beverages' principal place of business is in Wyoming.

<u>**VENUE AND JURISDICTION**</u>

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because complete diversity exists.   The controversy is between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

9.     The Court has personal jurisdiction over all Defendants.

10.    Takeover is a Nevada corporation with an office in Nevada.

11.    Holley co-founded Takeover, a Nevada corporation, and served as an Officer and Board Member of Takeover, and harmed Takeover by the acts described below.  As such, Holley purposefully directed activities at Nevada, and availed himself of the privilege of conducting activities in the forum.

12.    McBride co-founded Takeover, a Nevada corporation, and served as an Officer and

Board Member of Takeover, and harmed Takeover by the acts described below.  As such, McBride purposefully directed activities at Nevada, and availed himself of the privilege of conducting activities in the forum.

13.     Pavlik served as an Officer and Board Member of Takeover, and harmed Takeover by the acts described below.  As such, Pavlik purposefully directed activities at Nevada, and availed himself of the privilege of conducting activities in the forum state.

14.     Zarro is a Nevada citizen, and he is therefore subject to general personal jurisdiction in Nevada.  In addition, Zarro is purportedly serving as an Officer and Board Member of Takeover, and has harmed Takeover by the acts described below.  As such, Zarro purposefully directed activities at Nevada, and availed himself of the privilege of conducting activities in the forum.

15.     NextGen Beverages purposefully directed its activities at Nevada by transacting business with a Nevada corporation, Takeover, and by accepting one or more fraudulent transfers from Takeover.

16.     Venue is proper in this District pursuant to U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this suit occurred in this District and the Defendants are subject to personal jurisdiction in this district.

**FACTS**

**Background**

17.     Upon information and belief, on or about January 12, 2021, Holley and a colleague, McBride, established a beverage business based upon performance water products and energy drinks, under the brand name NXT LVL.

18.     Holley and McBride incorporated their business as a Nevada corporation under the name Takeover Industries, Inc., a Defendant in this matter.

19.     Upon information and belief, on or about February 26, 2021, Labor Smart, Inc. ("Labor Smart"), a publicly traded entity, acquired Takeover, and Takeover became a wholly-owned subsidiary of Labor Smart.  Labor Smart is traded under the stock symbol LTNC as an over-the-counter security, but it is presently delisted.

20.     Upon information and belief, after Labor Smart acquired Takeover, Holley was named a Director of Labor Smart; contemporaneously, Holley was also named Takeover's Chief Operating Officer and Treasurer, while also sitting on Takeover's Board of Directors.

21.     Upon information and belief, Pavlik served as an Officer and Board member for Takeover, and he served as an Officer for Labor Smart.

22.     Upon information and belief, in or around 2021, Takeover began working with Jason Tucker ("Tucker") to continue to build the NXT LVL brand.

23.     Upon information and belief, on or around June 10, 2021, the Directors of Takeover convened a "Special Meeting" and resolved that:

    a.      Takeover would have four Directors: Holley, Tucker, Pavlik, and McBride;

    b.      Tucker would be appointed as the President of Takeover;

    c.      Holley would continue as the Treasurer of Takeover, and he would be appointed as both the Chief Operating Officer and the Chief Financial Officer;

    d.      McBride would serve as Takeover's Chief Executive Officer and Secretary; and

    e.      The parties would complete all paperwork requirements necessary to effectuate these elections and appointments.

24.     Upon information and belief, Takeover grew into a successful brand, signing notable endorsements with celebrities such as hip-hop artist T-Pain and former World Champion

boxer Emanual "Manny" Pacquiao ("<u>Pacquiao</u>").

25.     Upon information and belief, Takeover's contract with Pacquiao (the "<u>Pacquiao Contract</u>") provided that "[Pacquaio] will not, during the term of this Agreement and up to six months following the termination or expiration hereof . . . render services to, furnish materials to, or authorize or permit the use of [Pacquaio's] name, picture, portrait, performance, likeness, voice, biographical materials or endorsements by others for or on behalf of or in connection with products competitive to Takeover's Products."  Upon information and belief, the Pacquaio Contract was executed by Pavlik and Pacquaio on April 27, 2021, and disclosed by LTNC as a public filing on or around May 2021.

<u>**Holley's, McBride's, and Pavlik's Corporate Misdeeds – Alter Ego Liability**</u>

26.     Upon information and belief, in 2021, Takeover learned that Holley authorized over $750,000.00 in distributions without obtaining approval from Takeover's Board of Directors.

27.     Upon information and belief, Holley also charged tens of thousands of dollars in personal expenses to Takeover, and allowed his family to make personal purchases through Takeover.

28.     Upon information and belief, in September 2021, Takeover learned that McBride had spent over $250,000.00 of Takeover funds on personal expenses, including travel and shopping.  As a result, Takeover placed McBride on a leave of absence.

29.     Upon information and belief, in light of these misdeeds, in December 2021, the Takeover Board of Directors convened a meeting and voted to remove Holley from the Board of Directors.  As of December 2021, the Takeover Board of Directors has consisted of McBride, Tucker, and Pavlik.

30.     However, upon information and belief, in November 2022, Holley – who was no

longer on Takeover's Board – and McBride called an illegitimate Board Meeting and purportedly took the following actions on November 7, 2022:

    a.  Reinstated Holley to the Board of Directors;

    b.  Appointed Holley as CFO;

    c.  Terminated McBride's leave of absence for his misuse of funds;

    d.  Appointed McBride as CEO; and

    e.  Appointed Pavlik as Takeover's President.

31.    Upon information and belief, on or about November 8, 2022, McBride, Holley, and Pavlik forwarded "Resolutions" on behalf of Takeover, concluding that the Board Meeting held in December 2021 was improper, and that the "Resolutions" resulting from that meeting should be disregarded.

32.    Upon information and belief, after the November 7, 2022, meeting, McBride began misinforming people, including Takeover's investors, that he was back in control at Takeover.

33.    Upon information and belief, Holley and McBride have also interfered with Takeover's website and interfered with online sales and orders necessary to generate income.

**Deppoleto's Secured Convertible Debt Interest**

34.    Deppoleto is Takeover's primary and largest investor.

35.    As of May 25, 2022, Deppoleto holds a valid and binding debt interest in Takeover.

36.    Deppoleto's material secured convertible debt interest is documented by way of that certain Convertible Note Purchase Agreement dated as of May 25, 2022, by and between Deppoleto, Takeover, and Labor Smart ("NPA") and certain secured notes issued pursuant to the NPA as it has been amended.  A copy of the NPA is attached hereto as **Exhibit A**.

37.    The parties that signed and executed the NPA include: Tucker (Takeover President)

on behalf of Takeover; Michael Costello (Chief Executive Officer of Labor Smart) on behalf of Labor Smart; and Deppoleto.

38.    The principal amount of the first secured note, under the NPA, was $500,000.00, which was issued as of May 25, 2022 ("First Note"), a copy of which is attached hereto as **Exhibit B**.

39.    The NPA was amended by that certain First Amendment to the Convertible Note Purchase Agreement dated as of July 6, 2022 ("First Amendment"), a copy of which is attached hereto as **Exhibit C**.

40.    The parties that signed and executed the First Amendment to the NPA include: Tucker (Takeover President) on behalf of Takeover; Michael Costello (Chief Executive Officer of Labor Smart) on behalf of Labor Smart; and Deppoleto.

41.    The principal amount of the second secured note, under the NPA, was $500,000.00, which was issued as of July 6, 2022 ("Second Note"), a copy of which is attached hereto as **Exhibit D**.

42.    The NPA and First Amendment thereto was amended by that certain Second Amendment to the Convertible Note Purchase Agreement dated August 19, 2022 ("Second Amendment"), a copy of which is attached hereto as **Exhibit E**.

43.    The parties that signed and executed the Second Amendment to the NPA include: Tucker (Takeover President) on behalf of Takeover; Michael Costello (Chief Executive Officer of Labor Smart) on behalf of Labor Smart; and Deppoleto.

44.    The principal amount of the third secured note, under the NPA, was $500,000.00, which was issued as of August 19, 2022 ("Third Note"), a copy of which is attached hereto as **Exhibit F**.

45.     Tucker, McBride, and Pavlik, as the Board of Directors of Takeover, and Michael Costello on behalf of Labor Smart as the primary shareholder of Takeover, also signed joint written consents approving the NPA, First Amendment, Second Amendment, and First Note, Second Note, and Third Note (collectively, the "Consents"), and copies of the Consents are attached hereto as **Exhibit G**.

46.     The Consents authorize and direct the President of Takeover to take such action to execute and deliver, and otherwise effect, the transactions involving the NPA and Deppoleto's related debt interests.

47.     On or about October 27, 2022, Deppoleto loaned Takeover an additional $386,773.86.

48.     On or about November 3, 2022, Deppoleto loaned Takeover an additional $128,924.62 (together with the October 27, 2022, loan, the "Supplemental Loan").

49.     Deppoleto and Takeover agreed that the Supplemental Loan would be funded as part of the NPA and result in a fourth note.

50.     The fourth note would be similar to the Third Note and similarly as secured indebtedness.

51.     Deppoleto and Takeover were in the process of documenting the Supplemental Loan, but the documents were not finalized.

52.     In sum, Takeover has issued Deppoleto the NPA and three secured promissory notes (collectively, "the Notes"), in addition to the debt interest resulting from the Supplemental Loans.

53.     Under the Notes, payment was due and owing to Deppoleto in full on November 21, 2022.

54.     The principal balance that Takeover owes to Deppoleto, inclusive of the Notes and the Supplemental Loan is $2,015,698.48.

55.     On November 8, 2022, Takeover defaulted on the Notes that it issued to Deppoleto.

56.     On or about November 8, 2022, Deppoleto, by and through his attorneys, sent his first Notice of Default and Demand for Payment to Takeover, a copy of which is attached hereto as **Exhibit H**.

57.     In addition to Deppoleto's Secured Convertible Debt Interest, Deppoleto holds 200,000,000 shares of Takeover's common stock.

58.     In or about November 2021, Mr. Deppoleto provided consideration for 200,000,000 common shares in Takeover.

### Takeover's Emergency Motion

59.     Takeover sued Holley and McBride in the United States District Court for the District of Arizona, initiating Case No. 2:22-cv-00357 (the "Arizona Case"). In the Arizona Case, on November 10, 2022, Takeover filed an Emergency Motion for Injunctive Relief (Including Appointment of a Temporary Receiver) (the "Emergency Motion"). Part of Takeover's basis for filing the Emergency Motion was "because Defendant Michael Holley and Third-Party Defendant Toby McBride staged a complete takeover of the [Takeover] business operations this week. By improperly thrusting themselves into leadership, Takeover's employees are threatening to leave, its primary investor has withheld funding essential to the Company's survival, and Takeover is unable to pay current obligations. These parties have hijacked the Company website, interfering with potential orders/sales." (ECF No. 79, the Arizona Case, at p. 1.)

60.     As part of the briefing in opposition to the Emergency Motion, Holley – purportedly acting as a current Member of Takeover's Board of Directors – frivolously called into question

whether Deppoleto loaned, and Takeover received, substantial sums of money from Deppoleto. (*See, e.g.*, ECF No. 88, the Arizona case, at p. 2-3 ("Deppoleto[,] who purports to have loaned Takeover approximately $1.5 million dollars under various notes and another alleged $500,000 . . . .").)  Holley also purported to call into question the validity of Deppoleto's loans, and Deppoleto's Default Notice, which Deppoleto was forced to serve on Takeover after Takeover defaulted on its various obligations to Deppoleto.  (*See id.*)

61.     The Court heard argument on the Emergency Motion on November 15, 2022, and ultimately denied the Emergency Motion, and in so doing, declined to appoint a Receiver.

62.     On or about November 22, 2022, Deppoleto, by and through his attorneys, sent his second Notice of Default and Demand for Payment to Takeover, a copy of which is attached hereto as **Exhibit I**.

63.     As of November 22, 2022, Takeover owed Deppoleto a total of $2,070,098.36.

64.     As of this filing, Takeover's default under the applicable loan documents (including, but not limited to, the NPA and related amendments, the Notes, and the Consents) remains uncured, and Takeover's debt to Deppoleto continues to increase.

### Defendants' Recent Misdeeds

65.     In recent months, Takeover and its purported Officers and Directors, including McBride, Holley, Pavlik, and Zarro, have taken various actions that directly harm Takeover and Deppoleto as a creditor.

66.     Upon information and belief, Zarro is acting as Takeover's CEO and Board Chairman.

67.     Under the terms of the Notes, Takeover was required to obtain Deppoleto's permission to appoint Zarro as an Office and Director, which Takeover has not obtained.

68.     On January 19, 2023, Takeover published a strategy memo stating that Takeover's Board of Directors intended to "spin-out" Takeover.

69.     Under the terms of the Notes, Takeover was required to obtain Deppoleto's permission to undertake and reorganizational efforts, which Takeover has not obtained.

70.     On May 31, 2023, Zarro publicized Lock'd In – a purported spin-out of Takeover – on his Twitter account, and continues to regularly publicize the new entity.

71.     Beginning in June 2023, Lock'd In began selling NXT LVL products on Lock'd In's website, at a substantial discount off of the beverages' retail value.

72.     Upon information and belief, in or around June 2023, Takeover, Holley, McBride, Pavlik, and Zarro shared and/or transferred Takeover's proprietary information, trade secrets, inventory, product ingredients, and other assets with NextGen Beverages.

73.     Moreover, upon information and belief, in or around June 2023, Lock'd In, through its purported Officers and Directors, the individual Defendants, entered into an agreement with Pacquiao, whereby Pacquiao agreed to serve as Lock'd In's brand ambassador, in direct violation of the Pacquiao Contract.

74.     Upon information and belief, Takeover, with assistance from McBride, Holley, Pavlik, and Zarro, transferred assets and inventory to NextGen Beverages, without reasonable consideration in return.

75.     Upon information and belief, Takeover has also wrongfully abandoned other company assets.  On February 14, 2023, Takeover entered into a stipulation to dismiss, with prejudice, all claims against Holley and his wife, Chirine Holley, in the Arizona case.

76.     Upon information and belief, this stipulation was entered without any meaningful consideration provided to Takeover, harming Deppoleto as a Takeover creditor and shareholder,

while at the same time benefitting McBride, Holley, and Pavlik.

**Derivative Allegations**

77.     As purported Officers and Directors of Takeover, Holley, McBride, Pavlik, and Zarro owe fiduciary duties of trust, loyalty, good faith, and due care to Takeover, and to Takeover's shareholders.

78.     Holley, McBride, Pavlik, and Zarro are required to act in furtherance of the best interests of Takeover and its shareholders, and not in furtherance of their personal interest of benefit.

79.     In addition to bringing this complaint in his individual capacity, Deppoleto brings this action derivatively in the right and for the benefit of Takeover to redress injuries suffered, and to be suffered, by Takeover as a direct result of breach of fiduciary duties, waste of corporate assets, and unjust enrichment.

80.     Deppoleto was a shareholder of Takeover at the time of the actions set forth herein, and has continuously been a shareholder since that time.

81.     Deppoleto has sent multiple notices to Takeover, its Board, and its Officers.  These notices alerted them to Holley, McBride, Pavlik, and Zarro's conduct.

82.     As described above, on November 8, 2022, Deppoleto, by and through his attorneys, sent his first Notice of Default and Demand for Payment to Takeover, a copy of which is attached hereto as **Exhibit H**.

83.     As described above, on or about November 22, 2022, Deppoleto, by and through his attorneys, sent his second Notice of Default and Demand for Payment to Takeover, a copy of which is attached hereto as **Exhibit I**.

84.     On or about December 9, 2022, Deppoleto sent via email his third Notice of Default

and Demand for Payment and Cease and Desist.

85.    On or about June 14, 2023, Deppoleto sent via email and mail a Cease and Desist Letter to Takeover, McBride, and Zarro.  This letter reiterated Takeover's default under the Notes and Supplemental Loan, demanded that Takeover stop any efforts to "spin-out" Takeover and provide the new company, NextGen Beverages, with any assets, information, or assistance, or undertake any reorganizational efforts.

86.    As detailed herein, McBride, Holley, Pavlik, and Zarro have participated in Takeover's wrongdoing, including transfer of assets from Takeover to NextGen Beverages.  On August 30, 2023, Deppoleto, through counsel, demanded that McBride, Holley, Pavlik, and Zarro pursue the derivative claims below against Takeover.  Accordingly, it would be futile for Deppoleto to make any further demands on Takeover and its Board of Directors to initiate a lawsuit against McBride, Holley, Pavlik, and Zarro.

## COUNT I
### Declaratory Judgment (Against Takeover)

87.    Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth in full herein.

88.    This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201(1), for the purpose of determining a question of actual controversy between the parties.

89.    Takeover entered into with Deppoleto, and executed, the Notes, which were valid and binding.

90.    Takeover has defaulted on the Notes and has not paid Deppoleto, in accordance with the terms of the NPA.

91.    Further, Deppoleto loaned Takeover an additional $515,698.48 through his Supplemental Loan.

92.     As described in more detail above and in Holley's own briefing in the Arizona case, Holley purports to be a Member of Takeover's Board of Directors and is calling into question the validity of Takeover's obligations to Deppoleto.

93.     As such, an actual controversy exists between the parties concerning whether Notes and the Supplemental Loan are valid and enforceable.

94.     Therefore, it is necessary for the Court to declare that the Notes and the Supplemental Loan are valid and enforceable.

<u>**COUNT II**</u>
**Breach of Contract/Money Judgment (Against Takeover, McBride, Holley, Pavlik)**

95.     Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth herein.

96.     The Notes and the Supplemental Loan are valid, binding, and enforceable contracts between Deppoleto and Takeover.

97.     Takeover has breached the Notes and the Supplemental Loan by not reimbursing Deppoleto when required.

98.     Deppoleto has provided Takeover with proper notice of Takeover's payment obligations and breach.  Deppoleto has requested that Takeover cure its breaches of the Notes and the Supplemental Loan.

99.     Despite due demand, Takeover has failed and refused, and continues to fail and refuse, to pay its obligations to Deppoleto as required by the Notes and the Supplemental Loan.

100.     Deppoleto has been damaged by Takeover's breaches of the Notes and the Supplemental Loan.

101.     In addition, every contract carries with it an obligation to perform in accordance with the duty of good faith and fair dealing.  Takeover, Holley, Pavlik, Zarro and McBride, have

breached their duty of good faith and fair dealing by, among other things, improperly refusing to honor Takeover's payment obligations to Deppoleto, and by frivolously suggesting that Takeover has no obligation to honor the Notes and Supplemental Loan.  Deppoleto has been damaged by Takeover, Holley, Pavlik, Zarro and McBride's breach of the duty of good faith and fair dealing.

102.    In addition to Takeover, Holley, Pavlik, Zarro and McBride are personally liable for this claim, because they have operated as Takeover's alter ego.

**COUNT III**
**Breach of Fiduciary Duty (Against McBride, Holley, Pavlik, and Zarro)**

103.    Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth herein.

104.    McBride, Holley, Pavlik, and Zarro have each asserted, in various forums, that they are each a current Officer or Director of Takeover.

105.    Upon information and belief, Takeover can no longer pay its debts as they come due, and its liabilities are now worth more than its assets.  As a result, Takeover is insolvent under Nev. Rev. Stat. § 112.160.

106.    Takeover's Officers – purportedly including McBride, Holley, Pavlik, and Zarro – therefore owe fiduciary duties to Deppoleto as a creditor.

107.    McBride, Holley, Pavlik, and Zarro breached their fiduciary duties to Deppoleto by, among other things, placing their personal interests ahead of Takeover's creditors, refusing to repay Deppoleto, forming NextGen Beverages while negotiating a settlement with Deppoleto, transferring assets and inventory to NextGen Beverages, sharing trade secrets with NextGen Beverages, placing the future of Takeover in danger by ignoring Takeover's debts owed to Deppoleto, intentionally breaching the Pacquaio Contract, and by transferring Takeover's assets to NextGen Beverages.  In committing these acts, McBride, Holley, Pavlik, and Zarro were

intentionally acting in bad faith, and not on an informed basis and with a view to the interests of the corporation.  In committing these acts, McBride, Holley, Pavlik, and Zarro were engaging in intentional misconduct, fraud, or a knowing violation of the law, and they each had knowledge that their conduct was wrongful.

108.    Deppoleto has been damaged by McBride, Holley, Pavlik, and Zarro's breach of their fiduciary duties.

109.    McBride, Holley, Pavlik, and Zarro are therefore liable to Plaintiff pursuant to Nev. Rev. Stat. § 78.138.

<u>**COUNT IV**</u>
**In the alternative, Fraud/Fraud by Inducement**
**(Against Takeover, Holley, Pavlik, Zarro and McBride)**

110.    Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth in full herein.

111.    In the event that the Court finds against Deppoleto on Counts I, II, or III, Defendants are nevertheless alternatively liable to Deppoleto for fraud/fraud by inducement.

112.    During the course of Deppoleto's negotiations with Takeover, Defendants knowingly made a series of fraudulent misrepresentations to Deppoleto upon which Deppoleto reasonably relied.  With the intent to induce Deppoleto to consent to enter into the Notes and the Supplemental Loan, Defendants represented that Takeover executed the Notes, and entered into the Supplemental Loan, with Deppoleto with the intention of honoring its obligation to repay Deppoleto in full.

113.    Among other representations that Takeover made to Deppoleto, Takeover represented in the NPA that "All corporate action has been taken on the part of the Company, Labor Smart, and their respective officers, directors and stockholders necessary for the

17

authorization, execution and delivery of this Agreement and the Note. . . .  [T]he Company has taken all corporate action required to make all of the obligations of the Company reflected in the provisions of this Agreement and the Note valid and enforceable in accordance with their terms." (Exhibit A § 4.3.)

114.    Takeover entered into the NPA with the intent of inducing Deppoleto to believe that Takeover intended to honor its obligations to Deppoleto, and that the NPA and the three secured notes were valid and enforceable agreements.

115.    The representations in the NPA and three secured notes were consistent with Takeover's other representations that it made to Deppoleto orally and via electronic communications in the weeks leading up to the execution of each loan document.

116.    Further, Takeover made representations to Deppoleto that Deppoleto's Supplemental Loan would be honored and treated similarly to Deppoleto's other three secured notes.

117.    Deppoleto justifiably believed and relied upon Takeover's misrepresentations to Deppoleto's detriment or damage.

118.    Takeover and its agent/counsel either negligently made the misrepresentations, and/or made the misrepresentations with knowledge that they were false or recklessly without caring whether they were true or false. Takeover and its agent/counsel also made the representations based on their personal knowledge or under circumstances in which they necessarily ought to have known the truth or untruth of their statements, and Takeover had an economic interest in the transaction.  Takeover made the misrepresentations with intent to deceive and to induce Deppoleto to act on them to Deppoleto's detriment or damage.

119.    Deppoleto has been damaged by Takeover's misrepresentations.  Reasonably

relying on Takeover's misrepresentations, Deppoleto gave Takeover a principal amount of $2,015,698.48 and believed that Takeover would fulfill its obligation to repay that, along with all other payments required by the NPA, pursuant to its terms.

120.    Accordingly, Takeover, Holley, McBride, and Pavlik, as Takeover's alter ego, are liable to Deppoleto for fraudulent inducement, intentional misrepresentation, negligent misrepresentation, and/or strict liability misrepresentation.

## COUNT V
### In the alternative, Estoppel (Against Takeover, Holley, McBride, and Pavlik)

121.    Deppoleto re-alleges and incorporates by reference the allegations contained in paragraphs 1-86, and 103-120 as if set forth in full herein.

122.    In the event that the Court finds against Deppoleto on Counts I through IV, Takeover is nevertheless alternatively liable to Deppoleto under the estoppel doctrine.

123.    Takeover, before engaging in the wrongful conduct described above, was apprised of the true facts.

124.    Takeover and/or its agent/counsel's promises regarding repayment of Deppoleto's investment in accordance with the terms of the Notes and the Supplemental Loan were promises for which Takeover and/or its agent/counsel should have reasonably expected to induce action of a definite and substantial character on the part of Deppoleto.  Takeover intended that its conduct would be acted upon, or acted in such a way that Deppoleto had the right to believe that it was so intended.

125.    Deppoleto was ignorant of the true state of the facts.

126.    Takeover and/or its agent/counsel's promises did induce such action or forbearance.  Because of Takeover and/or its agent/counsel's promises, Deppoleto detrimentally relied on Takeover's promises and gave Takeover a principal amount of $2,015,698.48.

127.    Injustice can be avoided only be enforcement of the promises.  It would be unjust to allow Takeover to keep Deppoleto's $2,015,698.48, and provide nothing in return, by duping Deppoleto into giving Takeover $2,015,698.48 that Takeover had no intention of repaying.

128.    In addition, Takeover and/or its agent/counsel's actions and promises in convincing Deppoleto to give Takeover a principal amount of $2,015,698.48 induced reasonable, foreseeable, and detrimental reliance thereon by Deppoleto, which was to Deppoleto's detriment.

129.    Accordingly, Takeover, and McBride, Holley, and Pavlik, as Takeover's alter ego, are liable to Deppoleto for promissory estoppel and/or equitable estoppel.

## COUNT VI
### In the alternative, Unjust Enrichment
### (Against Takeover, Holley, McBride, Zarro, and Pavlik)

130.    Deppoleto re-alleges and incorporates by reference all allegations contained in paragraphs 1-86 and 103-129 as if set forth in full herein.

131.    In the event that the Court finds against Deppoleto on Counts I through V, Takeover, Holley, McBride, Pavlik, and Zarro are nevertheless alternatively liable to Deppoleto under the unjust enrichment doctrine.

132.    Deppoleto's giving Takeover a principal amount of $2,015,698.48 conferred a substantial benefit upon Takeover.

133.    Takeover had an appreciation or knowledge of the benefit that would be conferred by Deppoleto's provision of $2,015,698.48.

134.    Takeover accepted or retained the benefit under circumstances that would make it inequitable for Takeover to retain the benefit without payment of its value.

135.    Deppoleto has been damaged by Takeover's actions.

136.    As such, Takeover, and the individual Defendants, as Takeover's alter ego, are

liable to Deppoleto under the unjust enrichment doctrine.

## COUNT VII
### Fraudulent Transfer (Against Takeover, Holley, McBride, Pavlik, and Zarro)

137.    Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth in full herein.

138.    Takeover stands in debt to Deppoleto for repayment of the Notes and Supplemental Loan.

139.    Upon information and belief, on or about June 6, 2023, Defendants transferred Takeover's assets to NextGen Beverages, and NextGen Beverages began advertising Takeover's products for sale on NextGen Beverages' website.   By transferring assets from Takeover to NextGen Beverages, Takeover, Holley, McBride, Pavlik, and Zarro had the actual intent to hinder, delay, or defraud Deppoleto, in violation of Nev. Rev. Stat. § 112.180(a).

140.    Additionally, upon information and belief, Takeover did not receive a reasonably equivalent value in exchange for the transfer of funds from Takeover to NextGen Beverages.  At the time of the fraudulent transfer, Takeover believed, or reasonably should have believed, that it would not be able to repay Deppoleto, in violation of Nev. Rev. Stat. § 112.180(b).

141.    Because the transfers were accordingly fraudulent under applicable law, they are void and without effect and properly subject to disgorgement in favor of Deppoleto to the full extent necessary to satisfy his claims against Defendants.

142.    Deppoleto has been damaged by Defendants' actions.

## COUNT VIII
### Receiving a Fraudulent Transfer (Against NextGen Beverages LLC)

143.    Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth in full herein.

144.     Upon information and belief, Takeover, Holley, McBride, and Zarro transferred assets from Takeover to NextGen Beverages.

145.     Upon information and belief, NextGen Beverages accepted the transfer with knowledge, or if it did not know, recklessly disregarded facts by which it should have known, that Takeover, Holley, McBride, and Zarro transferred Takeover's assets in an effort to hinder, delay, or defraud Deppoleto as a creditor to Takeover.

### COUNT IX
### Aiding and Abetting a Fraudulent Transfer
### (Against Holley, McBride, Pavlik, Zarro, and NextGen Beverages LLC)

146.     Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth in full herein.

147.     Upon information and belief, Holley, McBride, Zarro, and NextGen Beverages had knowledge of the plan to transfer assets from Takeover to NextGen Beverages in an effort to move funds beyond Deppoleto's reach.

148.     Upon information and belief, Holley, McBride, and Zarro assisted in transferring assets from Takeover to NextGen Beverages.

149.     As a result, Deppoleto suffered damages, because Takeover no longer has enough assets to repay Deppoleto.

### COUNT X
### Breach of Fiduciary Duty (Derivatively)
### (Against, McBride, Holley, Pavlik, and Zarro)

150.     Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth in full herein.

151.     McBride, Holley, Pavlik, and Zarro owe fiduciary duties of loyalty, good faith, fair dealing, and due care in managing and administering Takeover's affairs.

152.    McBride, Holley, Pavlik, and Zarro failed to properly exercise their fiduciary duties.  Upon information and belief, among other things:

   a.    McBride, Holley, and Pavlik failed to comply with its corporate formalities by calling an illegitimate Board Meeting for November 7, 2022, and entering illegitimate resolutions regarding Takeover's officers and directors;

   b.    McBride, Holley, Pavlik, and Zarro failed, and continue to fail, to allow Takeover to honor Takeover's contractual obligations to Deppoleto, by failing to cure its defaults and repaying Deppoleto;

   c.    McBride, Holley, Pavlik, and Zarro fraudulently transferred Takeover's assets to NextGen Beverages, effectively ceasing Takeover's operations and vitality as a company.

153.    In committing these acts, McBride, Holley, Pavlik, and Zarro were intentionally acting in bad faith, and not on an informed basis and with a view to the interests of the corporation. In committing these acts, McBride, Holley, Pavlik, and Zarro were engaging in intentional misconduct, fraud, or a knowing violation of the law, and they each had knowledge that their conduct was wrongful.

154.    As a direct and proximate result of McBride, Holley, Pavlik, and Zarro's breaches of their fiduciary duties, Takeover has been damaged, not only monetarily, but also its corporate image and goodwill.  In addition, Deppoleto, in his capacity as a Takeover shareholder, has been damaged.

**COUNT XI**
**Waste of Corporate Assets (Derivatively)**
**(Against, McBride, Holley, Pavlik, and Zarro)**

155.    Deppoleto re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint, as if set forth in full herein.

156.    As a direct and proximate result of McBride, Holley, Pavlik, and Zarro's breaches of their fiduciary duties of loyalty, good faith, fair dealing, and due care, they have wasted corporate assets, and Takeover has been harmed.

**COUNT XII**
**In the Alternative, Aiding and Abetting Breach of Fiduciary Duty (Derivatively)**
**(Against, McBride, Holley, Pavlik, and Zarro)**

157.    Deppoleto re-alleges and incorporates by reference all allegations contained in paragraphs 1-29, 33-76, 80-156 as if set forth in full herein.

158.    In the alternative, in the event that McBride, Holley, Pavlik, and/or Zarro claim or prove that they were not Officers or Directors of Takeover at the times of the acts at issue, McBride, Holley, Pavlik, and/or Zarro are nevertheless liable for aiding and abetting Takeover's Officers and Directors' breach of their fiduciary duties to Plaintiff.

159.    Takeover's Officers and Directors owe fiduciary duties of loyalty, good faith, fair dealing, and due care in managing and administering Takeover's affairs.

160.    For the reasons described above, Takeover's Officers and Directors failed to properly exercise their fiduciary duties.

161.    McBride, Holley, Pavlik, and/or Zarro knowingly participated in Takeover's Officers and Directors' breach.  Upon information and belief, among other things:

a.    McBride, Holley, and Pavlik aided and abetted in Takeover's failure to comply with its corporate formalities by calling an illegitimate Board

24

Meeting for November 7, 2022, and entering illegitimate resolutions regarding Takeover's Officers and Directors;

b.      Because of Takeover's Officers and Directors' actions, Takeover failed, and continues to fail, to honor its contractual obligations to Deppoleto, by failing to cure its defaults and repaying Deppoleto;

c.      With the assistance of McBride, Holley, Pavlik, and Zarro, Takeover fraudulently transferred Takeover's assets to NextGen Beverages, effectively ceasing Takeover's operations and vitality as a company.

162.    As a direct and proximate result of McBride, Holley, Pavlik, and Zarro's participation in Takeover's Officers and Directors' breaches of their fiduciary relationship, Deppoleto has been damaged.

WHEREFORE, Deppoleto demands judgment as follows:

A.      For a declaration that the debt obligations including the Notes and the Supplemental Loan are valid and enforceable, and for judgment in Deppoleto's favor:

   i.      against Takeover, McBride, Holley, and Pavlik on Count II

   ii.     against McBride, Holley, Pavlik, and Zarro on Count III;

   iii.    against Takeover, McBride, Holley, Pavlik, and Zarro on Count VII;

   iv.     against NextGen Beverages on Count VIII;

   v.      against McBride, Holley, Pavlik, Zarro, and NextGen Beverages on Count IX;

   vi.     against McBride, Holley, Pavlik, and Zarro on Count X and Count XI.

B.     In the alternative, Deppoleto demands that the Court enter judgment

      i.     against Takeover, McBride, Holley, Pavlik and Zarro for Count IV,

      ii.     against Takeover, Holley, McBride, and Pavlik for Count V or

             Count VI,

C.     and for relief, and a damages judgment in an amount to be determined at

trial in the amount of at least $2,015,698.48.

D.     For an award of Deppoleto's costs and attorneys' fees in pursuing this

action.

E.     For other and further relief as the court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff, James V. Deppoleto Jr., hereby respectfully demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 30th day of August, 2023.

HUSCH BLACKWELL LLP


By:   /s/ Jennifer E. Hoekel
      JAMES PATRICK SHEA
      Nevada Bar No. 405
      BART K. LARSEN
      Nevada Bar No. 8538
      KYLE M. WYANT
      Nevada Bar No. 14652
      SHEA LARSEN
      1731 Village Center Circle, Suite 150
      Las Vegas, Nevada 89134
      Telephone: (702) 471-7432
      Fax: (702) 926-9683
      Email: jshea@shea.law
      blarsen@shea.law
      kwyant@shea.law

      and

      JENNIFER E. HOEKEL
      Nevada Bar No. 12775
      jennifer.hoekel@huschblackwell.com
      HUSCH BLACKWELL LLP
      8001 Forsyth Boulevard, Suite 1500
      St. Louis, Missouri 63105
      Telephone: 314.480.1500
      Facsimile: 314.480.1505

## <u>VERIFICATION</u>

      Pursuant to 28 U.S.C. § 1746, I declare under penalties of perjury that I have read the foregoing First Amended Verified Complaint, and that the facts in it are true and correct, except as to matters stated to be made upon information bad belief, and, as to such matters, I certify that I verily believe the same to be true.

Dated:  August 30, 2023

DocuSigned by:

1E505C93B8A5402...

_____

James V. Deppoleto Jr.