**EXHIBIT E**

SECOND AMENDMENT
TO
CONVERTIBLE NOTE PURCHASE AGREEMENT

This Second Amendment (this "**Second Amendment**") to that certain Convertible Note Purchase Agreement, dated May 25, 2022, as amended by that certain First Amendment to Convertible Note Purchase Agreement dated July 6, 2022 (the "**First Amendment**" and together, the "**Purchase Agreement**"), by and among Takeover Industries Inc., a Nevada corporation (the "**Company**"), James V. Deppoleto Jr., an individual ("**Purchaser**"), and for the limited purposes provided in Sections 4 and 8.5 of the Purchase Agreement, Labor Smart, Inc., a Nevada corporation and majority shareholder of the Company ("**Labor Smart**"), is made and entered into as of August 19, 2022 (the "**Effective Date**").

RECITALS:

**WHEREAS**, two convertible promissory notes have, prior to this Second Amendment, been issued to the Purchaser pursuant to the Purchase Agreement (the "**Notes**");

**WHEREAS**, the prior issued Notes mistakenly reference May 24, 2022, as the date of the Purchase Agreement, but the Parties acknowledge and agree this was a typographical error and instead such Notes should have referenced May 25, 2022;

**WHEREAS**, the Purchaser desires to provide additional capital to the Company for operating expenses in the amount of Five Hundred Thousand Dollars ($500,000.00) (the "**Additional Note Consideration**");

**WHEREAS**, in exchange for the Additional Note Consideration, the Company desires to sell and issue to the Purchaser a third secured convertible promissory note (the "**Third Note**") in the form attached hereto as Exhibit A;

**WHEREAS**, the Additional Note Consideration is necessary to fulfill operating objectives of the Company that inure to the benefit of both the Company and the Purchaser;

**WHEREAS**, pursuant to Section 9.10 of the Purchase Agreement, the Purchase Agreement may be amended with the written consent of the Company and the Purchaser;

**WHEREAS**, the Company and the Purchaser now desire to amend the Purchase Agreement as set forth herein;

**NOW, THEREFORE,** in consideration of the foregoing, the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Definitions</u>. Capitalized terms used but not defined herein shall have their meanings as set forth in the Purchase Agreement. Capitalized terms defined herein shall have the meanings indicated in the internally set definitions provided in this Second Amendment. The term "**Follow-On Investment**" as set forth in the Purchase Agreement is hereby amended to mean $500,000. The term "**Outstanding Balance**" as

HB: 4887-1256-7598.1

set forth in the Purchase Agreement is hereby amended such that it shall include the outstanding principal and interest balance of the Third Note.

2. <u>Purchase and Sale of Third Note</u>. In exchange for the Additional Note Consideration paid by the Purchaser, the Company shall sell and issue to the Purchaser the Third Note. The Third Note will have a principal balance in the amount of the Additional Note Consideration. For the avoidance of doubt, the principal amount under the Third Note will only accrue interest from and after August 19, 2022.

3. <u>Usage of Funds</u>. Except as otherwise expressly permitted by the Purchaser, the Company shall use the proceeds it receives as Additional Note Consideration only for the funding of physical goods made for sale, marketing expenses and costs (e.g., its online affiliate program and board-approved events), ordinary course employee compensation, contractors, and service agreements; *provided,* no greater than ten percent (10%) of the proceeds will be used for executive compensation.

4. <u>Restatement of Representations and Warranties</u>. The representations and warranties made by the Company and Labor Smart under Section 4 of the Purchase Agreement and in the First Amendment are fully restated hereby and accurate and complete as of the Effective Date (in addition to and not as a replacement for the making of such representations and warranties when initially made by the Company and Labor Smart as part of the Purchaser Agreement). The Purchaser does not waive any of its rights with respect to the representations and warranties made by the Company and Labor Smart under Section 4 of the Purchase Agreement or in the First Amendment by virtue of its execution of this Second Amendment or otherwise, and the Purchaser's rights with respect to such representations and warranties and the representations and warranties made by the Company and Labor Smart under this Second Amendment are regardless of its knowledge of the facts or circumstances that give rise to a claim.

5. <u>Board Appointment Matters</u>. Any additional appointment of a Board Member shall be subject to the written approval of the Purchaser.

6. <u>Access to Company Financials/Materials</u>. In addition to the access rights granted under Section 8.10 of the Purchase Agreement, the Company grants to the Purchaser access to the Company's systems (inclusive of financial, purchasing/vendor, sales and customer, and other business operations) when and as reasonably requested by the Purchaser.

7. <u>Further Assurances</u>. The parties hereto agree to execute such other and further documents and instruments as the Company or the Purchaser may reasonably request to implement the terms of this Second Amendment.

8. <u>Benefit of Amendment</u>. This Second Amendment shall be binding upon, inure the benefit of and be enforceable by the parties hereto and their successors and assigns. No other person shall be entitled to claim any right or benefit hereunder, including the status of a third-party beneficiary of this Second Amendment.

9. <u>Attorneys' Fees</u>. The Purchaser shall be credited an amount equal to the reasonable fees and out-of-pocket expenses of the Purchaser's counsel with respect to this Second Amendment in an amount of $10,000, which shall be credited against the delivery of Additional Note Consideration.

HB: 4887-1256-7598.1

10. <u>Entire Agreement</u>. Except as expressly set forth herein, there are no agreements or understandings, written or oral, among the parties hereto relating to this Second Amendment.

11. <u>Effectiveness</u>. Except as modified hereby, the Purchase Agreement shall remain in full force and effect. All other terms and conditions of the Purchase Agreement, unless context expressly requires otherwise, shall apply to the Third Note and the Purchaser's rights hereunder and with respect thereto in the same manner and to the same extent applicable to the Notes. On and after the Effective Date of this Second Amendment, each reference in the Purchase Agreement to "this Agreement," "hereunder," "hereof," "herein" or words of like import shall mean and be a reference to the Purchase Agreement, as amended by this Second Amendment. If there is any inconsistency between the Purchase Agreement on the one hand, and this Second Amendment on the other hand, then this Second Amendment shall control.

12. <u>Amendment</u>. Neither this Second Amendment nor any provision hereof may be waived, modified, amended, discharged or terminated except in the manner permitted by Section 9.10 of the Purchase Agreement.

13. <u>Counterparts, Facsimile Signatures</u>. This Second Amendment may be executed in any number of counterparts and by different parties to this Second Amendment on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement. Any signature delivered by a party by DocuSign, facsimile or e-mail transmissions shall be deemed to be an original signature hereto.

*r*

IN WITNESS WHEREOF, the parties hereto have executed this Second Amendment as of the Effective Date.

    COMPANY:

    TAKEOVER INDUSTRIES, INC.

By: _/s/ Jason Tucker_____

Print Name: Jason Tucker

Title: President

Address:    c/o Eric Bjorgum
                Karish    Bjorgum
                119 E. Union St., Suite B
                Pasadena, CA 91103

Email Address: eric.bjorgum@kb-ip.com
                           cc: Jason@takeoverind.com

Solely for the limited purposes provided in Sections 4 and 8.5 of the Purchase Agreement:

LABOR SMART:

LABOR SMART, INC.

By: _/s/ Michael Costello_____

Print Name: Michael Costello

Title: Chief Executive Officer

Address:    c/o Eric Bjorgum
                Karish    Bjorgum
                119 E. Union St., Suite B
                Pasadena, CA 91103

Email Address: eric.bjorgum@kb-ip.com
                           cc: Jason@takeoverind.com

IN WITNESS WHEREOF, the parties hereto have executed this Second Amendment as of the Effective Date.

PURCHASER:

DocuSigned by:

_____
4E505C93B0A5402...
James V. Deppoleto Jr.

Address:	1600 Paramount Drive
	Waukesha, WI 53186

Email Address: jdeppoleto@quintecconveyor.com

[Signature Page to Second Amendment to Convertible Note Purchase Agreement]
HB: 4887-1256-7598.1

# EXHIBIT A

**Form of Convertible Promissory Note**

[Attached.]

HB: 4887-1256-7598.1

## (THIRD) SECURED CONVERTIBLE PROMISSORY NOTE

**$500,000.00**                                                               **August 19, 2022**

FOR VALUE RECEIVED, Takeover Industries, Inc., a Nevada corporation (the "**Company**"), hereby promises to pay to James V. Deppoleto Jr. (the "**Holder**"), the principal sum of Five Hundred Thousand Dollars ($500,000), together with interest thereon from the date of this Convertible Promissory Note (the "**Note**"). Interest will accrue at a rate of eight percent (8 ) per annum, compounded annually. Unless earlier converted into Conversion Shares pursuant to Section 3 of that certain Convertible Note Purchase Agreement dated May 25, 2022, by and among the Company, the Holder, and, for limited purposes, Labor Smart, Inc., as amended (the "**Purchase Agreement**"), the unpaid principal amount of this Note, together with any then unpaid accrued interest, shall be due and payable by the Company on the Maturity Date (as defined in the Purchase Agreement) or as otherwise provided in the Purchase Agreement.

Capitalized terms not defined herein will have the meanings set forth in the Purchase Agreement.

1. <u>Payment</u>. All payments will be made in lawful money of the United States of America at the principal office of the Company, or at such other place as the Holder may from time to time designate in writing to the Company. Payment will be credited first to accrued interest due and payable, with any remainder applied to principal. No principal or accrued interest under this Note may be prepaid by Company.

2. <u>Security</u>. All Obligations evidenced by this Note are secured by a continuing general lien upon, and security interest in, the Collateral.

3. <u>Conversion of the Notes</u>. This Note and any amounts due hereunder will be convertible into Conversion Shares in accordance with the terms of Section 3 of the Purchase Agreement.

4. <u>Amendments and Waivers; Resolutions of Dispute; Notice</u>. The amendment or waiver of any term of this Note, the resolution of any controversy or claim arising out of or relating to this Note and the provision of notice among the Company and the Holder will be governed by the terms of the Purchase Agreement.

5. <u>Successors and Assigns</u>. This Note applies to, inures to the benefit of, and binds the respective successors and assigns of the parties hereto; provided, however, that the Company shall not assign its obligations under this Note without the written consent of the Holder. The Holder may, in its sole discretion, transfer or assign any or all of its rights, interests, duties or obligations under this Note to a Permitted Transferee with written notice thereof to the Company. Except for a transfer or assignment to a Permitted Transferee, Holder shall not transfer or assign its obligations under this Note without the written consent of the Company.

6. <u>Limitation on Interest</u>. In no event will any interest charged, collected or reserved under this Note exceed the maximum rate then permitted by applicable law, and if any payment

HB: 4887-1256-7598.1

made by the Company under this Note exceeds such maximum rate, then such excess sum will be credited by the Holder as a payment of principal.

7. <u>Events of Default; Remedies</u>.

7.1 The occurrence of any one or more of the following shall constitute an "**Event of Default**":

(a) the Company fails to pay timely any of the principal amount due under this Note on the date the same becomes due and payable or any unpaid accrued interest or other amounts due under this Note on the date the same becomes due and payable;

(b) the Company breaches any representation, warranty, or covenant provided in the Purchase Agreement;

(c) the Company files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or makes any assignment for the benefit of creditors or takes any corporate action in furtherance of any of the foregoing; or

(d) an involuntary petition is filed against the Company (unless such petition is dismissed or discharged within thirty (30) days under any bankruptcy statute now or hereafter in effect), or a custodian, receiver, trustee or assignee for the benefit of creditors (or other similar official) is appointed to take possession, custody or control of any property of the Company.

7.2 Upon the occurrence of any Event of Default, the Holder may declare all or any portion of the Obligations to be immediately due and payable in full; <u>provided</u>, that in the event of an Event of Default under <u>Section 7.1(c)</u> or <u>(d)</u> above, all Obligations and all other sums payable hereunder shall become and be immediately due and payable in full without any action on the part of the Holder.

7.3 Upon the occurrence of any Event of Default and during any period in which such Event of Default is ongoing, all amounts due but not paid under this Note shall automatically bear interest at a rate of eighteen percent (18 ) per annum (or, if lower, the highest rate permissible under applicable law), compounded monthly.

8. <u>Company Waiver; Delays and Omissions.</u> The Company hereby waives demand, notice, presentment, protest and notice of dishonor. It is agreed that no delay or omission to exercise any right, power or remedy accruing to the Holder, upon any breach or default of the Company under this Note shall impair any such right, power or remedy, nor shall it be construed to be a waiver of any such breach or default, or any acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring.

9. <u>Choice of Law</u>. This Note, and all matters arising out of or relating to this Note, whether sounding in contract, tort, or statute will be governed by and construed in accordance

HB: 4887-1256-7598.1

with the internal laws of the State of Delaware, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Delaware.

10. <u>Approval</u>. The Company hereby represents that its Board, in the exercise of its fiduciary duty, has approved the Company's execution of this Note based upon a reasonable belief that the principal provided hereunder is appropriate for the Company after reasonable inquiry concerning the Company's financing objectives and financial situation. In addition, the Company hereby represents that it intends to use the principal of this Note for the operations of its business, and not for any personal, family or household purpose.

TAKEOVER INDUSTRIES, INC.

By: *Jason Tucker* (DocuSigned by: B05AB32120BE434...)

Print Name: <u>Jason Tucker</u>

Title: <u>President</u>

HB: 4887-1256-7598.1