JAMES PATRICK SHEA
Nevada Bar No. 405
BART K. LARSEN
Nevada Bar No. 8538
KYLE M. WYANT
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email: jshea@shea.law
blarsen@shea.law
kwyant@shea.law

JENNIFER E. HOEKEL
Nevada Bar No. 12775
jennifer.hoekel@huschblackwell.com
**HUSCH BLACKWELL LLP**
8001 Forsyth Boulevard Suite 1500
St. Louis, Missouri 63105
Telephone: 314.480.1500
Facsimile: 314.480.1505

-and-

PATRICK M. HARVEY
*Admitted Pro Hac Vice*
Patrick.Harvey@huschblackwell.com
**HUSCH BLACKWELL LLP**
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Telephone: 414.273.2100
Facsimile: 414.223.5000

*Attorneys for Plaintiff,*
*James V. Deppoleto Jr.*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

1

2

3  JAMES V. DEPPOLETO JR.,
   Individually and Derivatively on Behalf of
4  Nominal Defendant Takeover Industries
   Incorporated

CASE NO. 2:22-cv-02013-GMN-MDC

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
MOTION FOR PARTIAL SUMMARY
JUDGMENT PURSUANT TO FED. R. CIV. P.
56(a)**

5

6                              Plaintiff,

7  v.

8  TAKEOVER INDUSTRIES
   INCORPORATED,
9  Defendant and Nominal Defendant

10 MICHAEL HOLLEY,

11 TOBY MCBRIDE,

12

13 JOSEPH PAVLIK,

14 TOM ZARRO,

15 and

16

17 NEXTGEN BEVERAGES, LLC

                              Defendants.

18

19        **MEMORANDUM OF POINTS AND AUTHORITIES**

20

21        James  V.  Deppoleto  Jr.  ("Deppoleto"  or  "Plaintiff")  moved  the  Court  for  Partial

22 Summary  Judgment  against  Takeover  Industries  Incorporated  ("Takeover")  with  respect  to

23 Count  II,  Breach  of  Contract,  and  against  Takeover,  Michael  Holley  ("Holley"),  Tom  Zarro

24 ("Zarro")  and  NextGen  Beverages,  LLC  ("NextGen  Beverages")  (collectively,  "Defendants")

25 with respect to Count VII, Fraudulent Transfer.

        Defendants'  Response  Brief  makes  deciding  this  Motion  straightforward.    Takeover
26
27 confirmed  that:  (a)  it  accepted  $2,015,698.48  from  Deppoleto  pursuant  to  the  Notes  and

28

1

Supplemental Loans[1]; (b) Takeover has failed to make good on its promise to repay Deppoleto; and (c) Takeover has transferred property out of Deppoleto's reach.  Rather than disputing those facts, Takeover attempts to defeat Deppoleto's Motion for Partial Summary Judgment through misdirection: with almost no admissible evidence to support its position, Takeover nevertheless invites the Court to adopt novel legal theories, and to engage in speculation about irrelevant allegations that have nothing to do with the straightforward questions at issue in Deppoleto's Motion.

However, none of Defendants' arguments in opposition to Deppoleto's Motion relieve Takeover of its $2 million worth of contractual obligations to Deppoleto, or absolve Takeover from fraudulently transferring assets to company insiders, Holley and Zarro, and to their new company, NextGen Beverages.  Because the undisputed facts demonstrate that no reasonable jury could find in Takeover's favor, the Court should grant Deppoleto's Motion for Partial Summary Judgment.

## ARGUMENT

Takeover failed to overcome Deppoleto's Motion for Summary Judgment.  Although the moving party bears the initial burden, "the burden in opposing a motion for summary judgment is not to be underestimated." *Sorayama v. Robert Bane. Ltd., Inc.*, No. CV 05-1431 FMC (MCX), 2006 WL 8432085, at *4 (C.D. Cal. Jan. 27, 2006).  The non-moving party cannot simply "assert the falsity of the moving party's evidence." *Id.*  Rather, summary judgment is the "***put up or shut up*** moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Allstate Prop. & Cas. Ins. Co. v. Mirkia*, No. 2:12-CV-01288-RCJ, 2014 WL 2801310, at *9 (D. Nev. June 19, 2014) (emphasis added).  Additionally, the non-moving party must put forward "specific facts, and not allegations to show that a genuine factual issue remains for trial."

---

[1] All capitalized terms have the same meanings as used in Deppoleto's Motion for Partial Summary Judgment.  (Dkt. No. 100.)

*DeHorney v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 879 F.2d 459, 464 (9th Cir. 1989). In this case, Takeover has failed to put forward admissible evidence or "specific facts" that would enable a trier of fact to accept its version of events. As such, the Court should grant Deppoleto's Motion for Partial Summary Judgment.

**A.    The Court should grant Deppoleto summary judgment on his breach of contract claim against Takeover.**

Takeover does not dispute the following material facts: (1) Deppoleto loaned Takeover $1.5 million in principal pursuant to the Note Purchase Agreement (the "NPA") and the Notes; (2) Deppoleto made two payments on Takeover's behalf directly to Takeover's vendor, Great Northern Corporation, in the amount of $515,698.48 (the Supplemental Loans); and (3) Takeover has failed to repay Deppoleto. Despite those admissions, Defendants purport to raise several defenses in opposition to Deppoleto's Motion. However, their defenses are meritless.

**1.    A majority of Takeover's Board of Directors consented to the NPA and Notes.**

Takeover argues that the NPA and Notes are not enforceable contracts because Holley did not consent to them. While Holley was one of Takeover's original Directors, Takeover changed the composition of its Board of Directors in December 2021, when the Directors voted to remove Holley from the Board of Directors. (Dkt. No. 102-2 at 81:14-21, 82:11-16; Dkt. No. 102-1 at 28:7-28:15, 93:24-95:1, 97:5-11, 98:1-100:6; Dkt. No. 102-3 at 155:15-21; Dkt. No. 102-4 at 84:23-86:11.) Accordingly, between May 2022 and August 2022 when the NPA and Notes were executed, the Takeover Board solely consisted of McBride, Tucker, and Pavlik. (Dkt. No. 102-2 at 82:11-20.) And those are the Directors who signed the First Consent, Second Consent, and Third Consent that approved Takeover entering into the NPA, the First Amendment, and the Second Amendment. The consents also authorized the President of Takeover to take such actions to execute and deliver, and otherwise effect, the transactions involving the NPA, First Amendment, and Second Amendment and Deppoleto's related debt interest.

3

Even though Takeover does not dispute that Holley was removed from Takeover's Board of Directors in December 2021 (Dkt. No. 111 at 9) – meaning, accordingly, the Board consisted of only Tucker, Pavlik, and McBride at the time that the contracts were entered – Takeover argues that Holley's removal was improper, and that Takeover's contracts with Deppoleto are void.  (Dkt. No. 111 at 11.)  Even if Holley was improperly removed from Takeover's Board of Directors – which Deppoleto disputes, but that question is not material to this Motion – the NPA and Notes are still valid under Nevada corporate law, because a majority of Takeover's Board members consented to the contracts.

Nevada Revised Statute section 78.315(1) provides that an action taken by the *majority* of Board Members is an action *of the Board*:

> Unless the articles of incorporation or the bylaws provide for a greater or lesser proportion, a majority of the board of directors of the corporation then in office, at a meeting duly assembled, is necessary to constitute a quorum for the transaction of business, and the act of directors holding a majority of the voting power of the directors, present at a meeting at which a quorum is present, is the act of the board of directors.

*Id.*  That is important, because even if – as Takeover now claims – Takeover's Board in 2022 consisted of four members (Holley, Pavlik, McBride, and Tucker), three of those members (Pavlik, McBride, and Tucker) signed the Consents, and those three members constituted a majority of the Board.  Therefore, under Nev. Rev. Stat. § 78.315(1), the Consents – which were approved and issued by McBride, Tucker, and Pavlik – constituted actions of the Takeover Board.  *See Pope Invs., LLC v. China Yida Holding, Co.*, 137 Nev. 335, 340, 490 P.3d 1282, 1288 (2021) ("NRS 78.315(1) provides simply that an act by directors holding a majority of the directors' voting power is an act of the board[.]").  Takeover's Response does not contain any admissible evidence to demonstrate that, when the Consents were issued, McBride, Tucker, and Pavlik were not properly serving as Board members.  Therefore, there is no material factual dispute as to whether the Deppoleto agreements are valid.  *See id.*

After the Board signed and issued the Consents, Tucker, as President of Takeover,

signed and executed the NPA and the Notes issued to Deppoleto.  As such, the contracts became a binding obligation on Takeover, as mandated by Nevada corporate law.  Nevada Revised Statute section 78.135(3) provides:

> Any contract or conveyance, otherwise lawful, made in the name of a corporation, which is authorized or ratified by the directors, or is done within the scope of the authority, actual or apparent, given by the directors, binds the corporation, and the corporation acquires rights thereunder, whether the contract is signed or is wholly or in part executory.

*Id.*  Because Tucker was acting pursuant to Consents issued by the Board of Directors, Tucker's execution of the NPA and Notes binds Takeover.  Takeover did not offer any evidence to demonstrate that Tucker was not properly serving as Takeover's President when the contracts were signed and executed.  In short, Takeover failed to raise a genuine dispute of material fact that the NPA and Notes are not valid contracts.

### 2.    The Supplemental Loans constitute valid and enforceable contracts.

As to the Supplemental Loans, neither Takeover's factual nor legal arguments in opposition could convince a reasonable trier of fact to accept Takeover's claim that the Supplemental Loans are invalid and unenforceable.  *See Allstate Prop. & Cas. Ins. Co. v. Mirkia*, No. 2:12-CV-01288-RCJ, 2014 WL 2801310, at *9 (D. Nev. June 19, 2014) (explaining the burden required to overcome a motion for summary judgment).

Takeover disputes that Tucker, Takeover's President, "properly entered" into the Supplemental Loans.  (Dkt. No. 111 at 10, 11.)  Other than Takeover's bare assertion that it "disputes" the validity of the Supplemental Loans, Takeover has not cited any actual evidence to contradict Deppoleto's sworn testimony that he and Takeover agreed that the Supplemental Loans would be funded as part of the NPA and result in a fourth Note, similar to the Third Note.  (Dkt. No.102-15 at 98:22-99:24; Dkt. No. 101 ¶¶ 2-7.)  And, notably, Takeover does not

dispute that Deppoleto made the Supplemental Loan payments on Takeover's behalf directly to Takeover's vendor, Great Northern Corporation, in the amount of $515,698.48. "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." *TRC, Inc. v. United States*, No. 2:09-CV-00205-KJD, 2011 WL 43090, at *2 (D. Nev. Jan. 6, 2011). Takeover's assertion that Tucker did not "properly enter" into the Supplemental Loans, without any evidence in support, is insufficient to create a genuine dispute of material fact.

Takeover's remaining arguments regarding the enforceability of the Supplemental Loans are similarly unconvincing. Takeover contends that the Supplemental Loans are not valid because there was no "clear mutual assent" between Takeover and Deppoleto as to the terms of the Supplemental Loans. (Dkt. No. 111 at 17); *Kurian v. SNAPS Holding Co.*, No. 219CV01757GMNEJY, 2021 WL 4429309, at *4 (D. Nev. Sept. 27, 2021) (requiring mutual assent to form a valid contract). To purportedly support its argument, Takeover references the declarations of Holley and Pavlik; however, neither Holley's nor Pavlik's Declarations include any testimony regarding the Supplemental Loans.[2] On the other hand, Deppoleto has provided sworn testimony that he and Takeover agreed that the Supplemental Loans would be funded as part of the NPA and result in a fourth Note, similar to the Third Note. *See May*, 119 P.3d at 1257 (holding that an enforceable contract exists when the parties agree to the material terms). Even though the Supplemental Loans were not reduced to writing, Deppoleto and Takeover agreed that they would follow form to the terms of the NPA and Notes. As a result, the terms

---

[2] Takeover does not cite to any specific paragraphs in either Holley or Pavlik's Declarations, and it is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Californians for Renewable Energy v. California Pub. Utilities Comm'n*, 922 F.3d 929, 935–36 (9th Cir. 2019).

of the Supplemental Loans are clear and definite.  And after agreeing that the Supplemental Loans would be funded as part of the NPA, Deppoleto made two payments on Takeover's behalf directly to Takeover's vendor, Great Northern Corporation, for the development of product displays for Takeover's gamer shots, which Takeover does not dispute.

Takeover next argues that the Supplemental Loans are unenforceable because the NPA, First Amendment, and Second Amendment contain integration clauses that purportedly "bar incorporating additional loans."[3]  (Dkt. No. 111 at 17.)  But, Takeover misinterprets the reach of the integration clauses.  Paragraph 9.10 of NPA states:

> This Agreement, the Note and the other documents delivered pursuant hereto constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof.  The terms of this Agreement and the Note may be amended and the observance of any term of this Agreement or the Note may be waived (either generally or in a particular instance and either retroactively or prospectively) only in a writing executed by the Company and the Purchaser.

Paragraphs 12 of the First Amendment and Second Amendment similarly state: "Except as expressly set forth herein, there are no agreements or understandings, written or oral, among the parties hereto relating to this Amendment."  The plain terms of the integration clauses explain that the NPA, First Amendment, and Second Amendment contain the parties' entire agreements with respect to those agreements.  *See Fed. Nat'l Mortg. Ass'n v. Westland Liberty Vill., LLC*, 138 Nev. 614, 619, 515 P.3d 329, 334 (2022) ("[Courts] interpret unambiguous contracts according to the plain language of their written terms.").  By their plain terms, the integration clauses do *not* limit *subsequent* agreements between Takeover and Deppoleto, such as the Supplemental Loans.  In other words, the integration clauses have no bearing on the

---

[3] Takeover cites *Morrow v. Morrow*, 103 Nev. 610, 747 P.2d 1386 (1987), in support of its integration clause arguments.  However, Plaintiff is unable to locate *Morrow v. Morrow* because neither the reporter citation of "103 Nev. 610" nor "747 P.2d" return the cited case name, and the only result for "*Morrow v. Morrow*" that Plaintiff could locate is a divorce case from 1945.

7

validity of the Supplemental Loans, because the Supplemental Loans do not modify the terms of the NPA, First Amendment, or Second Amendment.

**3.    Takeover's affirmative defenses are meritless.**

Takeover raises three affirmative defenses in opposition to Deppoleto's breach of contract claim.  None of those three defenses have merit.

**a.    The NPA and Notes are not *void ab initio*.**

First, Takeover contends – without any legal authority in support – that it is relieved of its repayment obligation to Deppoleto because the NPA and Notes were *void ab initio* (void from the beginning).  (Dkt. No. 111 at 4, 28.)  In executing the NPA, Takeover represented that it was not a party to any lawsuit.  However, Takeover now admits that it breached this provision of the NPA because at the time it executed the NPA, Takeover was a party to the Arizona Lawsuit.  And because Takeover breached this representation, Takeover contends that the NPA is *void ab initio*.  In other words, Takeover argues that it should be allowed to accept and spend Deppoleto's money, but then shirk its obligation to repay Deppoleto because it knowingly made a false representation in the NPA.  Takeover's position is nonsensical.  It would incentivize loan borrowers to make false representations in loan agreements to later relieve themselves of their repayment obligations.  That cannot be the law.  Tellingly, Takeover has not cited any legal authority in support of its argument.  For this reason alone, the Court should reject Takeover's argument.  *See Capitol Specialty Ins. Corp. v. Steadfast Ins. Co.*, No. 220CV1382JCMVCF, 2022 WL 17852756, at *4 (D. Nev. Dec. 21, 2022) ("This court is not required to address arguments that are not cogently stated nor supported with relevant authority.").

**b.    Deppoleto did not breach the implied covenants of good faith and fair dealing.**

Second, Takeover argues that it does not have a repayment obligation to Deppoleto, because Deppoleto allegedly violated the implied covenants of good faith and fair dealing that accompanied the NPA and Notes.  (Dkt. No. 111 at 18.)  Takeover's defense fails both factually and procedurally.

i.    **Federal Rule of Civil Procedure 8(c) bars Takeover from raising breach of the implied covenants of good faith and fair dealing at the summary judgment stage.**

As a procedural matter, the Federal Rules of Civil Procedure preclude Takeover from asserting a violation of the implied covenants of good faith and fair dealing as an affirmative defense, because Takeover raised it for the first time in its Response Brief.  Federal Rule of Civil Procedure 8(c) requires that, "[i]n responding to a pleading, a party must affirmatively state any avoidance of affirmative defense."  Fed. R. Civ. P. 8(c)(1).  However, Takeover has never pleaded a breach of the implied covenants of good faith and fair dealing as an affirmative defense.  (*See* Dkt. No. 7, 9, 32.)  In neither Takeover's Answer to the original Complaint, nor its Answer to the First Amended Complaint, did Takeover raise an affirmative defense related to a violation of the covenants of good faith and fair dealing.  (Dkt. No. 7, 9, 32.)  A defendant's failure to plead an affirmative defense prior to the summary judgment stage cannot be excused when it prejudices the plaintiff.  *See Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir.1997).

In this case, allowing Takeover to raise a new affirmative defense of violation of the covenants of good faith and fair dealing would prejudice Deppoleto, because discovery has closed.  Takeover "had ample time to raise an affirmative defense, but has elected to wait until after submitting two answers, performing [discovery], and receiving a motion for summary judgment to do so."[4]  *Trustees of Elec. Workers Health & Welfare Tr. v. Bright Elec.*, Inc., No. 2:11-CV-01746-KJD, 2013 WL 5278239, at *3 (D. Nev. Sept. 18, 2013) (refusing to consider a defendant's affirmative defense that was raised for the first time at summary judgment).  Because Takeover's failure to provide Deppoleto with any notice of this affirmative defense would result in prejudice to Deppoleto, Takeover should not be allowed to assert it now.  *See Martorell v. Bagchi*, No. 319CV00523MMDCLB, 2021 WL 3824661, at *5 (D. Nev. Aug. 25,

---

[4] Plaintiff filed the original Complaint on December 2, 2022 (Dkt. No. 1), and a First Amended Complaint on September 19, 2023 (Dkt. No. 25).  Discovery closed on December 9, 2024.  (Dkt. No. 86.)  In addition, Takeover did not raise this defense in its response to Deppoleto's Emergency Motion for Partial Summary Judgment filed on December 28, 2022.  (Dkt. No. 10.)

2021) (determining that defendants waived their affirmative defenses when allowing them would cause prejudice to the plaintiff).

### ii.    Even if the Court considered Takeover's duty of good faith and fair dealing argument, the argument fails.

Even if the Court considered Takeover's affirmative defense that Deppoleto allegedly violated the implied covenants of good faith and fair dealing, Takeover has not offered evidence in support of its defense. *See Baluma S.A. v. Poff*, No. 220CV1642JCMDJA, 2022 WL 717617, at *2 (D. Nev. Mar. 9, 2022) ("[I]f the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted."). To establish an affirmative defense of breach of the implied covenants of good faith and fair dealing, a defendant must prove: "(1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016), *amended in part*, No. 3:13-CV-0445-LRH-VPC, 2016 WL 11722898 (D. Nev. Nov. 1, 2016) (*citing Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (1995)).

The underlying contract fixes the boundaries of the implied covenants of good faith and fair dealing. *IceMOS Tech. Corp. v. Omron Corp.*, No. CV-17-02575-PHX-JAT, 2018 WL 3329696, at *10 (D. Ariz. July 6, 2018). Accordingly, any breach of the implied covenants of good faith and fair dealing "must be grounded in the terms of the underlying contract." *Id.*; *see also Rutter v. Apple Inc.*, No. 21-CV-04077-HSG, 2022 WL 1443336, at *7 (N.D. Cal. May 6, 2022) ("[T]he implied covenant of good faith and fair dealing only extends to obligations expressed in the actual contract."). In short, the contracting parties must "refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984).

In this case, Takeover's defense fails because it has not offered any explanation as to how Deppoleto's alleged actions injured Takeover's right to receive the benefits of the NPA and Notes. Takeover specifically alleges that Deppoleto violated the implied covenants of

10

good faith and fair dealing by "removing Pavlik from the Board of Directors, excluding Pavlik from Company meetings, suspending McBride from the Company, representing himself as a 'Director' or Takeover, and marketing products to third parties without the knowledge or authorization of McBride or Pavlik." (Dkt. No. 111 at 5-6 (cleaned up).)

As an initial matter, several of Takeover's factual allegations are undeniably false. First, there is no evidence that Pavlik was ever removed from Takeover's Board of Directors. Pavlik has been a board member since at least November 2021, and remains one today. (Dkt. 102-2 at 77:18-78:7; Dkt. 102-4 at 30:4-6, 35:3-11.) And Pavlik does not contend otherwise in his Declaration. Next, Takeover's Board of Directors, not Deppoleto, voted to remove Holley from the Board of Directors in December 2021. (Dkt. No. 102-2 at 81:14-21, 82:11-16; Dkt. No. 102-1 at 93:24-95:1, 97:5-11, 98:1-100:6; Dkt. No. 102-3 at 155:15-21; Dkt. No. 102-4 at 84:23-86:11.) It is undisputed that Deppoleto was not a Director in December 2021, and never has been. As such, Deppoleto did not vote to remove Holley. (Dkt. No. 102-15 at 43:20-22.) Takeover's false allegations cannot give rise to a violation of the breach of the implied covenants of good faith and fair dealing.

Takeover's remaining allegations that Deppoleto violated the implied covenants of good faith and fair dealing do not even amount to a "scintilla of evidence" in support of Takeover's defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (explaining that "there must be evidence on which a jury could reasonably find for the party" to overcome summary judgment). Takeover alleges that Deppoleto excluded Pavlik from company meetings and "marketed products to third parties without the knowledge or authorization of McBride or Pavlik." (Dkt. No. 111 at 5-6.) Takeover does not provide any record citations in support of those allegations. However, Takeover is apparently referencing Pavlik's request to Tucker, Takeover's President, to attend a trade show in Las Vegas in October 2022. (Dkt. No. 111-1 at 33.) Although Tucker declined Pavlik's request, as was his prerogative as Takeover's President, Tucker and Deppoleto attended that trade show and, while there, allegedly pitched a joint business opportunity to another beverage company, allegedly without Pavlik and

11

McBride's knowledge. (Dkt. No. 111-1 at 33.) During this pitch, Takeover alleges that Deppoleto marketed himself as a Director of Takeover.

Takeover's only evidence in support of these allegations is Pavlik's Declaration, to which he attached a slide deck that lists Deppoleto as a Director to Takeover. Pavlik alleges that this slide deck was presented during the pitch. Of course, Pavlik admits that he did not attend the pitch meeting, so he has no personal knowledge of its occurrence or what was presented at the meeting. Without personal knowledge, Pavlik's testimony regarding the pitch meeting and the presentation cannot be considered. *See Orr v. Bank of Am.*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *see also* Fed.R.Civ.P. 56(e). More importantly, Deppoleto – who *did* have personal knowledge – specifically testified that, upon the advice of counsel, he never held a Director position with Takeover. (Dkt. No. 102-15 at 43:20-44:5.)

However, even if the Court considers Takeover's allegations, Takeover's defense fails, because Takeover has not connected any of Deppoleto's alleged actions to terms in the NPA or the Notes that Deppoleto allegedly violated. "[T]he implied covenant of good faith and fair dealing cannot create . . . new obligations under the [contract]." *IceMOS Tech. Corp. v. Omron Corp.*, No. CV-17-02575-PHX-JAT, 2018 WL 3329696, at *10 (D. Ariz. July 6, 2018). Deppoleto's implied covenants of good faith and fair dealing to Takeover "only extends to obligations expressed in the actual contract." *Rutter*, 2022 WL 1443336, at *7. And Takeover has not explained what terms of the NPA or Notes were frustrated by Deppoleto's actions. Notably, it is undisputed that Takeover received at least $1.5 million from Deppoleto pursuant to the NPA and Notes, and Takeover has not argued that any of Deppoleto's actions prevented Takeover from receiving the benefits of those funds.

### 4. The "Instrumentality Theory" has no application to this case.

For its final affirmative defense, Takeover argues that the "instrumentality theory" excuses it from repaying Deppoleto the Notes and Supplemental Loans.[5] The instrumentality

---

[5] As with Takeover's defense of the implied covenant of good faith and fair dealing, Takeover

theory expresses a "rule that, when one corporation controls and dominates another corporation to the extent that the second corporation becomes the 'mere instrumentality' of the first, the dominant corporation becomes liable for those debts of the subservient corporation attributable to an abuse of that control." *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1101 (5th Cir. 1973). Takeover's instrumentality theory argument relies entirely on *Krivo*, a Fifth Circuit case applying Alabama law. Takeover has not cited a single Nevada case that adopts the instrumentality theory, and Takeover has not offered any explanation as to why the Court should adopt it now.[6] Even if the Court were to consider the instrumentality theory from *Krivo*, Takeover fails to satisfy the high burden required to prevail on that theory.

"[T]he control required for liability under the 'instrumentality' rule amounts to **total domination** of the subservient corporation, to the extent that the subservient corporation . . . functions solely to achieve the purposes of the dominant corporation." *Id.* at 1106 (emphasis added). Neither the "mere loan of money" from a lender to a borrower, nor "[m]erely taking an active part in the management of the debtor corporation" constitutes total control under the instrumentality theory. *Id.* at 1105. *Krivo* also recognized that "inherent in any creditor-debtor relationship" is the major creditor's "capacity to exert great pressure and influence" over the debtor, but the "existence and exercise of such power" does not by itself rise to the level of control for the purposes of the instrumentality rule. *Id.* at 1114.

Takeover argues that the instrumentality rule applies to preclude Deppoleto's recovery under the Notes and Supplemental Loans for three reasons: (1) because Deppoleto allegedly promoted himself as a Director of Takeover; (2) because an accountant who formerly worked with Deppoleto offered to assist Takeover to "streamline the admin[istrative] and accounting duties for Takeover'; and (3) because Takeover entered a business deal with Dollar General that Pavlik allegedly advised against. Once again, Takeover's argument fails, because it relies

---

has never timely pleaded this defense, either.

[6] Plaintiff has not identified any case law in Nevada or the Ninth Circuit discussing the "instrumentality theory."

13

entirely on inadmissible evidence. *See Orr*, 285 F.3d at 773 ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

First, and as already explained above, the only evidence that Takeover offers in support of its allegation that Deppoleto promoted himself as a Director of Takeover is a single presentation slide that amounts to inadmissible hearsay from Pavlik. Next, Takeover argues that Deppoleto "sought to control" Takeover because an accountant that worked with Deppoleto offered to assist with Takeover's administrative and accounting duties. (Dkt. No. 111 at 19-21.) In support of this allegation, Takeover cites to email correspondence between the accountant, Amy Allen, and Tucker, Takeover's President. However, this email correspondence is inadmissible, because it is not authenticated by either Allen or Tucker, and it therefore cannot be considered on summary judgment. *See Stokes v. Olympian Leisure Servs.*, No. 2:22-CV-01228-CDS-MDC, 2024 WL 1928748, at *2 (D. Nev. May 1, 2024) ("Under [Fed. R. Civ. P.] 56(e), exhibits attached to affidavits for the purpose of summary judgment must be identified and authenticated."); *see also Orr*, F.3d at 773 ("Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

Third, Takeover provides lengthy quotations from Pavlik's deposition, to apparently argue that Deppoleto influenced a business deal that Takeover entered with Dollar General.[7] Once again, Takeover's argument relies entirely upon inadmissible evidence in the form of hearsay from Pavlik. Pavlik plainly stated that he "had no real involvement" with the deal. (Dkt. No. 102-4 at 22:3-8; *see also id.* at 21:16-22:8 ("I wasn't involved in all the financial dealings;" "I was, you know, pretty much not involved in any of the correspondence with the additional investments;" *id.* at 25:4-8 ("I was sort of frozen out and had limited knowledge of what was going on, other than what I learned after the fact.").) Because Pavlik has no personal knowledge of Takeover's alleged deal with Dollar General or Deppoleto's involvement,

---

[7] It is genuinely difficult to discern Takeover's argument, because Takeover provides lengthy citations without any supporting explanation.

HB: 4904-3173-7368.3

Takeover's argument necessarily fails.

But even if the Court considers all of Takeover's (inadmissible) evidence and accepts a legal doctrine that Nevada has never recognized, Deppoleto's involvement with Takeover still does not rise to the level of control required to determine that Takeover was a "mere instrumentality" of Deppoleto and that Deppoleto abused that control. *See Krivo*, 483 F.2d at 1101. Deppoleto's alleged control over Takeover – allegedly arising from a singular reference to Deppoleto as a Director, Allen's offer of accounting assistance, and a business deal with Takeover – does not amount to "total domination" required to prevail on its defense. *See id.* at 1106 (holding that an internal auditor installed by the creditor at the debtor corporation who "provided internal financial management assistance," "kept a tight rein on disbursements," and "was not afraid to exercise his power," did not rise to the level of control for the purposes of the instrumentality rule).

In conclusion, Takeover failed to demonstrate a dispute of material fact that would preclude a determination that Takeover entered valid contracts with Deppoleto in the form of the NPA, Notes, and Supplemental Loans; that Takeover breached its repayment obligations to Deppoleto; or that Deppoleto has been damaged as a result. *See, e.g.*, *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920 (D. Nev. 2006) (providing the three required elements to succeed on a breach of contract claim). Therefore, there is no genuine dispute that Takeover is liable for breach of contract. As such, the Court should grant Deppoleto's Motion for Partial Summary Judgment against Takeover on Count II.

**B.**    **The Court should grant Deppoleto summary judgment on his fraudulent transfer claim.**

Takeover argues that Nevada's business judgment rule shields it from liability for fraudulently transferring assets, and that the same rule protects Holley and Zarro from judgment against them for receiving the fraudulent transfers. However, the Nevada business judgment rule offers them no such protection, and because of their failure to raise a genuine dispute of material fact, Deppoleto is entitled to judgment as a matter of law on the fraudulent

transfer claim against Takeover, NextGen Beverages, Holley, and Zarro.

The reasonable business judgment rule provides, in relevant part, that:

> [D]irectors and officers, **in deciding upon matters of business**, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation.  A director or officer is not individually liable for damages as a result of an act or failure to act **in his or her capacity as a director or officer** except as described in subsection 7.

Nev. Rev. Stat. § 78.138(3) (emphasis added).  Subsection 7 states:

> [A] director or officer is not individually liable to the corporation or its stockholders or creditors for any damages as a result of any act or failure to act **in his or her capacity as a director or officer unless**:
>
>> (a)  The presumption established by subsection 3 has been rebutted; and
>>
>> (b)  It is proven that:
>>
>>> (1) The director's or officer's act or failure to act constituted a breach of his or her fiduciary duties as a director or officer; and
>>>
>>> (2) Such breach involved intentional misconduct, fraud or a knowing violation of law.

Nev. Rev. Stat. § 78.138(7) (emphasis added).

**1.    The reasonable business judgment rule does not shield Takeover from liability for its corporate actions.**

As the business judgment rule makes plain, it operates to protect officers and directors from *individual* liability for their good faith actions taken in their official capacities.  *Guzman v. Johnson*, 2021, 483 P.3d 531, 137 Nev. 126.  As the plain text of the statute demonstrates, the business judgment rule is silent as to protections for the corporation itself.[8]  Accordingly, the business judgment rule does not shield Takeover for liability for the following fraudulent transfers: (a) dismissing its legal claims against Holley in the Arizona Lawsuit; (b) paying Holley a $5,000.00 "settlement payment" after wrongfully dismissing the Arizona Lawsuit; (c)

---

[8] If the business judgment rule applied to actions of corporations, corporations would never be liable for claims as simple as breach of contract since they could always claim that it was in their business interest to breach the agreement.

16

selling hydrogen water to Zarro for 40% of its retail value; (d) selling gamer shots to Zarro for 30% of its retail value; (e) transferring the recipe for Takeover's hydrogen water to NextGen Beverages; and (f) transferring to NextGen Beverages at least $25,000.00.

In addition to Takeover's misplaced argument regarding the business judgment rule, Takeover contends that it is not liable for fraudulent transfer because Deppoleto has not proven that Takeover acted with fraudulent intent.  Takeover is mistaken.  Under Nevada's Uniform Fraudulent Transfer Act (UFTA), actual intent can be determined by several factors outlined in the statute.  *See* Nev. Rev. Stat. §§ 112.80(2)(a), (d), (h), (i), (j).  It is undisputed that Takeover acted with actual intent, because its transfers to NextGen Beverages, Holley, and Zarro occurred after Deppoleto sued Takeover in this lawsuit (*see* Nev. Rev. Stat. 112.180(2)(d)); the consideration that Takeover received in exchange for the transfers was not reasonably equivalent to the value of the assets transferred (*see* Nev. Rev. Stat. 112.180(2)(h)); and Takeover was insolvent at the time of the fraudulent transfers (*see* Nev. Rev. Stat. 112.180(2)(i)).  But even if Deppoleto had not proven Takeover's actual intent to transfer assets beyond Deppoleto's reach, Takeover is still liable for constructive fraudulent transfer (*see* Nev. Rev. Stat. §§ 112.180(b)(1)-(2)), and for fraudulent transfer by an insolvent debtor (see Nev. Rev. Stat. § 112.190(1).  Takeover does not dispute that it made the fraudulent transfers at a time when its assets "were unreasonably small in relation to the business," *see* Nev. Rev. Stat. § 112.180(b)(1) (constructive fraudulent transfer), or that Takeover was insolvent at the time of these transfers, *see* Nev. Rev. Stat. § 112.190(1) (fraudulent transfer by an insolvent debtor).

Takeover also attempts to raise factual disputes regarding its transfer of the hydrogen water recipe and at least $25,000.00 to NextGen Beverages.  But none of Takeover's arguments rise to the level of creating a genuine dispute of material fact.  First, Takeover contends that the Court should set aside NextGen Beverage's admission that it received the hydrogen water recipe, and instead only consider the testimony of Pavlik, who claims that NextGen Beverages created brand-new products.  However, Zarro served as NextGen Beverage's Rule 30(b)(6) corporate representative, and when asked whether NextGen Beverages has used any recipes

from Takeover, Zarro testified that: "[T]he hydrogen water that NextGen sells is a product that shares a recipe that Takeover used to have before they discontinued the product and sued the manufacturer.  That would be a shared recipe if you will."  (Dkt. No. 102-23 at 13:17-14:3.)  Because Zarro was testifying as NextGen's corporate representative, "there is no distinction between the corporate representative and the corporation, and the witness's testimony binds the company."  *Hi Q, Inc. v. Zeetogroup, LLC*, No. 22-CV-1440-LL-DDL, 2023 WL 4096224, at *4 (S.D. Cal. June 20, 2023).  As such, according to NextGen Beverages, it is undisputed that it received the hydrogen water formula from Takeover.

Second, Takeover argues that it is not liable for fraudulently transferring $25,000.00 to NextGen Beverages, because Takeover claims it transferred that money to NextGen Beverages pursuant to a loan agreement.  Takeover's defense falls flat.  Notably, Takeover does not dispute that it made those transfers to NextGen Beverages, which apparently used the funds for legal fees.  (Dkt. No. 111 at 27.)  And even if Nevada law recognized that purported loan agreements are a defense to fraudulent transfer claims – a position for which Takeover offers no legal authority – Takeover has not offered any evidence that NextGen actually repaid Takeover.  Because Takeover cannot defeat summary judgment "by relying solely on conclusory allegations unsupported by factual data," Deppoleto is entitled to judgment as a matter of law against Takeover for fraudulent transfer.  *See Bullard v. Las Vegas Valley Water Dist.*, No. 215CV00948JADVCF, 2018 WL 715358, at *9 (D. Nev. Feb. 5, 2018).

**2.    The reasonable business judgment rule does not apply to Holley's and Zarro's acceptance of fraudulent transfers in their personal capacities.**

It is undisputed that Holley and Zarro accepted fraudulent transfers from Takeover, *see Nev. Rev. Stat.* § 112.220(2)(a) (judgment for fraudulent transfers may be entered against "[t]he first transferee of the asset or the person for whose benefit the transfer was made"), yet Holley and Zarro contend that the business judgment rule protects them from judgment.  Defendants misunderstand the scope of the business judgment rule.  Holley and Zarro's argument fails because the business judgment rule only applies to decisions made by an officer or director "**in deciding upon matters of business**" and in "**his or her capacity as a director or officer**."

18

Nev. Rev. Stat. § 78.138(3) (emphasis added).  Stated differently, the business judgment rule limits avenues "to hold directors and officers individually liable for damages **arising from official conduct**."  *Chur v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 136 Nev. 68, 72–73, 458 P.3d 336, 340 (2020) (emphasis added); *see also Shoen v. SAC Holding Corp.*, 122 Nev. 621, 635, 137 P.3d 1171, 1181 (2006) ("The business judgment rule, however, pertains only to directors whose conduct falls within its protections.").  Holley and Zarro cannot seriously contend that they accepted products and settlement payments in their official capacities as Directors and Officers of Takeover.  Because it is undisputed that Holley and Zarro accepted the benefit of Takeover's fraudulent transfers in their individual capacities, the business judgment rule offers them no protection from judgment.

And because there is no dispute that Takeover fraudulently transferred assets, the Court should enter judgment against Takeover for the value of the transferred assets, totaling at least $355,000.00, and the Court should also issue an injunction to prevent Takeover from further disposing of assets.  *See* Nev. Rev. Stat. §§ 112.210(1)(c)(1), (2).  Further, because there is no dispute that NextGen Beverages, Holley, and Zarro accepted fraudulently transferred assets from Takeover – for which the business judgment rule provides them no protection – they should also have judgment entered against them for the value of the transferred assets.

## <u>CONCLUSION</u>

For all the above reasons, the Court should grant Partial Summary Judgment against Takeover on Count II (breach of contract), and against Takeover, NextGen Beverages, Holley, and Zarro on Count VII (fraudulent transfer).

HB: 4904-3173-7368.3

DATED this 14th day of February, 2025.

HUSCH BLACKWELL LLP

/s/ *Patrick M. Harvey*
JAMES PATRICK SHEA
Nevada Bar No. 405
BART K. LARSEN
Nevada Bar No. 8538
KYLE M. WYANT
Nevada Bar No. 14652
SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email: jshea@shea.law
blarsen@shea.law
kwyant@shea.law

JENNIFER E. HOEKEL
Nevada Bar No. 12775
jennifer.hoekel@huschblackwell.com
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
Telephone: 314.480.1500
Facsimile: 314.480.1505

And

PATRICK M. HARVEY
*Admitted Pro Hac Vice*
Patrick.Harvey@huschblackwell.com
**HUSCH BLACKWELL LLP**
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Telephone: 414.273.2100
Facsimile: 414.223.5000

*Attorneys for Plaintiff*
*James V. Deppoleto Jr.*

HB: 4904-3173-7368.3

**<u>CERTIFICATE OF SERVICE</u>**

1.      On February 14, 2025, I served the following document(s): **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a)**

2.      I served the above document(s) by the following means to the persons as listed below:

☒      a.      ECF System:

On all parties appearing, receiving, and requesting notice.

☐      b.      United States mail, postage fully prepaid:

☐      c.      Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐      For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐      For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐      d.      By direct email (as opposed to through the ECF System): Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐      e.      By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐      f.      By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 14, 2025.

By: /s/ *Patrick M. Harvey*