UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES V. DEPPOLETO, JR., Plaintiff, vs. TAKEOVERINDUSTRIES, INCORPORATED, et al., Defendants. | Case No. 2:22-cv-02013-GMN-BNW<br>Las Vegas, Nevada<br>MAY 15, 2025<br>Courtroom 3B<br>MOTION HEARING<br>**C E R T I F I E D C O P Y** |

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

DIGITALLY RECORDED: Liberty Court Recorder (LCR)
2:01 - 4:05 p.m.

RECORDED BY: Elvia Garcia

TRANSCRIBED BY: Judy K. Moore, CRR, RMR
Judy_Moore@nvd.uscourts.gov

Proceedings recorded by electronic sound recording; transcript produced by machine shorthand and computer-aided transcription.

APPEARANCES:

For the Plaintiff: (Via Zoom)

**MR. PATRICK M. HARVEY, ESQ.**
HUSCH BLACKWELL, L.L.P.
511 North Broadway, Suite 1100
Milwaukee, Wisconsin 53202

For the Defendants:

**MR. STEVEN DON BENNION, JR., ESQ.**
LAW OFFICE OF S. DON BENNION
6980 O'Bannon Drive, Suite 400
Las Vegas, Nevada 89117

* * *

LAS VEGAS, NEVADA; MAY 15, 2025; 2:01 - 4:05 P.M.

--oOo--

P R O C E E D I N G S

COURTROOM ADMINISTRATOR: This is the time set in the case of 2:22-cv-02013-GMN-BNW, James D. Deppoleto versus Takeover Industries, Incorporated.

Plaintiff's counsel, please enter your appearance for the record.

MR. HARVEY: Good afternoon. Patrick Harvey for the plaintiff.

THE COURT: Good afternoon, Mr. Harvey.

MR. BENNION: Good afternoon, Your Honor. Don Bennion on behalf of defendants.

THE COURT: Good afternoon, Mr. Bennion.

All right. We are here on plaintiff's motion to compel. This is at Document 118. The opposition is at 121 and the reply is 128. I'll give you an overview of today's hearing. I will go ahead and take each of the requests and specific questions -- excuse me. I'll take each of the requests at issue and ask specific questions of the parties as needed. I will rule after each request has been argued, and the transcript today will serve as your written order.

Before we get into each request, let me address the legal standard. The rulings today encompass the following rules: Rules 26, 30, 27, and apparently also 45. As to Rule

26, Rule 26(b) outlines the scope of discovery. The party objecting to discovery bears the burden of persuasion on their objections. As to the remaining rules, the Court incorporates the text of each of those rules in today's rulings. And I think with that, we can go ahead and get into it. Let me get straightened up here.

All right. There's a lot of ground to cover, so I guess I'm going to start with the first set of requests. And this is Takeover; is that correct, Mr. Harvey, Takeover's discovery responses?

MR. HARVEY: Yes, Your Honor.

THE COURT: Okay. So I think this is easy. Requests 2 and 3, the question here is whether there is additional information that needs to be provided. Plaintiff believes everything might have already been provided but just wants to make sure; is that correct, Mr. Harvey?

MR. HARVEY: Yes, Your Honor. That's a theme that goes throughout this, that we need something in writing to confirm nothing has been withheld.

THE COURT: Mr. Bennion?

MR. BENNION: Yes. It's our position that nothing has been withheld, Your Honor.

THE COURT: So as to -- for all of the responses today, this ruling goes to every single response, please go ahead and supplement indicating that, to the extent that there

has not been any supplementation provided, you have not withheld any of the documents based on any objections and that everything has been provided.

Is that sufficient for you, Mr. Harvey?

MR. HARVEY: Yes, Your Honor.

THE COURT: All right. Let's go on to Request For Production Number 9. All right. So this is any and all communications between Mr. Deppoleto and Takeover and any or -- and/or any of Takeover's owners, directors, employees, agents, related to Mr. Deppoleto lending Takeover 386,000 and change in or about October 2022.

The original response is that it is not aware that it has any responsive documents. The amended response incorporates the same response and objects, to the extent that it may call for a legal conclusion. That's Number 9. I think that I can take 9 and 10 together.

Mr. Harvey?

MR. HARVEY: Yes. It's two different loans, but yes, it's essentially the same issue.

THE COURT: And Number 10... Well, let me just go ahead and take Number 9. Okay. So Number 9, I guess the first question that I would have here is I see, Mr. Bennion, the plaintiff states that there have been no documents produced. Are there any other documents responsive to Number 9?

MR. BENNION: Well, there have been documents

produced. And, Your Honor, if I might sit while I --

THE COURT: You might.

MR. BENNION: Thank you. DEF01375 and DEF01384, these are documents that are correspondence with Great Northern, who is the company that was -- that sent an invoice to Mr. Deppoleto.

THE COURT: So that's what plaintiff says, is that you have -- I'm sorry, I guess there have been no additional documents produced, I should have said. So I guess they're saying that the documents that you have provided are invoices from Great Northern, to which Deppoleto paid directly the money at issue here and that these are three pages of email communications but -- yes, so three pages of email communications regarding revisions to the invoices.

MR. BENNION: Yes. They're invoices and email communications in or about January of 2023 from Toby McBride to the representatives at Great Northern. So if I'm amiss in stating we're not aware of any responsive documents, these documents, we believe, are -- do respond to that. They're relevant to that because they are communications but not between Mr. Deppoleto. And so therein, I guess, lies the rub. I don't know if that's the legal term. But they're communications with Great Northern and they've been produced.

THE COURT: Okay. So as to communications between Deppoleto and Takeover, what's your position?

MR. BENNION: That any documents we have have been produced and that we don't have any documents with respect to communications between Deppoleto and Takeover other than the allegations made in the lawsuit.

THE COURT: Okay. Mr. Harvey?

MR. HARVEY: Yes, Your Honor. I just -- with a nearly $400,000 loan, it is sort of a strange credulity that there's not any other communications other than these three pages of emails that they produced. It's a sizeable chunk of money. There had to be discussions internally at Takeover about the substantial loan, and we haven't seen anything.

MR. BENNION: If I could respond, Your Honor. It was at that time when Mr. Holley had been, you know, putatively removed from the company, as well as Mr. McBride had been suspended. Joe Pavlik was being -- there are documents we have produced about communications from Mr. Pavlik to Mr. Deppoleto saying, Please, let's have a meeting; please, discuss with me. At this very time in October 2022, Mr. Deppoleto, unbeknownst to the defendants, was representing himself as a director and -- with Mr. Tucker, and so any communications with Great Northern we don't have. Tom Zarro came into this case the following year and has no knowledge of any of this.

So with respect to communications with Great Northern, yes, there were emails sent in, I believe, January of 2023, and that's what's been produced in Documents DEF01375

to 1384, not just emails but invoices.

THE COURT: All right. So I hear what you're saying, Mr. Harvey. I can only take the representations of counsel at face value. He's an officer of the Court. He knows what his ethical obligations are. So, for the record, I will go ahead and I will overrule your objection. The objection here is that it may call for a legal conclusion, but it's not a valid objection. And in any event, it was not included in the original response and was therefore waived.

So what I'm going to ask you to do, Mr. Bennion, with regard to this specific request, is to issue a declaration stating that, after having reviewed all of the documents in your possession, you do not have responsive documents. If, on the other hand, you happen to find something, of course, please go ahead and provide that to plaintiff.

Any questions before we move on, Mr. Harvey?

MR. HARVEY: No, Your Honor.

THE COURT: All right. Let's go ahead and turn to Number 10. So Number 10 is similar, except that these are communications between Deppoleto and Takeover in October of 2022 regarding a... Let's see. ...regarding the amount of $128,000 and change. So we have the same sort of situation here where defendant's response indicates a range of Bates numbers, the amended response, copies that and injects an objection as to the possibility that it may call for a legal

conclusion.

Is your position the same, Mr. Bennion, regarding this request?

MR. BENNION: It is. And to the extent that -- on your prior ruling, you said a declaration that we have no documents responsive. In our amended response, we put in bold what the amendments were. We didn't cut out what had previously been responded, meaning responding party is not aware of any responsive documents at this time. And perhaps I should have, but for continuity of response, you know, I put in the amended responses in bold. And it's not our position that these documents are not responsive. And I apologize if I should have stricken that first sentence, which was in the response made previously and just -- I'm not going to -- by prior counsel. I didn't want to totally change the response. And perhaps I'm wrong, and I'll look for instruction from the Court on that, but I didn't want to --

THE COURT: So you're saying the amended response should not have included the declaration that you were not aware of any responsive documents and instead it should have only indicated the range of Bates numbers?

MR. BENNION: That's correct, Your Honor.

THE COURT: Okay. All right. As to the substantive answer that I'm seeking for you, is it the same one as you had for Number 9?

MR. BENNION: And -- so to the extent -- to respond to comply with your order, because I believe these documents are responsive that we have newly produced, these ten pages of documents, so perhaps I need to amend the response further to strike the first sentence and to say, these documents that are responsive have been produced, I'm not aware of any further documents.

THE COURT: Okay. Let me just ask Mr. Harvey. Mr. Harvey, go ahead and tell me, what is it about 1375 to 1384 that is not sufficient here?

MR. HARVEY: It's not that those documents aren't responsive. It's that we were expecting more. It's the same issue with the last -- it's invoices and a couple of emails, but it's the same as Number 9.

THE COURT: Understood. Okay. So my order remains the same as to that of 9. I'm overruling the objection on the same grounds and I'm going to direct you, Mr. Bennion, to amend your response and submit a declaration that there are no other documents that satisfy this request. If in -- while you're taking a look at all of your discovery, if you encounter responsive documents, of course, you're obligated to produce those.

MR. BENNION: So the declaration will be there are no other documents responsive to this request?

THE COURT: That you've conducted a thorough review

and that there are no such documents.

All right, Mr. Harvey, before I move on, anything else on this issue?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Okay. Request Number 11, these are documents related to Takeover's board of directors meeting in December 2021. So we have a response here saying no responsive documents, and then there's a range of 11 pages referenced, the amended response is the same one, and there's an objection that it is vague and ambiguous.

Plaintiff states that the Bates referenced are the formal resolutions entered at the December 2022 board of director meeting but Takeover has not produced any communications regarding the December 2021 meeting.

All right. So, Mr. Bennion, I believe that your response was that all of the documents that you have have been produced; is that correct?

MR. BENNION: That's correct. And we referred to an additional document, DEF00527, which had been produced previously in the amended response.

THE COURT: Mr. Harvey?

MR. HARVEY: This is another one where what they produced was actual resolutions that came out of the meeting, but no one sets up a meeting without some sort of communication to set up the meeting, and we suspect that those communications

are fruitful because they were going to be discussing, Here's what we're going to talk about at the meeting. And this meeting is very important for this case. So we've had the resolutions all along, but there had to have been text messages, emails, something to set up the date of this meeting, that type of thing.

THE COURT: Mr. Bennion, I seem to be in agreement with him. I mean, it's bizarre that there would be a meeting with no prior emails or follow-up emails.

MR. BENNION: And what's been produced is what I have, and that's been produced. There is an issue with respect to the break in the line of the board of directors in or about this exact time, for Mr. Holley especially, and in 2022 for Toby McBride and Joseph Pavlik, for different reasons. Mr. Zarro has no information with respect to this because he was not involved in the board of directors until 2023. And so we've produced what I have received, and that is our -- the response that has been --

THE COURT: But the question is what's in your client's possession, custody, and control, not what have you received.

MR. BENNION: Nothing else that I'm aware of.

THE COURT: Okay. So I'm going to task you with the same that I did before. All right? So all of the objections are overruled on the same grounds. The objection is

boilerplate and was not asserted in the original response. I'm going to ask you to please review all of your discovery and see what is in your client's possession, custody, and control. To the extent that there is nothing else that's responsive, your declaration needs to state so. Otherwise, please go ahead and produce.

MR. BENNION: Thank you, Your Honor.

THE COURT: Mr. Harvey, anything else with regard to that request?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: All right. Request Number 12, any and all documents related to Takeover board of directors meeting in November 2022. There's a response. The amended response appears to be identical to the response.

The plaintiff is arguing that the responses provided are just declarations written by the individual defendants summarizing their respective views and that the reference documents are not original source documents.

Mr. Bennion?

MR. BENNION: Yes. There are communications that have been produced, and they're highlighted in bold with respect to DEF534 through 550, as well as DEF565 through 566, which are primarily correspondence with Jason Tucker and the plaintiffs -- or the defendants. So that's been amended. And then we do cite to declarations, but the documents in response

to the boards in November 2022 are cited as having been produced. And this is at a time when, once again, my clients did not have access to the Takeover documents because of the various suspension of Toby McBride, the exclusion of Joseph Pavlik, and the putative removal of Michael Holley.

THE COURT: Mr. Harvey?

MR. HARVEY: Yes, Your Honor. This is the same issue as the last one we were just talking about. Again, no communications about setting up this meeting, and those communications are certainly relevant.

THE COURT: Okay. So I'll go ahead and just make the same ruling that I did before and task you with the same, Mr. Bennion.

MR. BENNION: Understood, Your Honor.

THE COURT: All right. Anything else with regard to this request, Mr. Harvey, or can I move on to the next one?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Request 18, all records and communications that any of NextGen's owners, directors, employees, and agents created while working for Takeover that in any way arise out of or relate to Takeover's business.

All right. So there's been a response indicating a range of Bates numbers. There's an amended response which is a duplicate and also objections on the grounds that this request is vague and ambiguous. Just for the record, I overruled the

objection, given that it's been waived. It's not included in the original response. And, secondly, it is not vague and ambiguous, and the objection is boilerplate.

So, now, getting to the meat of it, the plaintiff's position here is that the documents that have been referenced are loan agreements between Takeover and NextGen Beverages, a summary of loans that Takeover owes and a summary of loans received by NextGen Beverages but that none of those documents produced any communications in response to that request.

Mr. Bennion?

MR. BENNION: Well, they are loan agreements, but the issue is "while working for Takeover," and so, you know, the documents with respect to the loan agreements have been produced. And, specifically, they refer to communications about monies that were paid for legal fees at the time that came out of a Takeover account that then were reimbursed by NextGen. And so these documents are responsive that have been produced.

THE COURT: It seems like you've responded with records. The question is, are there communications?

Is that correct, Mr. Harvey, is that the question here?

MR. HARVEY: Yes, that's exactly the issue, Your Honor, no communications discussing these loans, why they were being given. And we've got a fraudulent transfer claim, among

others, so those are certainly relevant.

MR. BENNION: So the records have been produced. The records do refer to communications with respect to transference of fees, loan agreements to transfer those fees. The documents received have been produced.

THE COURT: Okay. So, again, it's not -- we're not talking about -- "documents received" is not the standard. It's whatever is in your client's possession, custody, or control, number one. Number two, there doesn't seem to be an objection regarding the records that have been received. The question is whether there are communications about these records that have not been produced.

MR. BENNION: Not to my knowledge, Your Honor.

THE COURT: Okay. So I'm going to task you with the same obligations that I did before, conduct a thorough review of your documents and provide a declaration indicating whether there are additional responsive documents or not.

Mr. Harvey, anything else with regard to this request?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Request Number 19, all records or communications of any Takeover records or communications that Takeover's owners, directors, employees, or agents shared with NextGen's owners.

There's been a response stating that defendants are

not aware of any documents responsive to the request. The amended response objects on the grounds that the request is vague and ambiguous, overly broad as to time, definitions, and amount of communications, and also includes a range of Bates stamps for the plaintiff to refer to.

So the objections are overruled. One, they're untimely. Two, they're boilerplate as to the meat of the request. So it seems like Mr. Bennion's position is, of the amended response, in other words, Bates stamps 1370 through 1384, are indeed responsive; is that correct, Mr. Bennion?

MR. BENNION: Yes.

THE COURT: All right. So, Mr. Harvey, let me know, what is it about those Bates stamps that is insufficient?

MR. HARVEY: Well, it's 14 pages, and the owners, directors, they all held jointing positions, not all at the same time, but there was an overlap for months and years. It cannot have seriously only been 14 pages of communications between them.

THE COURT: Mr. Bennion?

MR. BENNION: I think the response would be similar to the last one. This is Takeover as opposed to NextGen. And I don't mean to belabor this, but the response is the same -- I don't mean to short-circuit it either, Your Honor -- that the documents that have been received have been produced. I realize that's not the standard, but that's my response.

THE COURT: And what do you mean by that?

MR. BENNION: That --

THE COURT: Because I'm just not reading through what you're trying to telegraph to me.

MR. BENNION: That these documents that have been produced are responsive and that no additional documents -- and forgive me for saying this because I know it's not the standard. That's what I meant. I didn't mean to telegraph this. I just -- that have been received have been produced. And so -- and to the extent, you know, communication we put in the objections is vague and ambiguous, overly broad as to time, I realize you're making rulings that these are boilerplate objections, but you asked for my response and I'm giving it to you. I'm not trying to telegraph anything.

THE COURT: No, I'm not understanding -- I'm not trying to be -- I'm just not understanding what you mean when you say to me "we produced everything that's been received." And you're making a distinction between what's been received and possession, custody, and control.

MR. BENNION: And I have no understanding that there's further documents in possession, custody, and control. And this goes to Michael Holley's declaration, which I believe is Exhibit H. Maybe not H, but it's K to our opposition to the motion to compel that documents in or about this time were not received from Takeover's -- from the President, then President,

Justin Tucker -- Jason Tucker of Takeover and Mr. Deppoleto, who was acting as a director of Takeover at that time.

Subsequently, NextGen was formed in 2023, and Mr. Zarro's declaration goes to that, which is Exhibit J to our response. But I'm not aware of any additional documents that are responsive to this request.

THE COURT: Okay. Mr. Harvey?

MR. HARVEY: Thank you. Your Honor's observation is hitting the nail on the head. My concern -- I believe that attorney Bennion is producing everything that he's received. My concern is that his clients, certainly not before we filed the motion to compel but even since then, because we keep getting supplements, they didn't do a thorough search and provide to Mr. Bennion what was actually in their custody and control. And that's part of the reason we filed the motion is because it appears that without an actual Court order ordering them to do a thorough and appropriate search, I don't think that they're doing an appropriate search. So that's kind of an overarching theme of this motion, and your observations, like I said, are right on -- you're hitting the nail on the head.

THE COURT: All right. So my ruling on this request is the same one as before. Just conduct a thorough review of the documents, inquire with your clients what's in their possession, custody, and control, and submit a declaration that either states that there are no further documents or produce

any other documents that may be responsive as a result of the new search.

Anything else with regard to this request, Mr. Harvey?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: All right. Mr. Bennion, any questions regarding that?

MR. BENNION: No, Your Honor.

THE COURT: Okay. So moving on to Number 21, records or communications that Takeover's owners, directors, employees, agents sent to NextGen at any point between January 1, 2021, and the present.

Okay. There's been a response here, an amended response, which includes the same previous response and also includes a range of Bates stamped numbers. And it seems like plaintiff seems to believe that there are additional documents out there. Defendants state that the documents produced are indeed responsive to the request.

So, Mr. Harvey, I'll hear from you.

MR. HARVEY: Yes. This is similar, Your Honor. The Bates labels, again, it's -- looks like about ten pages have been produced when there was overlap between the officers and directors. There had to have been more than ten pages of communications in that time frame that we're asking for, January 1, 2021, through the present.

THE COURT: All right. Mr. Bennion, is it the same response, or is there anything else that you need to add?

MR. BENNION: Let me just review the document, Your Honor. I beg the Court's indulgence for a moment.

THE COURT: Sure.

MR. BENNION: No, Your Honor. The response is the same.

THE COURT: All right. My ruling, then, is the same as the previous ruling.

Regarding -- I think that this is it for this first set. Am I missing anything on the first set, or can we move on to the second set? Mr. Harvey?

MR. HARVEY: I believe we can move on to the second set.

THE COURT: All right. RFP Number 7, any and all documents and communications reflecting product inventory held by Takeover.

There's a response here that references some Bates numbers and an amended response that appears to be the same.

So the plaintiff seems to take issue with the fact that these documents do not reflect the product inventory and that it does not contain any communications.

MR. BENNION: Well, it does contain communications, Your Honor, with respect to an endorsement made on September 14, 2021. Also, the documents reflect inventory

value, as well as manufacturing costs. And those are the documents that are referred to in bold and were part of the supplement. So with respect to -- and that's shipping invoices to 7/11 and, as part of DEF01362 through 1371 and DEF01301, refers to the inventory value at that time with respect to the product inventory.

THE COURT: Okay. So I guess two questions. One is whether there are any documents that reference the product inventory; and, two, I think that the other question the plaintiff has is whether the responses are just as to what your client currently held in inventory, as opposed to past inventory as well.

Mr. Harvey, is that correct?

MR. HARVEY: That's correct, Your Honor. There should be monthly inventory counts so that we can see -- one of the issues is, what happened to the inventory in this case? There should be, at a minimum, monthly inventory counts, communications about them, and we just didn't receive anything close to that.

THE COURT: Mr. Bennion?

MR. BENNION: What's been produced is what's been received. There was deposition testimony from Mr. Zarro, to the extent his deposition was conducted, that with respect to shipping invoices of inventory he purchased that I don't believe we had produced, and so I'm not here to try and hide

something, but I believe Mr. Zarro testified to that in his deposition, because he purchased it to try and save the inventory for Takeover at the time. The allegation is that it was at a reduced cost or value and, therefore, it wasn't an arm's length agreement. There's an expiration date on these products, so there are issues with respect to that. So I believe there may be documentation that we haven't produced relevant to this request.

THE COURT: Okay. I appreciate that response. So I'm just going to task you with the same that I did before, and please go ahead and produce what is outstanding just to underline the concerns here, is the product inventory not just that your client currently had when he responded to the request but past requests -- a past inventory -- past monthly inventory counts as well.

So let me just see here. And what's the -- the request here, Mr. Harvey, does not have an end date, so what's the end date?

MR. HARVEY: It would be through the present because we think that they still have inventory on hand that could be sold and used to pay back my client.

THE COURT: Okay. All right. Anything else on this request, Mr. Harvey?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Mr. Bennion?

MR. BENNION: No, Your Honor.

THE COURT: All right. Very well. Let's move on to Request Number 11. The monthly financial statements for each month of 2023 through 2024. There's been a response with a range of Bates stamps.

Plaintiff suspects that there are no deficiencies; however, wants to ensure that's the case.

Mr. Bennion?

MR. BENNION: We've produced bank statements. And I beg the Court's indulgence. I need to get to that exact request.

THE COURT: Okay.

MR. BENNION: I did not know there was an issue, but we have produced bank statements up to and including November 2024 and I believe December 2024, if not January of 2025, and those supplemental productions will be provided.

THE COURT: All right. So to the extent that there are one or two missing, please go ahead and do that immediately.

MR. BENNION: Yes.

THE COURT: Anything else with regard to this request, Mr. Harvey?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: All right. I think that gets us to the third set; is that right?

MR. HARVEY: Yes, Your Honor.

THE COURT: All right. Request For Production Number 1, any and all documents that contain the product formulations for products that were sold by Takeover, including but not limited to, Hydrogen Water and Gamer shots.

There are several objections here. One, that it calls for proprietary documentation possibly including trade secrets. Legal conclusions. It's vague and ambiguous, overly broad, calls for speculation, and lacks foundation. There's also a range of Bates stamps that are noted in the response. The amended response is the same.

So I guess the main issue that we need to talk here about is whether we need to have a protective order in place. Just for the record, I am overruling all of the objections as boilerplate. Nevertheless, I do want to hear on the issue of the need of a protective order.

Mr. Bennion?

MR. BENNION: Well, the documents themselves indicate at the bottom "Confidential. Takeover Industries, Inc. All rights reserved" and then contain formulations of, you know, the ingredients in the Gamer shots.

THE COURT: They're the ones that have been produced or the ones that you currently have?

MR. BENNION: They have been produced.

THE COURT: Okay.

MR. BENNION: And so -- and subject to a protective order -- now, we haven't filed the motion for protective order but believe that there's a need for it. By the same token, there's a need to demonstrate how this is different from the products between Takeover and NextGen. And so, yes, a protective order needs to be filed. Mr. Harvey indicated he was going to file one in January. We've had discussions going back and forth with respect to that. I haven't filed the motion for protective order. I believe one is warranted. I'm a little bit -- I understand the Court's ruling that our objections have been deemed boilerplate, but these documents --

THE COURT: Just to be clear, I'm not suggesting maybe you disclose any additional documents without a protective order in place. So I am -- I'm overruling all of the objections as boilerplate, but I am happy to discuss the issue of the need for a protective order before any additional disclosures are made.

MR. BENNION: Thank you, Your Honor. And that, I think, is our position, is because it contains, you know, calories amount -- I don't want to be too specific -- niacin, the milligram amount, it has --

THE COURT: That's fine. I don't need for you to get into the nitty gritty of it all. I guess my question is, what's the main impediment to reaching a solution as to the protective order here? I mean, is there a need to have a

hearing on a protective order? Can the parties get together and try to process a joint protective order?

MR. BENNION: I don't think there's a need for a motion on it, and that's why I've been reticent to file it. We've had discussions about this, and Mr. Harvey can correct me or argue with me if he thinks I'm wrong, we've had many discussions about it, but there's been language that we've disagreed on that has been less about the content, more about the scope.

THE COURT: Okay.

MR. BENNION: And so -- and we've produced these documents that we actually believe were in their possession as well.

THE COURT: So there are no additional documents that you are withholding based on the need for a protective order?

MR. BENNION: That's correct, my understanding, yes.

THE COURT: All right. Mr. Harvey?

MR. HARVEY: I think we should be able to come to an agreement on a protective order. We sent the last redline over to opposing counsel. We haven't heard back on it, but I would think we would be able to come to an agreement on it.

On the second thing you just asked, though, that can't be the correct answer because the only thing that they've produced that had product ingredients and nutrition facts were

for the Gamer shots, and there were several different products, one being Hydrogen Water, for example. We haven't seen -- and the product information for even the Gamer shots, it didn't say how you mix the ingredients or anything like that. It just says, Here's the ingredients. There have got to be cooking instructions or what-not, for lack of a better term. So I think we should be able to come to an agreement on a protective order without a hearing for it, but then once that's entered, there is certainly documents that we have not had produced and that we need access to.

THE COURT: All right. So I'm going to order the parties to go ahead and submit either a joint protective order -- today is what? Today is the 20 -- no, what's today, the 15th?

MR. HARVEY: The 5th, Your Honor.

THE COURT: So I'm going to ask the parties to submit a joint protective order by the 29th, to the extent that you cannot reach a resolution. I'm going to ask, I believe it would be defendants, who would need to go ahead and file the request for the protective order by that date. Okay? And I will task you, Mr. Bennion, with the same with regard to this request, which is consult with your client, make sure there are no other responsive documents, and submit a declaration.

MR. BENNION: Yes, Your Honor.

THE COURT: Can we move on, Mr. Harvey, to the next

request?

MR. HARVEY: Yes, Your Honor. Thank you.

THE COURT: Okay. Request For Production Number 2, any and all communications and documents reflecting shares that you hold in Labor Smart.

So the response includes objections. It states, "Calls for a legal conclusion. Vague and ambiguous as to the phrase 'reflecting shares that you hold.' May call for speculation and is overly broad." And the amended response -- I'm sorry, there's also a range of Bates that are indicated here in the response. The amended response is the same.

As to the objections, I'm overruling all of them as boilerplate. The plaintiff's concerns here are that defendant's deposition testimony via Takeover owns a substantial number of shares in Labor Smart and that those documents are not contained in the responsive documents.

So, Mr. Harvey, am I missing anything else with regard to this request?

MR. HARVEY: No, Your Honor, other than I think this may be one where after the briefing, after we'd already -- well, this is the second version for the motion to compel we filed, I think after the briefing closed. We may now have everything responsive. If attorney Bennion wants to confirm that in writing, I think that's all that would be necessary at this point. Or if not, obviously produce whatever hasn't been

produced.

MR. BENNION: And I think I can confirm that. You know, one of the issues -- and perhaps I should seek some instruction from the Court -- is about identifying -- you know, there's been 2,000 documents produced, and to the extent maybe I missed five documents that are responsive, I apologize. That's not my intent not to identify those documents, but we've produced -- we've identified three documents here. I think there's more and I think that's what Mr. Harvey is referring to. So I would agree with what he said. I'm not -- I believe we've produced everything. There may be more. And so I will consult with my client and do a declaration based on that.

THE COURT: Wonderful.

Can we move on to the next one, Mr. Harvey?

MR. HARVEY: Yes, Your Honor. Thank you.

THE COURT: Okay. Request For Production Number 3, any and all communications and documents reflecting the purchase, sale, or transfer of shares that you once held or continue to hold in Labor Smart.

There is a response saying, "Objections: Calls for a legal conclusion, vague and ambiguous as to the phrase 'reflecting shares that you hold,' and overly broad." There's a range of Bates being referenced, and the amended response is the same. It seems like the -- I think this is probably the same one as the previous one.

Is there anything different as to this one that is -- Mr. Harvey?

MR. HARVEY: No, Your Honor. I believe it's the same as the previous one.

THE COURT: Okay. So same ruling, then, as to that one.

Mr. Bennion, any issues with that?

MR. BENNION: Nothing further, Your Honor.

THE COURT: Okay. Request For Production Number 4, any and all communications between you and any defendant in this lawsuit since January 1, 2022, that references Mr. Deppoleto or his investment in Takeover.

The objections here are that the request is vague and ambiguous as to the phrase "any and all communications" and "his investment," that it may call for speculation or a legal conclusion and is overly broad. There is also a range of Bates stamps noticed in the response, and the amended response is the same as the original response.

I think, actually, there is additional Bates stamps being provided in the amended response; is that right, Mr. Bennion?

MR. BENNION: It is, Your Honor.

THE COURT: Yeah. All right. So I guess the main concern here from Mr. Harvey is that there are no messages contained in any of the responsive documents between the

defendants and the lawsuit; is that right, Mr. Harvey?

MR. HARVEY: Correct, Your Honor.

THE COURT: And I think --

MR. HARVEY: There should be communications -- oh, I'm sorry. Go ahead.

THE COURT: No, go ahead.

MR. HARVEY: There should and must have been communications about these substantial loans before they came in. There had to have been discussion. Obviously, that's relevant, probative to our claim that these loans were legitimate loans, they knew all about them, that type of thing.

THE COURT: So I note that Mr. Bennion's response does state that text messages were produced between Holley and Zarro, and he notes Bates 1538 to 1545 and further notes that there were 16 pages of additional text messages between Zarro and McBride, and those are Bates 1750 through 1765.

Are you contending that there are additional communications that must be out there, Mr. Harvey?

MR. HARVEY: I believe so, Your Honor. In fact -- and, again, this is not attorney Bennion's fault, but they supplemented again at about 2:00 this morning with additional text messages that I'd never seen before, and those text messages reference a, quote, group chat, end quote, and we've never received anything from this group chat. So this is another concern I have about how much due diligence they did in

looking for materials that were responsive.

THE COURT: All right. Mr. Bennion?

MR. BENNION: Yes. So it's my understanding when documents are received, documents are produced, so, you know, 2:00 in the morning Mr. Harvey's time was near midnight my time. I'm not arguing about that. And with respect to the group chat, my understanding is that -- well, I don't have an understanding with respect to the group chat. I have an understanding with respect to Mr. McBride's phones, and he's been through three that I understand. And so if we need -- and I know there's case law out there with respect to, for example, bank records of a client, and I'm not sure if this would apply to text messages, it might, of phones that are no longer in his possession, information that's no longer in his possession. So if I need to go and to do my due diligence to subpoena AT&T to get that information, then I'll take the instruction from the Court. I don't have -- there's nothing further that's been produced. We have produced text messages between Mr. Holley and Mr. Zarro and Mr. McBride and Mr. Zarro.

THE COURT: All right. So I'll hear from you, Mr. Harvey.

I don't know off the top of my head what the case law is with regard to that specific issue, so I'm only going to order you to produce what's in your client's possession, custody, or control. So I don't know if you're sort of

referring to, like, messages that may exist in a cloud of some sort. Is that what you're referencing? So, again, I don't know that he would have access to that. To the extent he has access, obviously, it would be in his possession, custody, and control. Otherwise, I'm happy to hear arguments on that.

Mr. Harvey?

MR. HARVEY: No. I think that would be an appropriate first step, and we can -- for instance, we should have these group chat messages, and if they tell us they can't, well, then perhaps we can revisit whether there's another method to it, but seems like there's more out there.

THE COURT: Okay. So same ruling as previously. Please go ahead and consult with your client, review what else is responsive, and supplement your response or provide a declaration explaining that no other responsive documents exist.

All right. Can we move on to Request For Production Number 5?

MR. HARVEY: Yes, Your Honor. Thank you.

THE COURT: Any and all communications between you and any defendant in this lawsuit since January 1, 2022, that reference the creation of NextGen Beverages.

There's a response with some objections. There's also Bates stamps being referenced.

It seems like this is pretty much the same as RFP

Number 4. Am I incorrect about that?

MR. BENNION: I don't think --

MR. HARVEY: That's correct, Your Honor.

THE COURT: Mr. Bennion, I'll let you take a look and let me know if you see anything different.

MR. BENNION: Thank you. We're on Number 5, correct?

THE COURT: Yeah. It seems like 5 and 4 are the same. It seems like you're... Let's see. Your amended response says, "See response to Request Number 4."

MR. BENNION: Correct.

THE COURT: So it seems like it's the same response.

MR. BENNION: Correct.

THE COURT: You do note the need for a protective order here, so is this a different protective order than the one we've discussed before, or would it be the same one?

MR. BENNION: This is response to Request Number 5? I apologize if I'm being slow here.

THE COURT: Uh-huh. No, that's okay. There are a lot of requests. So the amended response says, "See response to Request Number 4," then there's legal argument by the plaintiff and there's legal argument by you.

MR. BENNION: Yeah. Forgive me for my delayed response, Your Honor. I do think there may be some subject matter that is -- it's not attorney/client privileged because

these communications were between the clients, so there's -- but we have produced with, I think, two redactions, and so that's what I'm referring to. I don't believe it falls under the work product privilege either, and so maybe the answer is I just need to produce them without the redactions. But in an abundance of caution, that's what I did. We haven't supplemented our privilege log, but having reviewed it myself, I'm willing to produce these communications without redactions if that's the Court's order.

THE COURT: So, I mean, I'm not sure what the redactions are. To the extent that the redactions are proprietary type information -- you're telling me that it's not work product, that it's not attorney/client privilege, so I'm not sure, you know, what the basis for the redaction would be.

MR. BENNION: Understood. Settlement discussions.

THE COURT: I see. Mr. Harvey?

MR. HARVEY: I think that would fall under the same protective order, but yes, I think it would be appropriate, especially if he doesn't really have an objection, it doesn't sound like he does, to produce the unredacted versions.

MR. BENNION: I'm looking for an objection to 4, but it's not attorney/client privilege, it's not work product privilege, but it is settlement discussions. And so maybe I'm wrong to have recontacted that. I'm just being candid with the Court. There are two redactions on the 18, 20 pages of text

messages, but I -- candidly, I'm not sure based on my research that we -- that's why we haven't asserted a privilege. And in an abundance of caution, we sent these yesterday out, and maybe -- I don't mean to be obtuse or -- we'll produce them without redactions.

THE COURT: All right. Any further ruling that's needed from me, Mr. Harvey, with regard to this request?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: All right. That takes us to Holley. So that's a third set of requests, so Request For Production Number 1, any and all communications and documents reflecting shares that you hold in Labor Smart.

There are some objections in the response, as well as a range of Bates numbers. The amended response is the same.

The concern here is that the documentation did not contain any documents actually reflecting the shares that Holley holds in Labor Smart, yet there is an indication that Holley testified that he held substantial shares in Labor Smart.

Mr. Bennion?

MR. BENNION: All right. With respect to documents that we've referred to anew, 1560 through...

THE COURT: 1744?

MR. BENNION: Yes, correct. They do show shares with respect to Labor Smart and...

THE COURT: Whose shares?

MR. BENNION: Mr. Holley's.

THE COURT: Okay.

MR. BENNION: And others as well. I believe Mr. Zarro's. And I don't have those in front of me. I apologize, Your Honor. But to the extent there's additional documents, we're willing to produce them. Mr. Holley is not -- no longer a board member, and that happened last month, so there should be, as I understand it based on my communications with my client two days ago.

THE COURT: All right. So for the record, I'm overruling all the objections as boilerplate, and I'll ask you to just go ahead and do the same as I've tasked you in the previous requests. Consult with your client and supplement and provide a declaration.

Mr. Harvey, anything else with regard to this request?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Request For Production Number 2, any and all communications reflecting the purchase, sale, or transfer of shares that you once held or continue to hold in Labor Smart.

The response notes some objections. It also references some Bates. And the amended response is the same.

It looks like the argument here is the same as the

one in Request For Production Number 1. Is that correct, Mr. Harvey?

MR. HARVEY: Yes, Your Honor.

THE COURT: Mr. Bennion, is your response the same as well?

MR. BENNION: It is, yes.

THE COURT: All right. So same ruling, then, here.

Moving on to Request For Production Number 3, any and all communications between you and any defendant in this lawsuit since January 1, 2022, that references Mr. Deppoleto or his investment in Takeover.

The response notes several objections. It also references some Bates numbers. The amended response is the same as the original response.

So the main contention here from plaintiff appears to be that the documents that are referenced did not contain any text messages, emails, or instant messages between the defendants in this lawsuit; is that right, Mr. Harvey?

MR. HARVEY: Yes, Your Honor.

THE COURT: And the defendant has asserted that Holley has produced text messages with Tom Zarro and notes the following Bates: 1538 through 1545, as well as 24 other documents.

What about that production appears to be deficient, Mr. Harvey?

MR. HARVEY: It's similar to -- it's the same request that we made to Takeover. No emails discussing these substantial loans that my client made that just could not have happened. There had to have been written communications about them. The limited texts that we did get, they're not really responsive to this question at all because they don't discuss the loan or anything like that. They're responsive to other questions but not this one.

THE COURT: All right. So the concern is that even the supplementation does not contain emails. Any other form of written documentation that you believe is out there besides the emails?

MR. BENNION: No, but I think it's --

MR. HARVEY: Well, text message --

MR. BENNION: Oh, sorry.

THE COURT: Go ahead, Mr. Harvey.

MR. HARVEY: I'm sorry. They seem to be texters, so I would think texts and emails.

THE COURT: Okay. Go ahead, Mr. Bennion.

MR. BENNION: Sure. This was at a time when certainly Mr. Zarro was not involved. Mr. Holley was -- had been removed and had been hospitalized in 2002 for Covid, was not -- did not come back in until November. The loan agreement signed by Jason Tucker and Michael Costello on behalf of Takeover are dated May, July, and August of 2022. Mr. McBride

was suspended effective September 2022, and so my understanding is everything has been produced. I mean, I will certainly double check, but I think there's a very, I mean, valid argument as to why there's no communications about it.

THE COURT: Okay. Understood.

So, for the record, I'm ruling the objections as boilerplate, and I'll task you with the same, consult with your client and prepare a declaration based on what you find out.

MR. BENNION: And forgive me, that was amended Response Number 3?

THE COURT: That's Number 3.

MR. BENNION: Thank you.

THE COURT: All right. Number 4, any and all communications between you and any defendant in this lawsuit since January 1, 2022, that reference a creation of NextGen Beverages.

The response references some Bates stamps, and the amended response appears to be the same. And it says, "See response to Request Number 3." So it seems like Request Number 4 and Number 3 are similar in terms of the arguments.

Mr. Harvey, am I right about that?

MR. HARVEY: Yes. The subject matter is just different. This one, we're looking for documents about the creation of NextGen Beverages.

THE COURT: Uh-huh.

MR. HARVEY: But it's -- other than that, it's similar.

THE COURT: Yeah. Well, you know that Holley has only produced seven screen shots of documents between himself and Zarro and no other messages between the defendants about this lawsuit. So, Mr. Bennion, anything that you need to add with regard to this request besides having to double check with your client?

MR. BENNION: No, Your Honor.

THE COURT: All right. So same ruling as the ruling in Number 3. Can we move on to McBride?

MR. BENNION: Yes.

MR. HARVEY: Yes, Your Honor.

THE COURT: All right. McBride third set of requests. Request Number 1, any and all communications and documents reflecting shares that you hold in Labor Smart.

The response contains objections and a range of Bates stamps. The amended response appears to be the same.

The plaintiff's concern here is that the pages that have been produced do not contain any documents reflecting the shares McBride holds in Labor Smart and McBride has failed to indicate whether any responsive materials are being withheld.

Okay. So Mr. Bennion?

MR. BENNION: Beg the Court's indulgence, Your Honor. Forgive me, Your Honor. One more minute.

THE COURT: That's okay. Take your time.

MR. BENNION: To the extent the documents that have been provided are private placement agreements and a resolution of the board of directors -- or the documents that are referred to and have been provided, the amended response was supplemented. I will check again with Mr. McBride, my client, with respect to if he has any more documentation with respect to this response.

THE COURT: All right. So, for the record, I'm overruling the objections as boilerplate, and I will go ahead and incorporate the same order as before with regard to what needs to be done in this case.

Mr. Harvey, anything else on this request?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: All right. Request For Production Number 2, any and all communications and documents reflecting the purchase, sale, or transfer of shares that you once held or continue to hold in Labor Smart.

Okay. Looks like the argument is the same as the one in Request For Production Number 1.

The defendant here objects to this request on the grounds that it calls for a legal conclusion, is vague and ambiguous as to the phrase "any and all communications" and "reflecting shares that you may hold," it calls for speculation and is overly broad.

And Mr. Deppoleto argues by reference to RFP Number 1 -- or incorporates the same arguments, I should say, as in RFP Number 1.

Mr. Bennion?

MR. BENNION: You're correct, Your Honor, the response is the same on the same bases.

THE COURT: Okay. So same ruling, then, as to -- so RFP 1 and RFP 2, same ruling for the same reasons.

RFP Number 3, any and all communications between you and any defendant of this lawsuit since January 1, 2022, that references the creation of NextGen Beverages.

There's a response with several objections. There's also Bates stamps being referenced. The amended response appears to be the same.

The plaintiff's argument here is that the responses do not contain any text messages, emails, instant messages between defendants in the lawsuit.

And the response here by the defendant is that McBride has produced text messages with Tom Zarro and references Bates 1750 through 1765 but notes that McBride has never been part of NextGen Beverages; is that right?

MR. BENNION: Yes.

THE COURT: All right. So I'll hear from you, Mr. Harvey.

MR. HARVEY: Yes. This is the same issue we've gone

over about the documents that they referenced don't actually have anything from him. So the concerns are, where are the communications?

THE COURT: Okay. Same response?

MR. BENNION: Well, the text messages are communications, but Mr. McBride has never been a part of NextGen, so with respect to the request, I don't believe there's anything more to be produced.

THE COURT: All right. So same ruling as before, consult with your client, see if anything needs to be supplemented, and prepare a declaration.

Request For Production Number 4, any and all communications between you and any defendant in this lawsuit since January 1, 2022, that references -- did I just do that? I'm losing my mind. We just did... You know what? I think I copied and pasted the wrong one. Let me just see what the actual request is here. Give me one second.

MR. BENNION: I think it's the same request.

THE COURT: Is it the same request?

MR. BENNION: I think it is.

THE COURT: I think I copied and pasted the wrong one. Let's see. McBride...

MR. BENNION: Your Honor, is it okay if I stand up and stretch my legs?

THE COURT: Of course.

MR. BENNION: Thank you.

THE COURT: Do you need a restroom break?

MR. BENNION: Almost.

THE COURT: You know what? Why don't we do that. Go ahead and take a restroom break. I will let Mr. Harvey get back on, and then we'll continue.

MR. BENNION: Sure. Thank you, Your Honor.

(Recess from 3:10 to 3:16 p.m.)

THE COURT: Okay. So I think that the question was whether RFP Number 4 was the same as RFP Number 3, and at least based on your brief, Mr. Harvey, which is what I used to copy and paste, it's the same request.

MR. HARVEY: It appears that was inadvertently a duplicate. I apologize for that, Your Honor.

THE COURT: No problem. So that means that we can move on to -- well, I think that --

MR. BENNION: Your Honor, could I -- I'm in search of a non-boilerplate objection, and I object as duplicative. Would that be appropriate?

THE COURT: Let's see. As to RFP Number 4?

MR. BENNION: Well, it was 3 that I made that -- and then in 4, I said the same response to Number 4.

THE COURT: So RFP Number 3, I have "Defendant objects to this request on the grounds that it's vague and ambiguous," and you give me the phrases. "Does not specify a

time period. May call for speculation and legal conclusion and is overly broad." Did I miss that he --

MR. BENNION: I thought I had "duplicative" in there as well, in mine, in my brief.

THE COURT: Let me see.

MR. BENNION: That's how we quoted it on Page 20 of the response.

THE COURT: Page 20...

MR. BENNION: At Line 20. It says it's duplicative.

MR. HARVEY: I believe you...

THE COURT: That's the amended response, right?

MR. BENNION: That's correct.

THE COURT: Okay. So the original response does not have the duplicative objection, does it?

MR. BENNION: I apologize for the delay, Your Honor.

THE COURT: That's all right.

MR. BENNION: You're correct, Your Honor.

THE COURT: All right. All right. Does that end this part? This is Mr. McBride's.

MR. HARVEY: I believe it does, Your Honor.

THE COURT: Okay. Let's move on to Mr. Pavlik. All right. Pavlik, this is the third set of requests. Request Number 1, any and all documents that contain the product formulations for products that were sold by Takeover, including but not limited to, Hydrogen Water.

So the -- there's a response here with several objections. There is also a range of Bates that should be noted. The amended response is the same.

So I think that the argument here is that the documents that have been provided do not contain any product formulations for Hydrogen Water, and I believe that the defendants' position is that a protective order is needed; is that correct, Mr. Bennion?

MR. BENNION: That's correct.

THE COURT: All right. So just for the record, I do overrule all of the objections on the grounds that they are boilerplate; however, I do -- I will allow for a protective order to be in place before any additional documents are produced.

With that, is there anything else that needs to be done here, Mr. Harvey?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Mr. Bennion?

MR. BENNION: No, Your Honor.

THE COURT: Request For Production Number 2, any and all documents that contain the product formulations for products that have ever been sold by NextGen, including but not limited to, Hydrogen-enriched waters, Nootropic performance beverages, and Artesian Water.

The response includes several objections and

includes a range of Bates numbers. The amended response is the same as that in the original response.

So the contention from plaintiff is that a lot of these pages have been heavily redacted, and it looks like the reason for that may be the need for a protective order, Mr. Bennion?

MR. BENNION: That's correct, Your Honor. Bates numbers DEF01534 through 1537 have been redacted accordingly because of the -- can I just quote from a non-redacted portion that may -- extracted ingredients from UPDC-approved nutrition facts panel gives you your H2 formula. And so that's why the other portions of those documents have been redacted.

THE COURT: Okay. All right. So I guess what we can do is, I mean, for the record, I'm overruling the objections on the grounds that they are boilerplate; nevertheless, I will allow the protective order here to be in place before any additional documents are produced. It looks like that would take care of that.

Mr. Harvey, anything else?

MR. HARVEY: No, as long as the other documents are going to be produced after the protective order.

THE COURT: All right. That takes us to RFP Number 3, any and all communications and documents reflecting shares that you hold in Labor Smart.

The response contains several objections and also a

range of Bates stamps. The amended response is the same.

The plaintiff's position here is that there has been one responsive document produced reflecting a board resolution that approved the issuance of 3 million shares of Labor Smart to Pavlik but Pavlik has not produced any stock certificates or other communications regarding the issuance of these shares.

Let's see. The defendant's response, I think, is just with regard to the ambiguity of the terms.

Anything else with regard to that, Mr. Harvey?

MR. HARVEY: No, Your Honor.

THE COURT: Mr. Bennion?

MR. BENNION: So the document that's been produced refers to a Takeover Industries minutes of special meeting of directors May 3, 2023, with respect to shares issued to Thomas Zarro and to Michael Holley. To the extent that there are documents with respect to Mr. Pavlik reflecting those shares, I will consult again with Mr. Pavlik to determine if there's anything further.

THE COURT: Okay. For the record, I'm overruling the objections as boilerplate, and I will task you with the same as before, consult with your client and prepare a declaration responsive to the request.

RFP Number 4, any and all communications and documents reflecting the purchase, sale, or transfer of shares that you once held or continue to hold in Labor Smart.

It looks like the arguments here are the same as the previous one; is that right, Mr. Harvey?

MR. HARVEY: They are, Your Honor.

THE COURT: Okay. Mr. Bennion, any response?

MR. BENNION: Yes.

THE COURT: Okay. Same ruling.

That takes us to RFP Number 5, any and all communications between you and any defendants in this lawsuit since January 1, 2022, that reference Mr. Deppoleto or his investment in Takeover.

The response contains several objections, including attorney/client privilege and work product privilege, and also references a range of Bates stamps. The amended response is the same as the original response.

The plaintiff's position here is that these documents include a single email and a single letter and that Pavlik has not produced any messages, for example, text messages, emails, or instant messages, between the defendants in this lawsuit.

And I believe that you're simply relying on your objection, Mr. Bennion; is that right?

MR. BENNION: That's correct. We're not aware of any -- well, I'm not aware of any documents responsive to this request. I don't believe there are, based on Mr. Pavlik's old-school conduct, for lack of a better term.

THE COURT: Okay. So I'm going to overrule all of the objections as boilerplate except as to the attorney/client and work product privilege.

Consult with your client. To the extent that there are documents that fall within these two privileges, then submit a log; otherwise, if they do not fall in the privilege, go ahead and supplement and/or include in your declaration.

Can we move on to the next one, Mr. Harvey?

MR. HARVEY: Yes, Your Honor. Thank you.

THE COURT: All right. Number 6, any and all communications between you and any defendant in this lawsuit since January 1, 2022, that reference a creation of NextGen Beverages.

I think that the arguments here are the same. Is that right, Mr. Harvey?

MR. HARVEY: They are, Your Honor.

THE COURT: Okay. Mr. Bennion, same from you?

MR. BENNION: Correct.

THE COURT: So same ruling as the prior one.

That takes us to Zarro. I guess I do have, just out of curiosity, it says, "Zarro subpoena responses." Why was Zarro subpoenaed since he's a party in the case?

MR. HARVEY: I believe -- I'd have to go back and check the timeline, but I think we sent him a subpoena before he was a party to the case.

THE COURT: Okay.

MR. BENNION: I think that's correct.

THE COURT: I got it. All right. So we'll start with the first one, which is Number 8. Any and all communications between you and any individual that reference any withdrawal or transfer of funds or assets from Takeover.

The response is that defendant was unaware as to any responsive documents but did also reference a range of Bates numbers. The amended response is the same.

And the plaintiff's position here is that, despite these responses, these do not contain communications regarding the withdrawal or transfer of funds.

So I guess I'll ask you, Mr. Bennion, your position is that all relevant documents you have produced?

MR. BENNION: Yes. And documents with respect to transfers or withdrawal of funds from Takeover are reflected in DEF001463 through DEF0153 --

THE COURT: 1503?

MR. BENNION: 1503, thank you.

THE COURT: Is there anything else, Mr. Bennion?

MR. BENNION: Pardon, Your Honor. Some of the documents are -- do pre-date Mr. Zarro's involvement. Some of the documents are after Mr. Zarro's involvement. So to the extent 40 documents -- 41 documents, DEF1463 to 1503, have been provided, I would just make the caveat that he did not become

involved in Takeover until April 17, 2023, at the board of directors meeting. So some documents referenced do pre-date his involvement.

THE COURT: Mr. Harvey?

MR. HARVEY: Yes. This is the same issue. There's withdrawals which are reflected in the balance sheets and reports of payroll that they did produce but no communications about why the money was being transferred. That's just highly suspicious that there was no communication about why this money was moving out of this company that was insolvent at the time.

THE COURT: Okay. So I'll just rule just like I did with other similar requests, go ahead and consult with your client, Mr. Bennion, and supplement accordingly.

MR. BENNION: Will do.

THE COURT: Request 14, any and all communications between you and any individual that mention any investments that you made in NextGen Beverages.

The response is that there's been a diligent review, that there are no responsive documents, but there is also reference to a range of Bates stamps. The amended response is the same.

The plaintiff's position here is that the documents that have been produced include eight screen shots of text messages between Zarro and Holley and private placement agreements between Labor Smart and Zarro, but they do not

contain any further communications, including emails, et cetera.

So it seems to be the same issue as before. The main question here is communications, Mr. Harvey?

MR. HARVEY: Yes.

THE COURT: All right. Mr. Bennion?

MR. BENNION: I think the response would be the same, that my understanding is it's been produced all -- or it -- those records have been provided. To the extent they haven't, I will reconsult with my clients and provide a declaration.

THE COURT: All right. Wonderful. Same order, then, with regard to that.

All right. That takes us to the third set here; is that right?

MR. HARVEY: Yes, Your Honor.

THE COURT: All right. RFP 1, any and all communications and documents reflecting shares that you hold in Labor Smart.

Response is -- there are several objections here. There is also reference to Bates. Same thing with the amended response -- excuse me, the amended response is the same as the original response.

The main contention here is that although the defendant produced some responsive documents representing

shares he acquired in Labor Smart, he has not produced any communications.

So I think that your position here, Mr. Bennion, is that the protective order is needed?

MR. BENNION: That's correct, Your Honor.

THE COURT: All right. So besides -- so once the protective order is in place, you'll go ahead and produce the remaining documents?

MR. BENNION: To the extent that the communications are there, yes.

THE COURT: Okay. Wonderful.

Just for the record, I overrule all the other objections as boilerplate.

Mr. Harvey, anything else with regard to that request?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Okay. RFP Number 2, any and all communications and documents reflecting the purchase, sale, or transfer of shares that you once held or continue to hold in Labor Smart.

The defendant responds with several objections and a range of Bates stamps. The amended response is the same as the original response.

And I guess the contention here is that even though some documents are responsive regarding the shares, there are

no communications.

And I think that the response from Mr. Bennion is that a protective order is needed?

MR. BENNION: Correct, Your Honor.

THE COURT: All right. Same ruling as RFP Number 2.

I think that I can say that RFP Number 3 and 4 are the same. Let me know if there's any -- I mean, are there going to be different positions taking us through Request For Productions 3 and 4? Go ahead and take a quick look.

MR. HARVEY: The arguments are going to be the same. 3 was looking for communications about Mr. Deppoleto's investment. 4 was looking for communications about the creation of NextGen. So it's two different questions, but the arguments are going to be the same.

THE COURT: Correct. I think that the response here from Mr. Bennion is that a protective order is needed.

MR. BENNION: That's correct, Your Honor.

THE COURT: All right. Same ruling, then, with regard to 3 and 4.

That takes us to NextGen. This is the first set, Request Number 3, any and all documents containing monthly financial statements of NextGen for each month of 2023.

There are objections here, as well as Bates stamps being referenced. The amended response is the same as the original response.

And the plaintiff believes that this may be complete; however, wants reassurance in writing from Mr. Bennion.

MR. BENNION: Yes, Your Honor. It is complete through the end -- through December 21, 2024.

THE COURT: Okay.

MR. BENNION: To the extent that there are additional documents, we'll provide them.

THE COURT: Wonderful.

Mr. Harvey, anything else that I need to do with regard to that?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: RFP Number 6, any and all documents and communications reflecting any assets and products acquired by NextGen, including the consideration exchanged for the assets.

The response includes several objections and also references different dates. The amended response is the same.

And I guess the plaintiff's contention here is that NextGen must have documents reflecting product inventory that it purchased but the documents produced do not include product inventory or any communications.

What's the response, Mr. Bennion?

MR. BENNION: Thank you, Your Honor. Well, to the extent the balance sheets have been produced, it does reflect that inventory. With respect to communications, I mean, there

are references in the balance sheets to specific individuals, but looking for emails or text messages or communications like that, that has -- I don't see that has been produced. Beg the Court's indulgence?

THE COURT: Sure.

MR. BENNION: Of course, Documents DEF01534 through DEF01537 have been redacted and they are emails. I apologize, I don't have the unredacted documents in front of me, but these are documents with respect to the ingredients, and we discussed these earlier. So there are some communications.

THE COURT: Okay. Mr. Harvey?

MR. HARVEY: Yes. The product inventory in particular is concerning because, of course, the allegation is that Takeover gave its inventory to NextGen, and so we need to know where NextGen got its inventory from. So this one is a particularly concerning request that they're not giving product inventory reports.

THE COURT: All right. So what I'm going to do is the following: I do overrule the objections as boilerplate. I'm going to go ahead and task you with what I've previously tasked you with, Mr. Bennion, which is, consult with your client, supplement accordingly, and specifically see if there are any communications. As far as Bates 1534, 1537, were you waiting for the protective order before you unredacted?

MR. BENNION: That's correct, Your Honor.

THE COURT: All right. So go ahead and produce those after the protective order is in place.

Mr. Harvey, anything else with regard to this request?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: That takes us to RFP 8, any and all documents reflecting any agreements between NextGen and any brand; is that correct? Did I miss something there?

MR. HARVEY: Brand ambassadors of NextGen, yes, including but not limited to, Manny Pacquiao.

THE COURT: Thank you. I guess I must have just cut that off when I cut and pasted. All right.

So the response here is there are several objections to the response. There are also Bates stamps. The amended response is the same as the original response.

And plaintiff's contention here is that NextGen has produced several consulting and brand ambassador agreements; however, NextGen has not updated its written responses.

Okay. So I guess the question here is whether -- well, the request here is that you supplement the responses to state whether there are any additional documents outstanding. Mr. Bennion?

MR. BENNION: Sure. And there's documents referenced in this response that are responsive. Forgive me, Your Honor, which number are we on?

THE COURT: It's Number 8.

MR. BENNION: Thank you. I'm not trying to be... Okay. There's also responsive documents that are contained in the T-Pain ambassador, but that's for Takeover, I believe, so we will supplement this to the extent that there are ambassador responses. I believe I may not have referred to all of the documents produced that are ambassadors, because other than Manny Pacquiao, I think there was a person by the name of T-Pain or a wrapper that was an ambassador as well.

THE COURT: I remember T-Pain. You should remember T-Pain, too.

MR. BENNION: How so? Sorry to ask you a question.

THE COURT: I think I just told you pretty much what my age is.

MR. BENNION: And forgive me, Your Honor, I have no idea.

THE COURT: Who T-Pain is, or what my age is?

MR. BENNION: Both.

THE COURT: Okay. Well, we'll just keep it that way.

MR. BENNION: I was only asking about T-Pain.

THE COURT: Okay. All right. I think that takes us to the second set; is that right?

MR. HARVEY: I believe so.

THE COURT: Okay. So this is RFP Number 7, any and

all documents and communications reflecting product inventory held by NextGen.

The response and the amended response are the same, essentially that they aren't aware as to any responsive documents; nevertheless, there are a few Bates that are being referenced.

The concern here is that there must be some documents reflecting product inventory that it has purchased, yet the documents that have been produced do not include the product inventory or communications.

Mr. Bennion?

MR. BENNION: There are some communications, and there's a number of documents referenced here with respect to product inventory. And I can take a minute to go through them, but I believe the references are correct because they're quite specific. I will check with clients to see if there's any more references, but we could go through all of these documents, if you wish. They've gone through some already multiple times, and with respect to communications, I will double check.

THE COURT: All right. So same ruling as previous rulings. Go ahead and consult with your client and provide a declaration that explains why no additional documents exist or supplement any additional documents that are responsive.

Anything else, Mr. Harvey, with regard to that, or can we move on to the third set?

MR. HARVEY: Nothing else, Your Honor. Thank you.

THE COURT: All right. Third set. RFP Number 1, any and all documents that contain the product formulations for products that have ever been sold by NextGen, including but not limited to, Hydrogen-enriched waters, Nootropic performance beverages, and Artesian Water.

I think that we've gone through this before with one of the other defendants. Was there a need for a protective order?

MR. BENNION: Correct.

THE COURT: All right. So just for the record, I'm overruling all of the objections on the grounds that they are boilerplate; nevertheless, I will allow the protective order to be in place before the production of the documents.

Mr. Harvey, does that address the request?

MR. HARVEY: Yes, Your Honor. Thank you.

THE COURT: Okay. RFP Number 2, any and all communications between January 1, 2022, and present arising out of or relating to any solicitation or anticipated solicitation of any supplier, vendor, brand ambassador, or vendor of Takeover's with whom/which NextGen worked with or attempted to solicit.

Okay. So the concern here is that there are no communications that have been produced and the plaintiff wanted to make sure that the brand ambassador agreement -- that there

were no other brand ambassador agreements out there.

Mr. Bennion?

MR. BENNION: To the extent that we've produced the brand ambassador agreements with T-Pain and Manny Pacquiao, I think that's been complied with. And those documents we've gone over previously, but I can identify them for the Court again.

THE COURT: I just need to know whether you need to consult with your client to ensure that you've been thorough in this response or whether you're comfortable stating that this is it.

MR. BENNION: I need to consult with my clients again. I'm comfortable but not 100 percent.

THE COURT: Okay. So same ruling, then, as the prior request.

Mr. Harvey, is that sufficient?

MR. HARVEY: Yes, Your Honor. Thank you.

THE COURT: Okay. RFP Number 3, any and all communications and documents reflecting shares that you hold in Labor Smart.

All right. Their response and amended response are the same. Note several objections and also reference several Bates.

So the concern here is that none of the documents reflect the shares being held in Labor Smart.

Mr. Bennion?

MR. BENNION: Yes. There are -- the term escapes me, Your Honor. I'll have it in a minute. I apologize for the delay. The Labor Smart private placement agreements, DEF1560 through DEF1734, do reflect that. I will consult with my clients again to confirm there are no more additional documents.

THE COURT: All right. Same ruling.

Mr. Harvey, does that satisfy your request here?

MR. HARVEY: Yes, Your Honor.

THE COURT: Okay. RFP Number 4, looks like this is the same as RFP Number 3 in terms of the arguments. Could I go ahead and issue the same ruling, or is there anything else that needs to be added?

Mr. Harvey?

MR. HARVEY: The same ruling for 3 would work for me. Thank you, Your Honor.

THE COURT: Mr. Bennion?

MR. BENNION: Yes, Your Honor.

THE COURT: Okay. Same ruling as to 4, then.

That takes us to Number 5, any and all communications between you and any defendant in this lawsuit since January 1, 2022, that references Mr. Deppoleto or his investment in Takeover.

The response and amended response are the same. It

notes several objections and also references several Bates.

So the concern here from plaintiff is that the responsive documents do not contain any messages between the defendants in this lawsuit.

Mr. Bennion?

MR. BENNION: Well, documents with respect to communications with defendants have been produced, and since January 20, 2022, to my understanding, is the extent of it. There could be additional references made to documents produced both by the plaintiffs and I think defendants as well that are not referenced here because there's a multitude of documents about communications between Mr. Zarro and Mr. Deppoleto. And so to the extent I need to reference more documents, there are more documents that can be referenced, and I'm happy to do that and, of course, to consult with my clients to see if there's anything further.

THE COURT: All right. I'll go ahead and order you to do that. And also include that in your declaration as well.

Let's move on to RFP Number 6, any and all communications between you and any defendant in this lawsuit since January 1, 2022, that reference the creation of NextGen.

Okay. I think that the arguments here are the same.

MR. BENNION: Correct. I think we may have done better at referencing all the documents on that response.

THE COURT: Okay. So any issue if I incorporate the

same ruling as to -- with regard to Number 6 as I did with Number 5, Mr. Harvey?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: All right. Mr. Bennion?

MR. BENNION: No, Your Honor.

THE COURT: All right. That will be the ruling.

I think that takes us to the category called "Other Deficient Discovery Responses." It says, "During the deposition of Zarro, Deppoleto reiterated several additional requests for production of documents that remain outstanding."

And it seems to me -- and I could be wrong, but I think that the concern here was the need for protective order; is that right, Mr. Bennion?

MR. BENNION: Yes, but additional documents have been produced that are referenced in the "Other Discovery Responses" category. But, yes, a protective order is needed.

THE COURT: Okay. All right. All right. So please go ahead and get that protective order in place and then submit the remaining documents.

All right. Let me see. Deposition. Okay. I think that -- is the argument here the same, Mr. Bennion?

MR. BENNION: With respect to Mr. Zarro's deposition?

THE COURT: Uh-huh.

MR. BENNION: I think it is. Some of the issues

have been obviated because there's been a change in administration that affected the company Mr. Harvey and I agreed to refer to as Acme, which is no longer an issue, and -- with respect to the protective order and the ingredients, that would be the same.

THE COURT: Okay. So once the protective order is in place, then this deposition needs to resume, Mr. Harvey?

MR. HARVEY: Yes, Your Honor. And the real issue there, I think Mr. Bennion would have put him up. The question there is the cost issue. We've already had to depose him twice, and the second time, if they were concerned about a protective order, they should have put that in place before we did a second deposition. So I showed up for the deposition, asked him questions, and he again refused to answer.

THE COURT: I think your brief also noted that defendant was aware of the questions that needed to be answered in advance?

MR. HARVEY: Yes, because I asked him in his first deposition, and he refused to answer them, and that's why we held it open, so...

THE COURT: Mr. Bennion?

MR. BENNION: There's a slight variation on the theme. There were different questions that were probed in the second deposition. I agree that at the first deposition that there were certain questions Mr. Zarro refused to answer, but

it wasn't exact, and so I'm not -- I don't mean to pars this too fine, but, you know, there was a different additional avenue of questions that went down that then --

THE COURT: I guess ultimately my question is this: When the second deposition took place, were you aware that you were going to need a protective order before he could answer certain questions?

MR. BENNION: Are you saying was I aware or was Mr. Zarro aware?

THE COURT: Well, whoever. You as the legal representative of Mr. Zarro, did you know that a protective order needed to be filed?

MR. BENNION: We had discussed a protective order.

THE COURT: Okay. And did you know that these questions were going to be asked again? I mean, that was the reason for take number two, right?

MR. BENNION: Yes and no. I don't mean to be difficult, Your Honor. Additional questions were asked. I was not aware of all the answers that were going to be given because new questions were asked. And so with respect to -- we had discussed a protective order.

THE COURT: So some of the questions you knew would require the need for a protective order. There were new questions that you were not aware of that also required the need for a protective order?

MR. BENNION: Yes, but I don't -- I'm not going to agree with Your Honor on the first point with respect to the need for a protective order. I don't mean to be difficult. We did -- it was continued for a reason that we agreed to, and then subsequent questions were raised which were not answered. We're not saying that Mr. --

THE COURT: So let me just -- because I'm going to get -- so we have the position number one. There are certain questions that are not answered?

MR. BENNION: Correct.

THE COURT: On the basis of what?

MR. BENNION: The Acme corporation with respect to business, how products are manufactured, where they're manufactured.

THE COURT: Which has now been mooted due to the new administration?

MR. BENNION: That's correct.

THE COURT: Okay. So depo number two, some questions are asked, and your client refuses to answer on what basis?

MR. BENNION: That new information was requested, and he refused to answer those questions at that time. Maybe in an abundance of caution I should have filed a motion for protective order. A motion was not filed. I think it was about two weeks between November 21st and December 13th. I

mean, there was never a deadline put on for when they needed to file a motion to compel. We were in discussions about that and discussions about a protective order. I'm not going to deny that he showed up and didn't answer questions with respect --

THE COURT: Okay.

MR. BENNION: But it's a -- I'm not trying to be difficult here. I just don't feel like I should say that, yes, a protective order needed to be in place before the second deposition.

THE COURT: Okay. What I'm going to do is I'm going to ask you to just split the costs on the third deposition. Okay?

MR. BENNION: Okay, Your Honor.

THE COURT: All right. That takes us to fees.

So it's kind of hard for me to make this determination because I don't know how much supplementation there is going to be after consulting with your client. I will say overall the theme here seems to be that it appears -- and I'm not faulting you for this, Mr. Bennion, but it seems like your clients may not have been completely straightforward with you with regard to all the documents that do exist, and there seem to have been several concessions here that additional information may be out there.

So there's been no opposition here in terms of explaining why the failure to respond to these requests was

substantially justified or what other circumstances make the award of expenses unjust, which is what the rule requires. So I'll hear from you, Mr. Bennion, as to what you believe would be a just outcome with regard to the request for fees.

MR. BENNION: Well, with regard to the request for fees -- and I don't know what the amount is that they're seeking. And maybe that's not the way to start, but, you know, many additional documents have been produced in a short period of time. I realize that we're now on close to six months since --

THE COURT: But those were produced after they filed the first motion to compel?

MR. BENNION: That's correct. There was not a deadline for the first motion to compel, contrary -- I mean, I don't want to -- Mr. Harvey and I have had many conversations about this, and I'm not -- but there was not a deadline of December 17th to file a motion to compel. We extended the deadline for doing that and have extended it further. So with respect to -- and then there were issues because the motion for summary judgment had to be filed. We both agreed that there was extensive time on both sides for that. And then we engaged in a very detailed two-hour-plus meet-and-confer conference on or about February 10th or 11th. And documents have been provided, documents in many regards with respect to the claims that are being made.

And there is an issue that is really at the core of the case about my clients being locked out from Takeover in 2002 (sic), especially when Mr. Deppoleto stepped in and took care of -- took charge of the bank accounts and was involved with Mr. Tucker in doing so. Mr. Tucker is the one that signed these three notes on behalf of Takeover, it wasn't any one of my clients, and so there's this vacuum of time when they didn't have access to the documents. The documents they had received they produced. Yes, they could have done better to produce more, but there's a real issue here in this case about that fall of 2002 (sic) and even before that proceeding that when Mr. Holley was putatively excluded and then had Covid and was hospitalized for, you know, upwards of six months for it, he was out of the picture. Mr. McBride was suspended. Mr. Zarro was not involved. And so these documents, some of these documents that they're asking for, are not in the grasp of my clients.

And so with respect to fees, I leave it in your good judgment, Your Honor, but also, with respect to, you know, volunteering to come back for a deposition, not -- clients answer questions sometimes that are unanticipated, you can't anticipate them. And I'm not saying that's in bad faith either. And Mr. Zarro, he lives in Las Vegas, he -- they wanted to come out to take his deposition. They took everyone else's deposition via Zoom. Mr. Zarro, you know -- and Mr.

Holley's in Arizona, Mr. McBride's in California, Mr. Pavlik's in Florida. Mr. Zarro is here, and he's willing to appear at his deposition. We agreed in the opposition, you know, with respect to the need to take the -- retake the deposition for a couple of hours.

With respect to costs and fees, though, I think the good faith efforts that have been made and the issues of fact that exist in this case need to be considered by the Court, and I'm not -- because there's not a number before me, I'm reticent to give a percentage or a number in response to your question. I hope that satisfies your question.

THE COURT: I understand. I mean, I've gotta tell you, my gut -- like I said at the beginning, it's hard for me to just sort of apportion, right, what percentage you should be responsible for because I don't know how many more responsive documents are going to be produced as a result of this hearing. My sense, though, is that you should be paying for some of the costs of this motion to compel, given the theme that I've mentioned before.

But I'm not going to rule on that right now. What I'm going to do is wait until you go ahead and produce all of these documents. That will give me a better sense of where you're at.

And, Mr. Harvey, I'll go ahead and let you resubmit the request for fees at that time based on what you receive.

Okay?

MR. HARVEY: Thank you, Your Honor.

MR. BENNION: Thank you, Your Honor.

THE COURT: All right. So I guess I do have two last questions. One is, I realize that the motions for summary judgment have been briefed. How is this going to affect the motions for summary judgment?

MR. HARVEY: From my perspective, I don't know. I know that the text messages that I got this morning, we would have included some of those in our summary judgment brief, so now I have to make a determination, do I need to file some -- you know, a motion for leave to amend? I also don't know what's going to be produced after today's hearing as a result of today's hearing.

THE COURT: So I can remember when those were produced, but you may want to alert Judge Navarro to this so that she does not start working on the motion for summary judgment and all of a sudden there's additional information that may be included if you end up submitting a 56(d) motion. Okay? So I'll leave that up to the parties to let her know that.

Then the second question is, we have a settlement conference scheduled for next week, and my question is whether it makes sense to continue that until both of you have a better sense of where you're at with regard to the need for

supplementation and what those documents may reveal.

Mr. Harvey?

MR. HARVEY: No. We think that the settlement conference should go forward even without the supplemental documents. We feel pretty confident about the strength of our summary judgment motion. I won't get into anything else on the record, but we think it should go forward on Tuesday.

THE COURT: All right. Same with you?

MR. BENNION: I agree, Your Honor.

THE COURT: All right. Wonderful. So I guess that's that, then.

The motion, for the record, is granted in part and denied in part as annunciated in my oral rulings. I think that concludes the hearing for today, and I will see you both on Tuesday. Thank you so much.

MR. BENNION: Your Honor, one final thing. I apologize. With respect to the settlement conference, your order says defendants are to be ready 45 minutes after 10:00 a.m., and Mr. Whitehead has a hearing at 10:00 and may not join us until after that, but I expect clients -- I know Mr. Zarro will be with me physically at my office, and the others have been -- you know, have given contact information, but it may take an additional half an hour for Mr. Whitehead to join, but I don't think that would interfere with the conference.

THE COURT: Okay. That's fine. And you know what? Actually, you just reminded me of something else. I will order for you to go ahead and submit the declaration and any additional documents that are responsive to the request within 21 days from today.

MR. BENNION: Okay.

THE COURT: And I'm going to ask the parties to schedule the third and hopefully last deposition for Mr. Zarro and to do so within ten days. So -- you don't need to depose him within ten days, but you need to have a date for the deposition within ten days. So over the next ten days, figure out a date that works for his deposition. All right?

MR. BENNION: And I think that works, with the exception that we're going out of town for Memorial Day -- or not Memorial -- for, yeah, Memorial Day, which is about ten days from now.

THE COURT: So you do not need -- you just need to, within the next ten days, meet and confer and figure out a date that works for the deposition.

MR. BENNION: Okay. Okay. Okay.

THE COURT: You do not need to depose him within the next ten days.

MR. BENNION: Thank you, Your Honor.

THE COURT: All right. Anything else, Mr. Harvey?

MR. HARVEY: No, Your Honor. Thank you.

THE COURT: Mr. Bennion?

MR. BENNION: No. Thank you, Your Honor.

THE COURT: All right. Thank you both.

(Proceedings concluded at 4:05 p.m.)

--oOo--

I, Judy K. Moore, a court-appointed transcriber, certify that the foregoing is a correct transcript transcribed from the official electronic sound recording of the proceedings in the above-entitled matter.

Date: May 29, 2025

/s/ Judy K. Moore

Judy K. Moore, CRR, RMR
Official Court Reporter
United States District Court
District of Nevada