Lars K. Evensen
Nevada Bar No. 8061
Jenapher L. Miller
Nevada Bar No. 14233
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
lkevensen@hollandhart.com
jlmiller@hollandhart.com

*Attorneys for Nextgen Beverage, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES V. DEPPOLETO JR,<br><br>Plaintiff,<br><br>v.<br><br>TAKEOVER INDUSTRIES, INCORPORATED,<br><br>Defendant and Nominal Defendant,<br><br>MICHAEL HOLLEY, TOBY MCBRIDE, JOSEPH PAVLIK, TOM ZARRO, NEXTGEN BEVERAGE, LLC,<br><br>Defendants. | Case No.: 2:22-cv-02013-GMN-DJA<br><br>**RESPONSE TO [190] MOTION TO ENFORCE BINDING TERM SHEET** |

Defendant NEXTGEN BEVERAGE, LLC ("NextGen"), by and through its undersigned counsel of record, the law firm of Holland & Hart LLP, hereby respectfully submit this *Response* (the "Response") to Plaintiff JAMES V. DEPPOLETO JR.'s ("Plaintiff" or "Deppoleto") *Motion to Enforce Binding Term Sheet* (the "Motion"; ECF No. 190). This Response is made and based upon the pleadings and papers on file herein and the U.S. Bankruptcy Court for the District of Nevada (case no. 25-50831-hlb), the below Memorandum of Points and Authorities, the exhibits attached hereto, and any oral argument that this Court allows at the time of any hearing scheduled on the Motion.

/ / /

/ / /



HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court must deny Plaintiff's Motion to Enforce Term Sheet (ECF No. 190) for the following reasons:

First, as a threshold issue and as a matter of law under *Kokkonen* (*infra*) this Court lacks jurisdiction to enforce a term sheet, a purportedly new contract, over all the parties to the term sheet. As this is a new agreement, under *Kokkonen*, the Court must have independent jurisdiction to enforce a settlement agreement. No such jurisdictional agreement exists. Moreover, the agreement contains terms and parties, well beyond the underlying lawsuit, and therefore ancillary jurisdiction does not apply.

Second, under FRCP 19, there is a material necessary party issue, related to the relief sought. This Court lacks jurisdiction to enforce a term sheet, over other parties to the term sheet—for example, Labor Smart, Inc. n/k/a Kultura Brands, Inc. ("Kultura" or "LTNC")—who are not parties in the underlying cases or in any way before this Court. These non-parties are necessary parties under FRCP 19 to adjudicate this purported new contract. As they cannot be joined, the Court must deny the Motion.

Third, even if this Court were to consider the underlying term sheet, Plaintiff cannot be "ready, willing, and able" to perform his own obligations, therefore is not entitled to specific performance. The term sheet requires Plaintiff to dismiss—among other claims—the fraudulent conveyance cause of action and release NextGen (and others) from all claims. Plaintiff's fraudulent conveyance claim is based on a transfer from Takeover Industries Corp. ("Takeover"). As a matter of law, upon Takeover's filing of bankruptcy (*see* ECF No. 155), the fraudulent conveyance action is the exclusive domain of the Chapter 7 trustee. Consequently, Plaintiff does not have the ability to dismiss that cause of action and therefore is not entitled to specific performance of the term sheet.

Fourth, even if this Court were to consider the term sheet, Plaintiff has failed fully inform the Court of the rest of the story, which renders the term sheet unenforceable. There is a second co-pending agreement related to the term sheet. Plaintiff, to induce the parties to enter into the term sheet, entered a second agreement wherein he represented he would fund Kultura, in a timely

manner, if the parties would convey A class membership interest and sign the terms sheet. While the parties conveyed the A class membership interest and signed the sheet of terms, Plaintiff failed to fund in a timely manner, for which now there is no cure. Therefore, the parties are relieved from performing, due to Plaintiff's failure to perform. Moreover, without the second agreement, the terms sheet lack consideration as to Kultura, and without a severance clause, the terms sheet in unenforceable as to all the parties. At a minimum, this would require an evidentiary hearing to determine if in fact a settlement agreement, in the form of a term sheet exists and is enforceable.

Finally, under the term sheet, Nextgen is not party identified as subject to the attorney fees and costs provisions. Therefore, the Court cannot no award of attorney fees and costs against Nextgen.

In sum, based on the forging, this Court must deny Plaintiff's Motion (ECF No. 190) in its entirety.

## II. RELEVANT BACKGROUND

### A. Procedural Context

In 2022, Plaintiff Deppoleto brought the subject action. (*See* ECF No. 1).

The current operative pleading is the September 19, 2023, Plaintiff's *First Amended Verified Complaint* (the "FAC"; ECF No. 25). The FAC brought action against multiple defendants, including NextGen. (*See* ECF No. 25). The allegations in the FAC primary focus on entity Defendant Takeover, and Plaintiff's interactions with Takeover. In the FAC, the causes of action asserted against NextGen are for Fraudulent Transfer (count VIII) and aiding and abetting a fraudulent transfer (count IX) in connection with a transfer from Takeover to NextGen. (*See* ECF No. 25).

The FAC makes no reference to the purported subject term sheet that Plaintiff now seeks to enforce by specific performance nor does Plaintiff assert a claim for specific performance as a remedy for a breach of contract in the FAC. (*See* ECF No. 25).

On August 15, 2025, this Court issued an order granting in part motion for partial summary judgment. (*See* ECF No. 152). The order granted in part, and denied in part, Plaintiff's motion for partial summary judgment. (*See* ECF No. 152). As it relates to NextGen, the Court

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

found there is "…genuine issue of material fact for the trial as to Defendants' fraudulent intent and DENIES summary judgment on Plaintiff's actual fraudulent claim." (ECF No. 152 at 20:21–23). In addition, as to the constructive fraud claim, the Court likewise found, "… as to the water recipe transfer to NextGen, it should be a question of fact left to the jury as to whether it was reasonable for Takeover to transfer the recipe for a product that it had discontinued to NextGen for no cost because there is a genuine issue of material fact as to the monetary value of the recipe." (ECF No. 152 at 21:19–23). In conclusion, the Court held, "Plaintiff's claim for fraudulent transfer, as well as the claims he did not move for summary judgment on, will proceed to trial." (ECF No. 152 at 22:5–7). The Court did grant relief against Takeover. (*See generally* ECF No. 152).

On September 10, 2025, Defendant Takeover filed a petition for relief under Chapter 7 of the Bankruptcy Code, in U.S. Bankruptcy Court, District of Nevada, case no. 25-50831-hlb. (ECF No. 155).

**B. Term Sheet**

The Parties engaged in settlement negotiations concerning a binding term sheet. *See* **Exhibit 1**, Declaration of Brad Wyatt ("Wyatt Decl."); Binding Term Sheet (the "Term Sheet"; FILED UNDER SEAL at ECF No. 192, Ex. A). Other parties listed on the terms sheet signature blocks include NextGen and Labor Smart, Inc. n/k/a Kultura Brands, Inc. ("Kultura" or "LTNC"). (*See* Ex. A to ECF No. 192, Term Sheet at 6). Kultura is not a party in the above captioned matter.

The Term Sheet includes in the "III. Note and Security Agreement" provision, in which NextGen and Kultura are to enter into a note and security agreement with Plaintiff.

The Term Sheet includes in the "IV. Royalties" provision, "Deppoleto shall receive royalties (the "Royalties") on al products of LTNC, Next Gen, and any other affiliate entities or subsidiaries….". (*See* Ex. A to ECF No. 192, Term Sheet at 2). The other affiliate entities or subsidiaries are not parties in the above captioned matter.

The Term Sheet includes in the "IX. Mutual Release" provision, "Mutual release of all claims through the settlement date, effective upon payment of the Note. Release shall only apply to Settling Parties and shall expressly exclude Non-Settling Parties. "Deppoleto shall receive royalties (the "Royalties") on all products of LTNC, NextGen, and any other affiliate entities or



HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

subsidiaries….". (*See* Ex. A to ECF No. 192, Term Sheet at 2). The other affiliate entities or subsidiaries are not parties in the above captioned matter.

Absent from the Term Sheet is any reference of consideration given to Kultura, in exchange for executing the Term Sheet. (*See generally* Ex. A to ECF No. 192, Term Sheet).

Also absent from the Term Sheet is an integration provision. (*See generally* Ex. A to ECF No. 192, Term Sheet).

**C. The Unperformed Second Agreement**

Contemporaneous with discussion regarding the terms in the Term Sheet, the parties thereto engaged in discussions wherein Plaintiff would have the option to invest or in the alternative elect for repayment to from Kultura. *See* Ex. 1, Wyatt Decl.

On March 5, 2025, the parties discussed modes of settlement with Plaintiff, specifically, options where Plaintiff either (1) settles and funds Kultura or (2) settles and does not funds Kultura. *See* **Exhibit 2** (2026-03-05 Email string re Re: For your consideration).

On April 9, 2026, Scott Darnell ("Scott"), Chairman of the Board of Kultura and an authorized representative NextGen, communicated to Luis his understanding regarding the Term Sheet and Plaintiff's/James' funding, from a prior call as follows:

> Luis, When you and James called me, the understanding was that once Tom signed, there would be capital available immediately while we worked toward the definitive settlement document. I moved forward with full confidence that we would get this across the line, and based on that, I've had the pedal down building the business. . . .

*See* **Exhibit 3**, Declaration of Luis Sequeira ("Sequeira Decl."); **Exhibit 4**, Pages from WhatsApp of Luis Sequeira ("Luis WhatsApp") (*highlights added*).

On April 19, 2026, Luis Sequeira ("Luis"), a director at Kultura, and Scott discussed their understanding and drafted communications to Plaintiff/James regarding the Term Sheet and James's funding:

> **Luis to Scott regarding draft communicated to James*: "Hi James, I hope you're doing well. I wanted to share a quick update as things have been moving quickly on our end. Tom has now signed the settlement term sheet, joint consent, and affidavit, and everything has been submitted to your legal team. On the business side, we're seeing strong momentum. We expect to receive a purchase order from CKS on Monday in the range of $6M–$8M, which I will forward as soon as it comes in. In parallel, we're moving toward acquiring a new manufacturing partner



HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

that will significantly reduce production costs, improve margins, and open the door to additional third-party production opportunities. This is a meaningful step toward scaling both revenue and profitability. We've worked hard to build this foundation, and we're at a point where the right capital support allows us to accelerate what's already in motion rather than miss timing on key opportunities."

*Luis to Scott regarding second draft communicated to James*: "When we last spoke, the understanding was that once Tom signed the term sheet and the 11 Preferred A shares were in place, we would move forward with the initial $500K funding. With those items now completed, we wanted to reconnect on timing and alignment. Looking ahead, if able, we prefer to increase your initial investment to $1M for 22 Preferred A shares, which would allow us to fully capitalize on the current pipeline and manufacturing transition. We value your partnership and wanted to keep you closely aligned as these developments unfold. Please let us know your thoughts on timing and how you'd like to proceed. Appreciate your support and look forward to connecting.

*See* **Ex. 4**, Luis WhatsApp.

On April 24, 2026, Brad Wyatt ("Brad"), CEO of Kultura and an authorized representative of NextGen, sent Plaintiff/James an email detailing the current assessment of financial requirements, both immediate and projected over the next 6–8 months. *See* Ex. 1, Wyatt Decl.; **Exhibit 5**, 2026-04-24 Email re Use of proceed email, *with attachment*: Final Production Capital Plan (PPI redacted).

On April 27, 2026, Brad sent Plaintiff/James, a frame framework for the terms of the initial investment, including a Investment Term Sheet (the "Kultura Term Sheet") and Promissory Note. *See* Ex. 1, Wyatt Decl.; **Exhibit 6** (2026-04-27 Email re Term Sheet, *with attachment*). The Kultura Term Sheet was between Kultura and James Deppoleto with an effective date of April 27, 2026. *See* Ex. 1, Wyatt Decl. Under the Kultura Term Sheet, Plaintiff/James had the option of electing to take a note for repayment or equity. Under the Kultura Term Sheet, upon James electing to be an investor, the Company "…shall issue James eleven (11) shares of Preferred A Stock for a $500,000 investment." Ex. 6.

On May 5, 2026, Brad and Plaintiff/James participated in call to discuss James providing funding. *See* Ex. 1, Wyatt Decl. Based on that Brad Wyatt understood James would be funding very soon. *See* Ex. 1, Wyatt Decl. Also, on May 5, 2026, in furtherance of that call, Brad Wyatt sent James a detailed list of how the monies to be provided would be provided to various vendors, and wire information so James could send money directly to vendors. *See* Ex. 1, Wyatt Decl.;



HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

**Exhibit 7**, 2026-05-18 Email re Wire Information and Invoice, *without attachments* (PPI redacted).

On Monday May 11, 2026, Michael Araghi had a telephone conversation with Plaintiff. **Exhibit 13**, Declaration of Michael Araghi ("Araghi Dec.". In that May 11, 2026, telephone conversation James Deppoleto represented to me he would provide funding on Friday May 15, 2026. See Ex. 13, Araghi Dec.

On May 15, 2026, Plaintiff/James and Scott/Kultura discussed James paying Kultura's vendors directly:

> **Plaintiff asked Scott*: " Is there any harm to my accounting individual reaching out to each entity and paying direct on Monday?"
>
> **To which Scott responded to Plaintiff*: "Not at all… any chance of just scofflaw or Berlin going today? If not I'm happy to communicate Monday."
>
> **To which Plaintiff responded to Scott*: "Monday please. She is out of office today and I would like her to do the leg work and paperwork needed."
>
> **Scott also asked Plaintiff*: "When you get a chance please respond to Brad with the information he requested to get the A's [Preferred A Stock] over to you today/Monday latest. Hope you have a great weekend!

*See* **Exhibit 8**, Declaration of Scott Darnell ("Darnell Decl."); **Exhibit 9**, WhatsApp of Scott Darnell ("Scott WhatsApp") (*highlights added*).

On May 18, 2026, Plaintiff/James and Scott communicated regarding funding:

> **Scott informed Plaintiff*: "Good afternoon, The paperwork is being worked and should be wrapped up today possibly tomorrow for the perfection agreement. The A's at some point later today or worst case tomorrow morning. My apologies for the delay. I humbly am requesting that Berlin and Scofflaw be squared away today if at all possible. Please let me know your thoughts? Thank you in advance for your consideration"
>
> **To which Plaintiff responded to Scott*: "Unfortunately cannot happen without this paperwork being done. **Just so you are aware, technically none of this is done and final**. It's what makes this paperwork so crucial. It's a timing thing. If I make payments before this is in, then it puts me in a precarious spot. I just went through a 3 year legal battle. I'm not doing it again" (emphasis added)… "Also, my accounting department was put on standby this morning to make payments as soon as I gave them the word. I just can't do some things right now without my attorneys approval."

Ex. 9, Scott WhatsApp (emphasis added).

On May 19, 2026, Scott informed Plaintiff/James of the pending transfer of shares and the need for funding:

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

> **Scott to Plaintiff/James*: "James, you now have the perfection document and everything has been submitted to Empire, the transfer agent, for issuance of the Preferred A shares. As discussed, the vendor list has been provided. If at all possible, paying Scofflaw today would help us tremendously as we desperately need to secure the raw materials. After that, Berlin and then the box and packaging companies would be the next priorities. If anything needs to be revised, clarified, or reviewed within the documentation, we will handle it immediately on our end. Really appreciate the help and coordination on this."
>
> **Plaintiff/James responded to Scott*: "Waiting on attorneys review and approval. My accountant has been waiting to make her calls/setup payment since yesterday. Will put her on it once I get clearance."

Ex. 9, Scott WhatsApp.

On May 20, 2026, consistent with the term sheet, Kultura cause eleven (11) shares of Preferred A Stock was transferred to Deppoleto Holdings, LLC, the designee directed by Plaintiff/James. *See* Ex. 1, Wyatt Decl.; **Exhibit 10**, 2026-05-20 Account Statement.

Also On May 21, 2026, Plaintiff/James and Luis discussed Plaintiff's funding:

> **Plaintiff informed Luis*: "I cannot fund until this [finalized settlement] is approved and no more paperwork is needed."
>
> **To which Luis responded to Plaintiff*: "I will ask Scott to see if the commitments you made can be pushed a couple days, I will alert the team that documents are coming tomorrow, and please, James, remember the way you get paid back, and we all win with your help to fund as well."… "The vendors are freaking out".
>
> **To which Plaintiff responded to Luis*: "I am ready to fund when my attorneys tell me I'm safe to do so. The documents tomorrow are all settlement documents. If they can be approved quickly then we are that much closer."
>
> **To which Luis responded to Plaintiff*: "I'm confused. You already committed to funding, I just want to be clear that you're only waiting for the documents to be signed correct? Because we know your attorneys will always be negative."
>
> **To which Plaintiff responded to Luis*: "Yes, I will fund once these documents are correct." "There is no confusion"

*See* **Exhibit 11**, Excerpts from Luis WhatsApp.

On May 22, 2026, counsel for Plaintiff transmitted a draft version of the settlement documents to Brad Wyatt and others, and indicated other drafts will follow. *See* Ex. 1, Wyatt Decl. Obviously, the draft version of the settlement document was not before the parties in the prior discussions.

On May 26, 2026 Plaintiff and Luis discussed Plaintiff's funding:

*Plaintiff forward to Luis, Scott's message to Plaintiff about funding, wherein Scott stated in part*: "Based on our discussions over the last several weeks, I made commitments to vendors, partners, and internal teams with the understanding that funding support was moving forward while final documents were being completed. Right now, I'm in a position where those commitments are becoming difficult to maintain, and it's starting to impact relationships and credibility that are very important to me and the business." … "I am not concerned about servicing obligations or getting the final agreements across the finish line. I just need the ability to properly run the company and maintain momentum while legal finalizes the remaining items. If there is another interim document, bridge agreement, or structure needed in order to move funding while the final paperwork is completed, then let's get it done and keep things moving forward."

*Plaintiff stated to Luis*: "This is Scott's message to me and while I appreciate the update. I think we have gotten off on the wrong foot for expectations. Every message to date has had an urgency as if I have stepped into Tom's shoes. I have made it abundantly clear that I am still just an investor and am not interested in taking this company over…"… "I just want to pull back and help as a potential investor right now. I don't want to be put in the same pressure seat for another company. I have enough to manage with 34 of my own employees to worry about. This is more of my time than i care to commit"

*To which Luis responded to Plaintiff*: "understood, but then we just need to know if we can count on it with the 500k and a couple months later, another 500k"… "If not, then you have to tell us, and we have to work out a normal agreement"… "There is no intention here to create problems"

*To which Plaintiff responded to Luis*: "First $500k is an option after agreement is actually done and no more paperwork needed. Second amount after we talk and see how the first $500k goes."

*See* **Exhibit 12**, Excerpts from Luis Sequeira WhatsApp.

On June 29, 2026, Plaintiff/James and Brad Wyatt discussed funding and the settlement agreement:

- Brad inquired if James was going to provide investments as follows: "Are you still considering coming in, or has that ship sailed"
- James responded Brad: "With a signed agreement and some others, I would consider still"
- Brad responded to James: "I believe I helped set the expectation that funding would be included in the settlement. I will also say I was part of the push to get you more for coming in; at the time, the number was $1.5M for the 34 preferred A's. The confusion is that, in the negotiation, the numbers built into the settlement from our side ($4.5M on the note, etc.) were, in their mind, in exchange for your funding and support post-settlement."…
- Brad further responded to James: "I believe I helped set the expectation that funding would be included in the settlement," meaning that we can get this done and funding would be forthcoming, that you were simply taking extra steps of precaution to not repeat history, you wanted to help, but you needed assurances the money was being utilized properly."



HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

- James responded to Brad: " I don't like that language at all. Funding is possible but only after a settlement. I have said this repeatedly"
- James further responded to Brad: "I have never said nor implied that I would fund in any way before any agreement was done and signed."

*See* Ex. 1, Wyatt Decl.

Ultimately, Plaintiff/James did not execute the Kultura Term Sheet, did not fund $500,000 before the end of May 2025, and has not returned the eleven (11) shares of Preferred A Stock sent to his designee. *See* Ex. 1, Wyatt Decl.

Nextgen Beverage, LLC is wholly owned by Kultura Brands, Inc. *See* Ex 13, Araghi Dec.

## III. LEGAL ARGUMENT

### A. This Court Lacks Jurisdiction to Consider the Purported New Agreement

Plaintiff have moved to enforce a term sheet, against several parties, including non-parties to this matter. This court lack jurisdiction, including ancillary jurisdiction, to consider the term sheet.

In *Kokkonen v. Guardian Life Ins. Co*., 114 S. Ct. 1673, 1676-77, 128 L. Ed. 2d 391 (1994), the U.S. Supreme Court held that federal courts do not have inherent or ancillary jurisdiction to enforce a settlement agreement simply because the subject of that settlement was a federal lawsuit. *See O'Connor v. Colvin*, 70 F.3d 530, 531-32 (9th Cir. 1995). Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). They possess only that power authorized by Constitution and statute which is not to be expanded by judicial decree. *Kokken* at 1675. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokken* at 1675. A Federal lawsuit does not establish jurisdiction over an action to enforce the terms of its settlement. *Alvarado v. Table Mt. Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007). The Supreme Court in *Kokken* recognized the difference between an existing lawsuit and a new agreement. Wherein it held that, **enforcement of the settlement agreement**, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence **requires its own basis for jurisdiction**. *Kokken* at 1675-76.(emphasis added). There is no basis for jurisdiction for this Court to consider



HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

the enforcement of a terms sheet within the existing case. Certainly, this Court does not have jurisdiction over parties who are not parties in this litigation. Moreover, the parties did not agree to this Court having jurisdiction to enforce the agreement.

As a preliminary matter, Plaintiff's motion offers no basis for this Court to have jurisdiction over the term sheet. Factually, there is no agreement by the parties in the term sheet, which vests this Court with jurisdiction or ancillary jurisdiction to consider this purported new agreement. There is nothing within the four corners of the term sheet that would vest jurisdiction with this Court over this purported new agreement and non-parties to this litigation. Certainly, there is no Federal question at issue to establish jurisdiction. Thus, jurisdiction would lie with diversity. But, there are non-parties in this action, who are parties to the term sheet. Those non-parties are not before this Court. Therefore, the question of diversity related to non-parties is not answered and jurisdiction cannot be determined.

Thus, Plaintiffs may argue this Court should apply ancillary jurisdiction to enforce the term sheet. Federal courts have ancillary jurisdiction over some matters otherwise beyond their competence that are incidental to other matters properly before them. *See Alvarado v. Table Mt. Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007). Such a request—if made—in this matter goes beyond the Court's authority. Ancillary jurisdiction to enforce a settlement exists only where the parties' compliance with the settlement is **by a provision expressly retaining jurisdiction or by incorporating the settlement's terms into a Court order**. *Kokken* at 1677 (emphasis added).

The Court has provided an example where ancillary jurisdiction may exist as follows: "If the dismissal order incorporates the settlement terms, the Court reasoned, a violation of those terms would amount to a violation of the court's order. The court would then have ancillary jurisdiction to 'vindicate its authority.'" *See O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995).

There is no provision expressly retaining jurisdiction by this Court in the term sheet and there is no order incorporating the settlement terms. Therefore, the Court cannot apply ancillary jurisdiction to enforce the term sheet.

As this Court does not have jurisdiction to consider the enforcement of the term sheet, the Court must deny Plaintiff's motion.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Plaintiff cannot cry he is without a remedy if this Court denies the motion. As the *Kokken* Court concluded, enforcement of a settlement agreement is for state courts, unless there is some basis for federal jurisdiction. *Kokken* at 1677. Thus this Court can conclude, it does not have jurisdiction to consider the enforcement of the term sheet, and leave Plaintiff to seek it remedy elsewhere.

**B. The Motion to Enforce Lacks a Necessary Parties and Should be Denied**

A district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement. *See Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999).

The motion to enforce seeks specific performance of the term sheet. The term sheet includes parties that are not before this Court in the underlying litigation. Here Plaintiff seek a court order of specific performance on a term sheet with parties who are <u>not</u> before this Court. Therefore, as noted above not only does this Court lack jurisdiction over the terms sheet, it lacks jurisdiction over parties to the term sheet. As a result, the Court should deny the motion.

The Court should deny the motion to enforce the terms sheet, as the motion lack a necessary party; Kultura. Under the FAC, Kultura is not a party, and cannot be feasibly joined in this action. Under the terms of the term sheet, NextGen cannot protect its interest (neither can Kultura) where Plaintiff are asserting NextGen has joint obligation with Kultura.

Under Rule 19(a) "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Under Rule 19(b), if its not feasible to join a party, then the Court must consider if the matter must be dismissed. One of the factors whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *See* FRCP 19(b)(4).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

The application of Federal Rule of Civil Procedure 19 determines whether a party is indispensable. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002). The inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application. *See Dawavendewa* at 1154. The Court must determine: (1) whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in "equity and good conscience" the suit should be dismissed. *See Dawavendewa* at 1155.

Plaintiff is seeking specific performance of the term sheet. If Plaintiffs contend the specific performance of the term sheet would require Kultura and Nextgen to enter into a note with Plaintiff, they are seeking relief against Kultura. Yet, Kultura is not a party before this Court. By definition, the court cannot accord complete relief among existing parties to the subject motion. *See* FRCP 19(a)(1)(A). Therefore, Kultura is a necessary party.

Alternatively, to the extent Plaintiff seeks specific performance against Nextgen related to the note, without Kultura, this would put Nextgen subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *See* FRCP 19(a)(1)(B)(ii). Therefore, Kultura is a necessary party.

There is no means to join Kultura to the subject action. The FAC makes no allegations against Kultura.

As Kultura is necessary but cannot be joined, under Rule 19, in equity and good conscience the motion should be denied.

The same analysis applies, if Plaintiff is seeking specific performance as to the unidentified group of "…any other affiliate entities or subsidiaries…" to pay royalties, pursuant to the term sheet. Under the royalties provision of the terms sheet, Kultura and NextGen and an unidentified group of "…any other affiliate entities or subsidiaries…" are to pay royalties Plaintiff. But Kultura and the unidentified group of any other affiliate entities or subsidiaries, are not parties in the above caption matter, nor are they made a party under the FAC.

Under the same analysis above, the unidentified group of "… any other affiliate entities or subsidiaries" are a necessary part(ies) and there is no means to join them to the subject action, as

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

the FAC makes no allegation against them.

Consequently, in seeking specific performance related to Kultura, NextGen, and the unidentified group of "… any other affiliate entities or subsidiaries" , the unidentified group of "… any other affiliate entities or subsidiaries" are necessary parties but cannot be joined. As a result, under Rule 19, in equity and good conscience the motion should be denied.

**C. As a matter of law, Plaintiff is not able to perform the Terms of the Term Sheet and therefore is not entitled to Specific Performance**

In the introduction of the Term Sheet, it states that "[t]his Term Sheet shall be governed in all respects by the laws of Wisconsin." (Ex. A to ECF No. 192, Term Sheet at 1). As a matter of law, a party requesting specific performance must be able to demonstrate that it is ready, willing, and able to perform the contract. *See Ash Park, Ltd. Liab. Co. v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶84, 324 Wis. 2d 703, 738-39, 783 N.W.2d 294, 311. Where it would be impossible for a party to perform the contract, specific performance will not be granted. *See Anderson v. Onsager*, 155 Wis. 2d 504, 512, 455 N.W.2d 885, 889 (1990).

As a matter of law, using the strong-arm powers, the bankruptcy trustee can pursue any avoidance action that is avoidable by a creditor under state or other applicable non-bankruptcy law. *See Marasciullo v. Boyd (In re Boyd),* 669 B.R. 400, 408 (Bankr. D. Or. 2025) (citing 11 U.S.C.§544). The bankruptcy trustee specifically can step into the shoes of a creditor and avoid any claim the creditor could avoid. *See id*. Specifically, where both a creditor and the trustee have fraudulent transfer claims relating to property transferred by the debtor, the **trustee has the exclusive right to pursue the fraudulent transfer claims and the creditor may not**. *See id.* (emphasis added). It is well established, that once a bankruptcy case is filed it is the bankruptcy estate that owns any claim for fraudulent transfers made by the debtor. *See Valente v. Nowland (In re Nowland)*, No. SC-21-1225-SFB, 2022 Bankr. LEXIS 1724, at *17 (B.A.P. 9th Cir. June 16, 2022). The estate owns the fraudulent transfer claims for the benefit of the estate as a whole, and such claims must be pursued by the trustee or the debtor-in-possession unless the court orders otherwise. *Id*.

Factually, in the FAC, Plaintiff has alleged a claim of fraudulent transfer against NextGen

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

and other individuals, premised on a transfer from Takeover to NextGen. Under the Term Sheet, Section I.1. the 'Settling Parties' are the parties who execute the term sheet. NextGen executed the Term Sheet. Under Term Sheet Section IX. Mutual Release, there are mutual releases of all claims through the settlement date, effective upon payment of the note. In addition, under the term sheet, Section XI Dismissal of lawsuit, Plaintiff is to dismiss the lawsuit with prejudice.

On September 10, 2025, Defendant Takeover filed a petition for relief under Chapter 7 of the Bankruptcy Code. (ECF No. 155). As a matter of law, the fraudulent transfer claims brought by Plaintiff against NextGen and several individuals, are exclusively held by the Chapter 7 trustee; the Trustee has stepped into the shoes of Plaintiff related to these claims and owns those claims. Consequently, as Plaintiff does not own those fraudulent transfer claims, Plaintiff cannot perform its term sheet obligation. As Plaintiff is not and cannot be ready, willing, and able to perform the term sheet obligations. Plaintiff is not entitled to specific performance. This Court must deny the Motion.

### D. Plaintiff's Failure to Perform the Second Agreement, Renders the Term Sheet Unenforceable

#### *1. There Second Agreement forming an Overall Agreement*

If a writing is shown to be only a partial integration of the agreement reached by the parties, it is proper to consider parol evidence which establishes the full agreement, subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing. *See In re Spring Valley Meats, Inc.,* 94 Wis. 2d 600, 607-08, 288 N.W.2d 852, 855 (1980). Thus parol evidence is always admissible with respect to the issue of integration, that is, parol evidence is admissible to show whether the parties intended to assent to the writing as the final and complete (or partial) statement of their agreement. *In re Spring Valley Meats, Inc.,* at 608.

Nextgen contends the term sheet is only a partial integration of the full agreement reached by the parties. In seeking enforcement, Plaintiff failed to disclose to the Court a second contemporaneous agreement between the parties, which would be read together as one agreement. Plaintiff likely failed to address the second agreement, as Plaintiff failed to timely perform the funding obligation under the second agreement and the failure would excuse the parties to the terms

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

sheet from performing. There is no severance clause in the term sheet that would allow for continued performance by the other parties to the term sheet.

Under the second agreement, Plaintiff agreed concurrently to fund Kultura either as a loan or investment, at his election, which would have resulted in a distribution Nextgen. Plaintiff insisted the agreed funding was contingent upon the parties executing the terms sheet. Base on this requirement, the terms sheet was executed by the several parties. In addition, under the second agreement 11 shares of A prefer stock was to be conveyed to Plaintiff. In fact, those 11 shares of A prefer stock were to be conveyed to Plaintiff. Funding was needed by the end of May 2026. Though these obligations were met, Plaintiff failed to timely fund. There is no cure for this failure to timely fund by the end of May 2026.

***2. Plaintiff's failure to Perform the Second Agreement excuses Performance under the Term Sheet***

It is well established that a material breach by one party may excuse subsequent performance by the other. *See Mgmt. Comput. Servs. v. Hawkins, Ash, Baptie & Co.,* 206 Wis. 2d 158, 183, 557 N.W.2d 67, 77 (1996).

Because Plaintiff failed to timely fund by end of May 2026, Plaintiff materially breached the overall agreement. As a result, the performance by the other parties to the term sheet are excused.

***3. Plaintiffs Representation of Funding to Induce Signatures Renders the Term Sheet Voidable***

Plaintiff inactions render the term sheet voidable. If a party to a contract is induced to manifest his assent to the contract by means of a fraudulent or material misrepresentation by another party to the contract, the contract is voidable if the recipient justifiably relies on the misrepresentation. *Runzheimer Int'l, Ltd. v. Friedlen,* 2015 WI 45, ¶53, 362 Wis. 2d 100, 125, 862 N.W.2d 879, 891.

Here, Plaintiff insisted he would fund, if the parties would execute the Term Sheet. Relying on the representation that Plaintiff would fund, based on the second agreement, NextGen executed the Term Sheet. Obviously, Plaintiff representation that he would fund, and then failing to do so, is a martial misrepresentation, that was justifiably relied on, including Nextgen.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Therefore, as a matter of law, the Term Sheet is voidable and unenforceable.

#### 4. *Without the Second Agreement, the Term Sheet lacks Consideration and is not enforceable*

If Plaintiff contends the term sheet is a standalone agreement, the Term Sheet fails for a lack of consideration, as to Kultura and as there is no severance clause, the remainder of the Term Sheet fails.

The elements of an enforceable contract are offer, acceptance, and consideration. *See Runzheimer Int'l, Ltd. v. Friedlen,* 2015 WI 45, ¶56, 362 Wis. 2d 100, 112, 862 N.W.2d 879, 885. Consideration is a primary element to contract formation. As a matter of law, the definition of consideration is a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor neither the benefit to the promisor nor the detriment to the promisee need be actual. *Runzheimer Int'l, Ltd. v. Friedlen,* 2015 WI 45, ¶56, 362 Wis. 2d 100, 112, 862 N.W.2d 879, 885. Additionally, "a promise for a promise, or the exchange of promises, will constitute consideration to support any contract of [a] bilateral nature." *Id*. The burden of proving failure of consideration is on the party seeking to avoid the contract. *See Runzheimer Int'l, Ltd. v. Friedlen,* 2015 WI 45, ¶56, 362 Wis. 2d 100, 127, 862 N.W.2d 879, 892.

Under the four corners of the term sheet, Kulutra (the promissor) is to promise a note and royalties to Plaintiff (promisee). Under the same four corners of the Term Sheet, there is neither a: (1) benefit received by the promisor (Kultura); (2) promise for a promise between Kultura and Plaintiff; nor (3) exchange of promises between Kultura and Plaintiff. In sum there is no consideration proffered to Kulutra within the four corners of the Term Sheet.

As there is no consideration, the Term Sheet is unenforceable as to Kultura. Further, as there is no severance clause that would allow Kultura to be removed from the Term Sheet and leave the remainder of the Term Sheet in place, the entire Term Sheet is rendered unenforceable. This is particularly true as to NextGen. Under the Term Sheet, NextGen co-obligation with Kultura, related to a note and payment royalties. These obligations must be void.

The issue of consideration creates a Hobson’s choice for Plaintiff. Kultura’s consideration can only be found in the second agreement—where Plaintiff represented, he would

fund Kultura. The second agreement is a necessary element to establish consideration by and between Kultura and Plaintiff to support the term sheet. But, by assenting to the second agreement, Plaintiff breached the obligation to timely fund under that agreement and as noted above, excuses the enforcement of the Term Sheet.

***5. To the extent the Court questions the existence or term, an evidentiary hearing is needed***

The district court may enforce only *complete* settlement agreements. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).

In light of the forgoing, if the Court believe there are material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, this Court should set this matter for an evidentiary hearing.

**E. Plaintiffs Position Regarding Trial and Settlement – They are not co-pending**

Plaintiff in the Motion has taken the position there is an enforceable settlement agreement, as presented in the Term Sheet. In Plaintiff's June 12, 2026, Status Update to the Court, also request this Court to (1) enforce the settlement and/or (2) schedule this matter for trial as well as address certain related deadlines. (ECF No. 189). However, the enforcement of a settlement and going to trial are mutually exclusive. Therefore, the Court must determine if there is an enforceable agreement before this Court can set the matter for trial.

**F. Plaintiff's fee request lacks merit and should likewise be denied**

Plaintiff is not entitled to attorney's fees and costs against NextGen under the Term Sheet as NextGen is not an "Individual Settling Defendant" as defined by the Term Sheet. *See* Mot. (ECF No. 190 at 7).

The Term Sheet provides in relevant part as follows:

> Should any **Individual Settling Defendant** violate the terms of this Term Sheet following its execution but before consummation of the Final Agreements, Deppoleto shall be entitled to seek fees and costs associated with negotiation and preparation of the Final Agreements **from the breaching parties**, as well as costs associated with enforcement of this Term Sheet.



HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Ex. A to ECF No. 192, Term Sheet at 5 (emphasis added); *see also* Mot. (ECF No. 190 at 7).

Significantly, the Term Sheet defines "Individual Settling Defendant"—which, does not include NextGen—and states in relevant part as follows:

> The individual defendants who are party to the settlement shall be referred to as the "*Individual Settling Defendants*." The Individual Settling Defendants include Tom Zarro ("*Zarro*"), Michael Holley ("*Holley*"), Joseph Pavlik ("*Pavlik*"), and Toby McBride ("*McBride*").

Ex. A to ECF No. 192, Term Sheet at 1, § I(4).

Accordingly, Plaintiff's Motion should be denied to the extent it seeks fees and costs against NextGen.

## IV. CONCLUSION

Based on the foregoing, NextGen respectfully requests that the Court deny Plaintiff's Motion (ECF No. 190) in its entirety.

DATED this 23rd day of July 2026.

HOLLAND & HART LLP

*/s/ Lars K. Evensen*
Lars K. Evensen
Jenapher L. Miller
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*Attorneys for Nextgen Beverage, LLC*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

# INDEX OF EXHIBITS

| Exhibit | Description | Page no. |
|---|---|---|
| 1 | Declaration of Brad Wyatt | 001-004 |
| 2 | 2026-03-05 Email string re Re: For your consideration | 005-010 |
| 3 | Declaration of Luis Sequeira ("Sequeira Decl.") | 011-013 |
| 4 | Pages from WhatsApp of Luis Sequeira ("Luis WhatsApp") (*highlights added*) | 014-018 |
| 5 | 2026-04-24 Email re Use of proceed email, *with attachment*: Final Production Capital Plan (PPI redacted) | 019-028 |
| 6 | 2026-04-27 Email re Term Sheet, *with attachment* | 029-036 |
| 7 | 2026-05-18 Email re Wire Information and Invoice, *without attachments* (PPI redacted) | 037-043 |
| 8 | Declaration of Scott Darnell | 044-046 |
| 9 | WhatsApp of Scott Darnell ("Scott WhatsApp") (*highlights added*) | 047-049 |
| 10 | 2026-05-20 Account Statement | 050-051 |
| 11 | Excerpts from Luis Sequeira WhatsApp | 052-053 |
| 12 | Excerpts from Luis Sequeira WhatsApp | 054-056 |
| 13 | Declaration of Michael Araghi | 057-059 |

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July 2026, a true and correct copy of the foregoing **RESPONSE TO [190] MOTION TO ENFORCE BINDING TERM SHEET** was served by the following method(s):

☑ Electronic: by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and/or served on counsel electronically in accordance with the E-service list to the following email addresses:

James Patrick Shea
Bart K. Larsen
Kyle M. Wyant
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
jshea@shea.law
blarsen@shea.law
kwyant@shea.law
Jennifer E. Hoekel
**HUSCH BLACKWELL LLP**
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
jennifer.hoekel@huschblackwell.com
*-and-*
Patrick M. Harvey (*Admitted Pro Hac Vice)*
**HUSCH BLACKWELL LLP**
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Patrick.Harvey@huschblackwell.com

*Attorneys for James V. Deppoleto Jr.*

Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
Jonah Gavish (NSBN 17197)
**McDONALD CARANO LLP**
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com
jgavish@mcdonaldcarano.com

*Attorneys for Michael Holley and Tom Zarro*

☑ U.S. Mail: by depositing same in the United States mail, first class postage fully prepaid to the persons and addresses listed below:

Toby McBride
2948 Monticello Drive
Stockton, CA 95209

Joseph Pavlik
17047 Racoon Trail
Strongsville, Ohio 44136

Takeover Industries, Inc
401 Ryland St Ste 200-A
Reno, NV 89052

*/s/ Tiffany Pond*
An Employee of Holland & Hart LLP

38733906_v3